## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| FAHMI AHMED MOHARAM,<br><br>*Petitioner*,<br><br>v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION and DAVID P. PEKOSKE, in his official capacity as Administrator of the Transportation Security Administration,<br><br>*Respondents*. | Case No.   22-1184 |

## PETITION FOR REVIEW

Pursuant to 49 U.S.C. § 46110(a) and Federal Rule of Appellate Procedure 15(a), Petitioner Fahmi Ahmed Moharam hereby petitions the United States Court of Appeals for the District of Columbia Circuit for review of the final agency decision of Respondents Transportation Security Administration ("TSA") and TSA Administrator Pekoske, in the form of a letter entered on June 9, 2022, which is attached to this petition ("Final Decision").

The Final Decision is unlawful because it denied Petitioner due process of law in violation of the Fifth Amendment of the U.S. Constitution. The Final Decision is also unlawful because it is arbitrary, capricious, an abuse of discretion, and

otherwise contrary to law.  Petitioner requests that this Court hold the Final Decision unlawful and set aside, modify, or amend it, and/or remand.

Jurisdiction is asserted under 49 U.S.C. § 46110(c).  Venue is proper under 49 U.S.C. § 46110(a).  This petition is timely under 49 U.S.C. § 46110(a) because it was filed within 60 days after the Final Decision was issued.

Dated: August 5, 2022

Respectfully submitted,

/s/ Robert S. Litt

| | |
|---|---|
| ADAM HUNT | ROBERT S. LITT |
| LENA H. HUGHES | MORRISON & FOERSTER LLP |
| JANIE C. BUCKLEY | 2100 L Street NW, Suite 900 |
| MORRISON & FOERSTER LLP | Washington, DC 20037 |
| 250 West 55th Street | Tel.:  (202) 887-1588 |
| New York, NY 10019 | Rlitt@mofo.com |

# CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I caused the foregoing petition for review to be served by third-party commercial carrier for overnight delivery upon the following:

David P. Pekoske, Administrator
Transportation Security Administration
U.S. Department of Homeland Security
6595 Springfield Center Drive
Springfield, Virginia 20598

Dated: August 5, 2022                    /s/ Robert S. Litt
                                               Robert S. Litt



U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598

**JUN 0 9 2022**

Mr. Fahmi Ahmed Moharam
1233 West Lake Street
Apt 702
Topeka, IN 46571
United States

Redress Control Number: 2263437

Dear Mr. Moharam:

Based on my review of information available to the Transportation Security Administration, I have determined that you are properly included on the U.S. Government's No Fly List. This determination is based on the totality of available information, including information you provided to DHS TRIP.

This letter constitutes the Transportation Security Administration's final agency decision, which is reviewable by a United States Court of Appeals under 49 U.S.C. § 46110. A petition for review must be filed within 60 days of issuance of this order.

Sincerely yours,

David P. Pekoske
Administrator
Transportation Security Administration

Enclosure:

Notice of Final Order and Decision of TSA



**Transportation Security Administration**

# NOTICE OF FINAL ORDER AND DECISION OF THE TSA ADMINISTRATOR

On October 19, 2021, Fahmi Ahmed Moharam, through his counsel, submitted a letter and an affidavit to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) providing reasons why Mr. Moharam believed his placement on the No Fly List was in error. On January 7, 2022, Mr. Moharam's counsel responded with additional information, including an updated affidavit from Mr. Moharam and two additional affidavits.[1] For the reasons set forth below and based on my review of information available to the Transportation Security Administration, I determine that Mr. Moharam should remain on the No Fly List.

## Background

On October 29, 2017, Mr. Moharam submitted a redress inquiry to DHS TRIP. DHS TRIP informed Mr. Moharam that he was on the No Fly List and provided the opportunity to request additional information about his placement on the No Fly List and the opportunity to seek additional review. Mr. Moharam, through his counsel, requested additional information about his placement on the No Fly List.[2]

---

[1] Mr. Moharam's October 19, 2021 correspondence included a request from counsel for an extension of time. The request was Mr. Moharam's fourth request for an extension. DHS TRIP denied Mr. Moharam's request for a fourth extension and provided him an additional 30 days to provide any additional information or material he deemed relevant. Mr. Moharam, through counsel, provided the January 7, 2022 submission in response.

[2] The process for responding to requests for additional information is complex and requires interagency consultation and access to secure facilities and communications systems. Specifically, the Terrorist Screening

On February 20, 2020, DHS TRIP informed Mr. Moharam he was on the No Fly List because he had been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A). In particular, it had been determined that he was an individual who represents a threat of engaging in or conducting a violent act of terrorism and who was operationally capable of doing so.

In addition, DHS TRIP provided Mr. Moharam with a summary of the unclassified facts available for release that supported his placement on the No Fly List and encouraged him to respond with relevant information if he believed the determination was in error or if he felt the information provided to him was inaccurate. The unclassified summary stated as follows:

> You are on the U.S. Government's No Fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017. The information you shared during your interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns.[3]

---

Center (TSC) must notify the National Counterterrorism Center (NCTC) and the nominating agency or agencies to request additional information and assistance with creating an unclassified or declassified summary. Composing an unclassified or declassified summary requires the nominating agency or agencies to review the original derogatory information, any new information (including exculpatory information), and information supplied by the individual who filed a DHS TRIP redress inquiry. To ensure that the U.S. Government redress process is thorough and responsive, the nominating agency or agencies also coordinates with other executive departments and agencies that are responsible for collecting, collating, and sharing terrorism information in support of the watchlist process. Together, these entities make every effort to compose an unclassified or declassified summary based on the totality of available information, intending for the summary to include as much information as possible and be reasonably calculated to permit the individual to respond, taking into account the national security and law enforcement interests at stake. For Mr. Moharam, this interagency process was further complicated by a government shutdown lasting more than a month, as well as other disruptions to the Government's work in this area. Following this extensive process, the nominating agency or agencies provided TSC with the information that could be disclosed to Mr. Moharam in an unclassified summary. TSC provided DHS TRIP with written authorization confirming that the information contained in the summary is unclassified and authorizing DHS TRIP to release the summary to Mr. Moharam.

Upon receipt of the unclassified summary, DHS TRIP provided it to the TSA Intelligence and Analysis Office (I&A) and the TSA Chief Counsel Office (CC) for review. TSA I&A reviewed the proposed unclassified summary and analyzed it in light of relevant information available to TSA, whether provided directly by TSC or available to TSA I&A in the performance of its intelligence and analysis function, and TSA CC conducted a legal review. DHS TRIP conferred with TSA I&A and TSA CC regarding the proposed unclassified summary. After DHS TRIP received the unclassified summary from TSC and conferred with TSA I&A and TSA CC, and made any resulting changes, DHS TRIP provided the unclassified summary to relevant agencies for their review and comment. Following those consultations and any resulting changes, DHS TRIP prepared the letter to Mr. Moharam providing the unclassified summary and the specific criterion under which he was placed on the List.

[3] Mr. Moharam's counsel requested that DHS TRIP provide a copy of the interview transcript for the November 2017 interview referenced in the unclassified summary. DHS TRIP denied the request.

DHS TRIP withheld certain information relevant to Mr. Moharam's placement on the No Fly List and informed Mr. Moharam that factors limiting disclosure in this context included national security concerns.[4]

## Mr. Moharam's Appeal

Mr. Moharam, through counsel, requested multiple extensions of time to respond to the February 20, 2020 letter. In light of the COVID-19 pandemic, DHS TRIP granted Mr. Moharam's numerous requests for extensions of time. DHS TRIP provided Mr. Moharam until October 19, 2020, then April 19, 2021, and then October 19, 2021, to substantively respond.

On October 19, 2021, Mr. Moharam, through his counsel, submitted a letter and an affidavit to DHS TRIP providing reasons why Mr. Moharam believed his placement on the No Fly List was in error. On January 7, 2022, Mr. Moharam's counsel responded with additional information, including an updated affidavit from Mr. Moharam and two additional affidavits, one from his wife and another from Professor Laurent Bonnefoy.

## TSA's Determination

Upon my review of all the information Mr. Moharam has submitted to DHS TRIP, as well as other information available to me related to Mr. Moharam's placement on the No Fly List, I find that Mr. Moharam may be a threat to civil aviation or national security; in particular, I find that he is an individual who represents a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so. I therefore conclude, based on my

---

[4] Mr. Moharam's counsel made several requests to DHS TRIP to provide Mr. Moharam's cleared counsel with access to classified information supporting Mr. Moharam's inclusion on the No Fly List. DHS TRIP denied the requests. DHS TRIP does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

3

review of information available to the Transportation Security Administration, that Mr. Moharam is properly placed on the No Fly List and no change in status is warranted.

Consistent with the protection of national security and law enforcement interests, I can provide the following explanation of my decision:

1. I have considered the contentions of Mr. Moharam and his wife about his travel to Yemen, including that he was born in Yemen; his wife, most of his children, and his mother reside in Yemen; and that he traveled to Yemen to visit family and pursue religious study. I have also considered their contentions related to visiting the town of Dammaj. Mr. Moharam notes that his visits to Dammaj lasted an average of three to six months, that he usually visited with his wife and children, and that he spent most of his time at Dammaj in study or prayer. Mr. Moharam states that he was at Dammaj during the second siege of the town by the Houthis in 2013 and 2014, was hit by a bullet, and was evacuated by the Red Cross. He explains that the Houthis believed everyone who was at Dammaj was a "terrorist." He further states that he was not involved in any of the fighting at Dammaj during the siege. The affidavit of Mr. Moharam's wife also includes information about their travel, including that they visited Dammaj together as a family for religious study purposes and that Mr. Moharam was injured and evacuated during the siege. I conclude, however, that the information available to me, including information regarding Mr. Moharam's activities during his frequent and extended travel to Yemen, as well as information provided by Mr. Moharam during a November 2017 interview and during the redress process, ultimately supports his placement on the No Fly List.

2. I have also considered the affidavit of Professor Laurent Bonnefoy, including the explanation that mere attendance at the Dar al-Hadith school or living in the town of

Dammaj would not automatically render someone an extremist or threat, that it is possible to stay in Dammaj without receiving any kind of military training, and that the vast majority of Dammaj alumni never had any direct connection with armed violence. Professor Bonnefoy also states that while a proportion of Jihadi militants studied in Dammaj, these remain a small minority among Dammaj alumni.[5] I conclude, however, that the information available to me, including information regarding Mr. Moharam's activities during his frequent and extended travel to Yemen, as well as information provided by Mr. Moharam during a November 2017 interview and during the redress process, ultimately supports his placement on the No Fly List.

3. I have also considered the contentions of Mr. Moharam and his wife related to his non-involvement in violence or terrorist activity, including that he did not participate in any armed violence or terrorist activity in Yemen or elsewhere; that he did not receive any terrorist, military, or weapons training at Dammaj or elsewhere; and that he has not participated in terrorist activities, expressed interest in terrorist activities, or been in contact with any terrorist groups or terrorists. Mr. Moharam's contentions also include that he has never attended terrorist training camp, that he has no plan or desire to martyr himself, and is vehemently opposed to terrorists and what groups like Al Qaeda and ISIS stand for. I conclude, however, that the information available to me, including

---

[5] Professor Bonnefoy states that the closure of Dammaj in January 2014 scattered Salafis across Yemen and many foreigners left the country altogether. Some of the areas were under the control of al-Qaeda in 2015 and 2016, and some newly relocated Salafis developed interactions with the jihadis and engaged in fighting against the Yemeni government, although this was not an automatic pattern. The affidavit further states:

Among the trajectories of foreign Dammaj alumni, that of John Walker Lindh, the famous 'American Taliban' who was captured in Afghanistan in November 2001 has quite often been considered as illustrative of a link between Salafism and violence. Indeed, his trip there has often been construed in the media and certain intelligence agencies as indicative of a tendency of Dammaj to serve as an antechamber of radicalization.

information regarding Mr. Moharam's activities during his frequent and extended travel to Yemen, as well as information provided by Mr. Moharam during a November 2017 interview and during the redress process, ultimately supports his placement on the No Fly List.

4. I have also considered whether requiring Mr. Moharam to undergo enhanced security screening prior to flying and other available security measures short of inclusion on the No Fly List would be sufficient to counteract the threat he poses. The February 2, 2016, bombing of Daallo Flight 159, the October 31, 2015, bombing of Metrojet Flight 9268, and the July 15, 2017, attempted plot to place an improvised explosive device onboard an Etihad flight from Sydney, Australia to Abu Dhabi, United Arab Emirates, among other examples, all demonstrate terrorists' continuing intent to attack aviation and the fact that heightened screening alone is not sufficient to mitigate threats to aviation security. Terrorists continually adapt their tactics to seek new ways to circumvent or defeat the screening checkpoint. Checkpoint screening cannot be 100 percent effective against all potential threat items that could facilitate a hijacking attempt or other terrorist act onboard an aircraft. Nor can Federal Air Marshals be relied upon to cover every flight and mitigate every in-flight threat. Because these other security measures are not effective in all circumstances, I find that evolving security considerations, including current threats to transportation security, warrant use of the No Fly List for individuals who represent a threat of engaging in or conducting a violent act of terrorism and who are operationally capable of doing so.

These conclusions do not constitute the entire basis of my decision. I am unable to provide additional information in this Notice of Final Order and Decision for reasons described below.

Without specifying all possible grounds for withholding information in this case, information has been withheld for the following particular reasons:

- additional disclosure would risk harm to national security; and

- additional disclosure would jeopardize law enforcement activities.

While I am unable to provide additional information in this Notice of Final Order and Decision regarding the entire basis for my decision, my determination is not based solely on religion, race, ethnicity, age, sex, national origin, and/or the exercise of Constitutionally protected activities, such as the exercise of protected First Amendment activity.

This determination constitutes a final order and is reviewable in a United States Court of Appeals pursuant to 49 U.S.C. § 46110 or as otherwise appropriate by law. A petition for review must be filed within 60 days of issuance of this order.

9 June 2022
DATED

David P. Pekoske
Administrator
Transportation Security Administration