**Vol. I of II (Appx1-247)**
**Nos. 22-1184, 23-1198**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

FAHMI AHMED MOHARAM,
*Petitioner,*

v.

TRANSPORTATION SECURITY ADMINISTRATION, DAVID P. PEKOSKE, in his Official Capacity as Administrator of the Transportation Security Administration, and HARRY R. METZLER, in his official capacity as Acting Chief of the Sensitive Security Information Program of the Security and Administrative Services Office at the Transportation Security Administration,
*Respondents.*

Petitions for Review from the Transportation Security Administration
June 9, 2022 Decision and July 7, 2023 Order

## JOINT APPENDIX

JAMES SIGEL
JOSEPH ELIE-MEYERS
DAVIS WRIGHT TREMAINE LLP
50 California Street, Suite 2300
San Francisco, CA 94111

*Counsel for Petitioner Fahmi Ahmed Moharam*

*(Additional Counsel Listed on Inside Cover)*

AUGUST 5, 2024

BRIAN M. BOYNTON
  *PRINCIPAL DEPUTY ASSISTANT*
  *ATTORNEY GENERAL*

SHARON SWINGLE
JOSHUA WALDMAN
  *U.S. DEPARTMENT OF JUSTICE*
  *ATTORNEYS, APPELLATE STAFF*
  *CIVIL DIVISION, ROOM 7527*
  *950 PENNSYLVANIA AVE. NW*
  *WASHINGTON, DC 20530*

*Counsel for Respondents*

Naz Ahmad
Ramzi Kassem
CLEAR Project
Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101

Robert S. Litt
Morrison & Foerster llp
2100 L Street, NW, Suite 900
Washington, DC 20037
Tel:  (202) 887-1500
RLitt@mofo.com

| **Date** | **Dkt.** | **Document** | **Appx** |
|---|---|---|---|
| | | **VOLUME I** | |
| 7/7/2023 | 2006786 | TSA Administrative Record Public and Redacted | Appx1 |
| | | **VOLUME II** | |
| 8/5/2022 | 1958969 | Petition for Review | Appx248 |
| 11/3/2006 | | Sensitive Security Information (SSI), Department of Homeland Security Management Directives System | Appx259 |
| 9/2020 | | Overview of the U.S. Government's Watchlisting Process and Procedures | Appx280 |
| 1/6/2021 | | Federal Bureau of Investigation release of information | Appx290 |
| 11/30/2022 | | Declaration of Matthew S. Davies | Appx302 |
| 12/1/2022 | | Declaration of Harry R. Metzler | Appx312 |
| 6/14/2023 | | Declaration of Steven L. McQueen Regarding Law Enforcement Sensitive Information | Appx327 |

**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 22-1184**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

FAHMI AHMED MOHARAM,
Petitioner,

v.

TRANSPORTATION SECURITY ADMINISTRATION and
DAVID P. PEKOSKE, in his official capacity as Administrator of the
Transportation Security Administration,
Respondents.

———————————

On Petition for Review from the
Transportation Security Administration

———————————

**TSA ADMINISTRATIVE RECORD
PUBLIC AND REDACTED**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

SHARON SWINGLE
JOSHUA WALDMAN
  *Attorneys, Appellate Staff
  U.S. Department of Justice
  950 Pennsylvania Ave. NW
  Washington, DC 20530
  (202) 514-0236*

# TABLE OF CONTENTS

**Page**

Doc. 1

Electronic Records of DHS TRIP's Processing of Petitioner's
Redress Inquiries Maintained in DHS TRIP's Redress
Management System (RMS) Database, including Petitioner's
Redress Inquiry, Petitioner's Appeal of His Inclusion
on the No Fly List, and Associated Documents
and Correspondence ............................................................. TSA AR 1

Doc. 2

2018 Watchlisting Guidance ............................................. TSA AR 217

Doc. 3

U.S. Government Redress Implementation Plan for
U.S. Person No Fly Individuals ......................................... TSA AR 368

Doc. 4

Final Determination Letter from the
TSA Administrator ........................................................... TSA AR 375

Doc. 5

Notice of Final Order and Decision of TSA ..................... TSA AR 376

Doc. 6

Classified Final Order and Decision of TSA .................... TSA AR 383

Doc. 7

Declaration of Tania Vazquez, Director, DHS TRIP........ TSA AR 392

USCA Case #22-1184 Document #2006786 Filed: 07/07/2023 Page 3 of 247

DEPARTMENT OF HOMELAND SECURITY

# SENSITIVE SECURITY INFORMATION

## Cover Sheet

**For more information on handling SSI, contact SSI@dhs.gov.**

**WARNING:** This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.

DHS Form 11054 (8/10) Reference: 49 CFR § 1520.13, Marking SSI



Person: Moharam, Fahmi Ahmed 2263437                                                    Page 1 of 3



Person: Moharam, Fahmi Ahmed 2263437      Page 2 of 3



**Address Information**

| | Street Address | Is Current | Is Mailing | Is Physical | Created On | |
|---|---|---|---|---|---|---|
| ☐ | PPII | Yes | Yes | Yes | 10/29/2017 1:47 PM | |

1 - 1 of 1 (0 selected)      Page 1

**Case Details**

| | RCN | Owner | Created On | ESTA Denial | Entry Class Code (Entry Class) | Status Reason |
|---|---|---|---|---|---|---|
| ☐ | | | | | | |

SSI

**Profile Information**

| Height | 5'4" | Weight | 165 |
|---|---|---|---|
| Hair Color | Brown | Eye Color | Brown |

**Attorney Info**

| Attorney Firm Name | Tarek Z Ismail, Main Street Legal Services, Inc | Attorney Email | tarek.ismai PPII |
|---|---|---|---|
| Attorney Address | 2 Court Square | Attorney City, State, ZIP | Long Island City, NY 11101 |
| Attorney Country | US | Attorney Phone Number | PPII |

**Contact Information**

| E-mail Address | yakoob_dihyem PPII | Home Telephone | PPII |
|---|---|---|---|
| Work Telephone | | | |

TSA AR000003

Person: Moharam, Fahmi Ahmed 2263437                                    Page 3 of 3

| Physical Address Street | | Physical Address City | |
| Physical Address State | | Physical Address Zip Code | |
| Physical Address Country | | | |

**Notes**

| Status | Active | | |

TSA AR000004



## TRIP Request

# 2263437

**General**

| Request # | 2263437 | Owner | SSI |
| Source | web | Status Reason | Qualified |
| Received Date | 10/29/2017 | SID | |

Attorney Name/Firm

Attorney Address

Attorney City

Attorney State

Attorney Zip

Attorney Country

Attorney Email

Attorney Phone Number

**Travel Experience**

| | Question Name (Question) | Question Text (Question) |
| --- | --- | --- |
| ☐ | Denied Boarding | I was denied boarding. |

TSA AR000005

Appx7

TRIP Request: 2263437                                                    Page 2 of 4



| 1 - 1 of 1 (0 selected) | | | | Page 1 |
|---|---|---|---|---|

**Incident Details**    I, fahmi Moharam was denied boarding on Saudi airlines to the United States with out anyreason

**Comments**

**Flight Date**    10/25/2017 12:00:00 AM

**Airport**    King Abdulaziz International Airport

**Airline**    Saudi Arabian Airlines

**Flight Number**    SV 21

**International or Domestic**    International

**Incidents Related to Port US Airport**

**Name At Entry Into US**

**Personal Information**

| | | | |
|---|---|---|---|
| **Prefix** | Mr. | **Suffix** | |
| **First Name** | Fahmi | **Middle Name** | Ahmed |
| **Last Name** | Moharam | **Gender** | M |
| **Birth Date** | PPII /1975 | **Birth City** | PPII |

TSA AR000006

Appx8

TRIP Request: 2263437                                                      Page 3 of 4



**Birth State**

**Height**          5- 4"

**Hair Color**      brown

**US Persons**      US Persons

**Birth Country**

**Weight**          165

**Eye Color**       Brown

### Contact Information

Mailing Address

**Street or PO Box**

**City or Town**

**Country**

Other

**Home Telephone**

**E-mail Address**

**Physical Address Street**

**Physical Address City**

**Physical Address State**

**Physical Address Zip Code**

**Physical Address Country**

**Apt No**

**State or Province**

**Zip or Postal Code**

**Work Telephone**

TSA AR000007

TRIP Request: 2263437

## Additional Information

| | |
|---|---|
| Date of Entry into US | Port of Entry into US |
| Name of Airline or Ship | Flight or Cruise Number |
| Departure Date from U.S. | U.S. Port of Departure |
| Name At Entry | |
| Other Name (First) | Other Name (Middle) |
| Other Name (Last) | |

## Other Names Used

| | Name | Duplicate Match... | Created On |
|---|---|---|---|
| ☐ | Moharam, Fahmi Ahmed 2263437 | No | 10/29/2017 1:45 PM |

1 - 1 of 1 (0 selected)                                                                 Page 1

## Identity Documentation

| | ID Number | Duplicate | Sub Type | Type | Country | Issue State | Issue Date | Created On |
|---|---|---|---|---|---|---|---|---|
| ☐ | PPT | Yes | Passport | Identity | US | | 11/25/2015 | 10/29/2017 1:45 PM |

1 - 1 of 1 (0 selected)                                                                 Page 1

## Notes

| Status | Inactive |
|---|---|

TSA AR000008

Appx10

Redress Case: 2263437                                                                                  Page 1 of 4



### Redress Case

# 2263437

**General**

| Name | 2263437 | Owner | GPII |
|---|---|---|---|
| Case Start Date | 11/17/2017 8:10 AM | Case Closed Date | 2/20/2020 1:37 PM |
| Case Type | New Case Enhcd | Source | web |
| Person | Moharam, Fahmi Ahmed 2263437 | ResolutionLetter | 20011A Enhanced Stage 2 Summary |
| Status | Inactive | Status Reason | Closed |

**Travel Experience**

| | Question Name (Question) | Question Text (Question) |
|---|---|---|
| ☐ | Denied Boarding | I was denied boarding. |

1 - 1 of 1 (0 selected)                                                                                     Page 1

Details         I, fahmi Moharam was denied boarding on Saudi airlines to the United States with out anyreason

Comments

TSA AR000009

Redress Case: 2263437    Page 2 of 4



**Case Documents**

| Document Name | Type | Sub Type | ID Number | Issuer | Issue Date | Created On |
|---|---|---|---|---|---|---|
| 2_2263437_PPII | Identity | Passport | PPII | US | 11/25/2015 | 10/29/2017 1:47 PM |
| 5_2263437_Received | Email | Received | | | | 10/30/2017 1:58 PM |
| 4_2263437_All_Docs | Incoming | All Docs | | | | 11/1/2017 1:45 PM |
| 3_2263437_Incomplete | Letter | Incomplete | | | | 11/1/2017 1:46 PM |
| 3_2263437_NTVC | Letter | NTVC | | | | 11/20/2017 11:25 AM |
| 3_2263437_Resolution | Letter | Resolution | | | | 2/14/2018 4:08 PM |
| 4_2263437_Enhanced | Incoming | Enhanced | | | | 3/16/2018 12:44 PM |
| 5_2263437_Sent | Email | Sent | | | | 3/19/2018 4:06 PM |
| 3_2263437_LHM | Letter | LHM | | | | 2/19/2020 3:50 PM |
| 3_2263437_Enhanced | Letter | Enhanced | | | | 2/20/2020 12:15 PM |

1 - 10 of 10 (0 selected)    Page 1

**Analyses**

| Component | Status Reason | Disposition | Suggested Resolution Letter | Created On | Analysis Closed Date |
|---|---|---|---|---|---|

SSI, LEP

Departure Date    Departure Port

Name At Entry

TSA AR000010

Appx12

Redress Case: 2263437                                                      Page 3 of 4



| Domestic | | International | Yes | In Litigation | |
|---|---|---|---|---|---|
| Airline Or Sea Vessel | Saudi Arabian Airlines | Ticket Number | | Date of Occurance | |
| ESTA Denial | | Immigration Benefit | ▪ | Officer Type | |
| Record Retention | | | | | |
| Airport | King Abdulaziz International Airport | Airline | Saudi Arabian Airlines | Flight Date | 10/25/2017 12:00:00 AM |
| Flight Number | SV 21 | International/Dom... | International | Name at Entry Into US | |
| Incident US Airport | | US Persons | US Persons | | |

**Notes**

TSA AR000011

Redress Case: 2263437

Page 4 of 4



**TSA QA**

QA 1 Reviewer                                    QA 2 Reviewer

QA 1 Reviewed                                    QA 2 Reviewed

QA Type

**Activities**

☑ Activities (Regarding) **Open Activities**

| | Subject | Regarding | Activity Type | Activity Status | Priority | Due Date |
|---|---|---|---|---|---|---|
| ☐ | | | No Activity records are available in this view. | | | |

0 – 0 of 0 (0 selected)                                                        Page 1

Status            Inactive

TSA AR000012

USCA Case #22-1184    Document #2006786    Filed: 07/07/2023    Page 15 of 247



TSA AR000013

Analysis: SSI 2263437.0                                                          Page 1 of 2



Analysis: SSI 2263437.0

Page 2 of 2

## SSI, LEP

**Summary**

Summary

TSA AR000015

Analysis: Hold_2263437_MANUAL_11202017101720



TSA AR000016

Analysis: Hold_2263437_MANUAL_11202017101720                    Page 2 of 2



TSA AR000017

Analysis: SSI 2263437.0        Page 1 of 2



Analysis: SSI 2263437.0    Page 2 of 2

**SSI**

**Summary**

Summary

TSA AR000019

Analysis: ▆ 2263437.0                                                                    Page 1 of 2



TSA AR000020

Analysis: SSI 2263437.0                                                                 Page 2 of 2



**Notes**

**Summary**

Summary

TSA AR000021

USCA Case #22-1184    Document #2006786    Filed: 07/07/2023    Page 24 of 247



TSA AR000022

Full Name: Fahmi Ahmed Moharam

DOB: PPII 1975



TSA AR000023

U.S. Department of Homeland Security
Traveler Redress Inquiry Program (TRIP)
6595 Springfield Center Drive, TSA-901
Springfield, Virginia 20598-6901

 Homeland
Security

November 01, 2017

Mr. Fahmi Ahmed Moharam

 PPII

Redress Control Number: 2263437

Dear Mr. Fahmi Moharam:

Our records show that you filed an inquiry with the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP). During a recent audit, we discovered that we were unable to complete our review because the inquiry package that we received is incomplete. A more complete description of the problem is described below.

Your application did not include any identity documents. Our program requires the submission of at least one government issued photograph bearing travel document. In each document, DHS TRIP must be able to discern your facial features, and the information must be legible. It is strongly recommended that travelers submit a copy of a passport since it is required for international travel. Please note that our program does not accept expired travel documents. In the case of a child, we advise parents to submit a copy of the child's birth certificate. Do not send the original document. Please note that the provision of the identity document is a program requirement that DHS TRIP cannot waive.

Rather than administratively closing our existing record, we request that you provide the requested documentation. Please mail, or e-mail a copy of your requested documentation to the address below:

Department of Homeland Security
Traveler Redress Inquiry Program (DHS TRIP)
RE: 2263437
601 S. 12th Street, TSA-901
Arlington, VA 20598-6901

E-Mail: Trip@dhs.gov

If we do not receive the requested information within 30 days, we will administratively close your record. If you have any questions, please contact the TSA Contact Center at (866) 289-9673, or (571) 227-2900, by e-mail at TSA-ContactCenter@dhs.gov, or write to the address identified herein.

Sincerely,

Deborah O. Moore
Director
DHS Traveler Redress Inquiry Program

TSA AR000024



**U.S. Department of Homeland Security**
Traveler Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901

February 14, 2018

Mr. Fahmi Ahmed Moharam



Redress Control Number: 2263437

Dear Mr. Moharam:

This letter concerns the redress inquiry that you submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) on October 29, 2017.

We have conducted a review of any applicable records in consultation with other federal agencies, as appropriate. It has been determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A).

You may request additional information about your placement on the No Fly List and have the opportunity to respond to any information provided if you believe that the above determination is in error. Following these steps, you may also request an administrative review of your status on the No Fly List.

If you would like to request additional information about your placement on the No Fly List, you must contact us within 30 days of the date of this letter. During this initial 30-day period, and for good cause shown, you may request a 30-day extension. You may contact DHS TRIP via email at TRIP@dhs.gov or write to the address found in the letterhead.

If we do not receive your request for additional information or a request for an extension within 30 days of the date of this letter, the determination described above will become final. Should you choose not to continue with the redress process described above, you may seek judicial review of this determination within 60 days in an appropriate United States Court of Appeals pursuant to 49 U.S.C. § 46110. Please note that if you do continue with the redress process described above, you may still seek judicial review in the United States Court of Appeals at its conclusion.

If you have any further questions, you may contact DHS TRIP at the addresses given above.

Sincerely,

DHS Traveler Redress Inquiry Program

TSA AR000025



**U.S. Department of Homeland Security**
Traveler Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901

February 14, 2018

Mr. Fahmi Ahmed Moharam
c/o Tarek Z. Ismail, Main Street Legal Services, Inc.
2 Court Square
Long Island City, NY 11101
United States

Redress Control Number: 2263437

Dear Mr. Moharam:

This letter concerns the redress inquiry that you submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) on October 29, 2017.

We have conducted a review of any applicable records in consultation with other federal agencies, as appropriate. It has been determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A).

You may request additional information about your placement on the No Fly List and have the opportunity to respond to any information provided if you believe that the above determination is in error. Following these steps, you may also request an administrative review of your status on the No Fly List.

If you would like to request additional information about your placement on the No Fly List, you must contact us within 30 days of the date of this letter. During this initial 30-day period, and for good cause shown, you may request a 30-day extension. You may contact DHS TRIP via email at TRIP@dhs.gov or write to the address found in the letterhead.

If we do not receive your request for additional information or a request for an extension within 30 days of the date of this letter, the determination described above will become final. Should you choose not to continue with the redress process described above, you may seek judicial review of this determination within 60 days in an appropriate United States Court of Appeals pursuant to 49 U.S.C. § 46110. Please note that if you do continue with the redress process described above, you may still seek judicial review in the United States Court of Appeals at its conclusion.

If you have any further questions, you may contact DHS TRIP at the addresses given above.

Sincerely,

DHS Traveler Redress Inquiry Program

TSA AR000026

From:        Yakoob Dihyem
To:          RedressFinal, TRIP
Subject:     Fahmi Muharam Very urgent
Date:        Sunday, October 29, 2017 2:02:48 PM
Attachments: DHS    TRIP Fahmi.txt
             Fahmi DHS.pdf

TSA AR000027



-- PRINT THIS PAGE FOR YOUR RECORDS --
**DHS TRAVELER REDRESS INQUIRY PROGRAM (TRIP)**
**Traveler Inquiry Form**
Thank You: Fahmi Ahmed Moharam

Your Redress Control Number is: 2263437

**To complete the process, please mail or e-mail COPIES of the following documents to DHS:**

      1. Passport

      2. AND a signed copy of this page.

You can mail or e-mail the documents and signed form to:
DHS TRIP
Attention: Control number 2263437
601 South 12th Street TSA-901
Arlington, Virginia 20598-6901

OR by E-Mail to trip@dhs.gov

If DHS does not receive the documents within 30 days, including a signed copy of this page, your request for redress will not be processed.

To check on the status of your Redress request, please go to the TRIP Status Page and enter your control number.

**HELP US IMPROVE THE DHS TRIP WEBSITE/ONLINE APPLICATION -- CLICK ON**
**"DHS TRIP Website Survey" LINK ON THE LEFT NAVIGATION BAR.**

The information I have provided on this application is true, complete, and correct to the best of my knowledge and is provided in good faith. I understand that knowingly and willfully making any materially false statement, or omission of a material fact, on this application can be punished by fine or imprisonment or both (see section 1001 of Title 18 United States Code).

**Privacy Act Notice:**

**Authority:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect. **Principal Purposes:** DHS will use this information in order to assist you with seeking redress in connection with travel. **Routine Uses:** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request. **Disclosure:** Furnishing this information is voluntary; however, the Department of Homeland Security may not be able to process your redress inquiry without the information requested.

I understand the above information and am voluntarily submitting this information to the Department of Homeland Security.

**PAPERWORK REDUCTION ACT STATEMENT:**

Through this information collection, DHS is gathering information about you to conduct redress procedures, as an individual who believes he or she has been (1) denied or delayed boarding, (2) denied or delayed entry into or departure from the United States as a port of entry, or (3) identifies for additional screening at our Nation's transportation hubs, including airports, seaports, train stations and land borders. The public burden for this collection of information is estimated to be one hour. This voluntary collection of information. If you have any comments on this form, you may contact the Transportation Security Administration, Office of Transportation Security Redress, TSA-901, 601 South 12th Street, Arlington, VA 20598-6901. An agency may not conduct or sponsor, and persons are not required to respond to, a collection of information unless it displays a currently OMB control number. The OMB control number assigned to this collection is 1652-0044 which expires on 03/31/2019

_signature_     10 / 29 / 2017
Signature / Date
FORM APPROVED OMB NO. 1652-0044. EXPIRES 03/31/2019

Click here to return to the DHS TRIP website.

TSA AR000028

| From: | Tarek Z. Ismail |
|---|---|
| To: | RedressFinal, TRIP |
| Subject: | Fahmi Moharam (RCN 2263437) |
| Date: | Wednesday, November 8, 2017 11:29:25 AM |
| Attachments: | DHS TRIP Letter_11.01.17.jpg |
| | Passport photo.jpg |
| | Form 590.pdf |

To whom it may concern,

Our office represents Mr. Fahmi Moharam.

Mr. Moharam submitted a TRIP inquiry on October 29, 2017. His family received the attached letter, dated November 1, 2017, in the mail yesterday, noting that Mr. Moharam's inquiry was missing a copy of his identity documents. We're attaching here a copy of Mr. Moharam's passport, which should satisfy that requirement.

Additionally, we're hereby submitting an executed DHS Form 590, indicating our representation of Mr. Moharam, and his authorization of release of all information with respect to this matter. Please copy our office on all correspondence.

We appreciate your attention to this issue.

Yours,

Tarek Z. Ismail

--
Tarek Z. Ismail
Senior Staff Attorney
CLEAR project
CUNY School of Law
2 Court Square
Long Island City, 11101
tarek.ismail PPII
PPII

TSA AR000029

U.S. Department of Homeland Security
Traveler Redress Inquiry Program (TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20554-6901

**Homeland Security**

November 01, 2017

Mr. Fahmi Ahmed Moharam

PPII

Redress Control Number: 2263437

Dear Mr. Fahmi Moharam:

Our records show that you filed an inquiry with the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP). During a recent audit, we discovered that we were unable to complete our review because the inquiry package that we received is incomplete. A more complete description of the problem is described below.

Your application did not include any identity documents. Our program requires the submission of at least one government issued photograph bearing travel document. In each document, DHS TRIP must be able to discern your facial features, and the information must be legible. It is strongly recommended that travelers submit a copy of a passport since it is required for international travel. Please note that our program does not accept expired travel documents. In the case of a child, we advise parents to submit a copy of the child's birth certificate. Do not send the original document. Please note that the provision of the identity document is a program requirement that DHS TRIP cannot waive.

Rather than administratively closing our existing record, we request that you provide the requested documentation. Please mail, or e-mail a copy of your requested documentation to the address below:

Department of Homeland Security
Traveler Redress Inquiry Program (DHS TRIP)
RE: 2263437
601 S. 12th Street, TSA-901
Arlington, VA 20598-6901

E-Mail: Trip@dhs.gov

If we do not receive the requested information within 30 days, we will administratively close your record. If you have any questions, please contact the TSA Contact Center at (866) 289-9673, or (571) 227-2900, by e-mail at TSA-ContactCenter@dhs.gov, or write to the address identified herein.

Sincerely,

Deborah O. Moore

Deborah O. Moore
Director
DHS Traveler Redress Inquiry Program

TSA AR000030

PPII

TSA AR000031

DEPARTMENT OF HOMELAND SECURITY
## AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

**SECTION I. Personal Information**

Name

FAHMI AHMED MOHARAM

Address

PPII

Date of Birth | Place of Birth (city, state, country)

PPII

**SECTION II. Representative Information**

Name
Main Street Legal Services, Inc./ Tarek Z. Ismail

Address
2 Court Square

| City | State | Zip Code |
|---|---|---|
| Long Island City | NY | 11101 |
| Country | Telephone Number(s) | |
| USA | PPII | |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _[signature]_      Date 11-02-2017

**PRIVACY ACT STATEMENT:**

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)      Page 1 of 1

TSA AR000032

| From: | Jamshid Saloor |
|---|---|
| To: | RedressFinal, TRIP; GPII |
| Cc: | tarek.ismai PPII    princess.masilungan PPII |
| Subject: | TRIP Application - Request For Additional Information |
| Date: | Tuesday, March 13, 2018 2:39:01 PM |
| Attachments: | DHS TRIP_Request For Additional Information.pdf |

To whom it may concern:

I hope this email finds you well. Please see the attached document, which contains:

1. DHS TRIP response to Mr. Fahmi Ahmed Moharam's application (Redress Control Number: 2263437)
2. Mr. Moharam's request for additional information

Please let me know if you have any questions.

Thank you,
Jamshid Saloor


--
Jamshid Saloor
J.D. Candidate, Class of 2018
City University of New York School of Law
jamshid.saloo PPII

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

TSA AR000033



U.S. Department of Homeland Security
Traveler Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901

**Homeland Security**

February 14, 2018

Mr. Fahmi Ahmed Moharam
c/o Tarek Z. Ismail, Main Street Legal Services, Inc.
2 Court Square
Long Island City, NY 11101
United States

Redress Control Number: 2263437

Dear Mr. Moharam:

This letter concerns the redress inquiry that you submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) on October 29, 2017.

We have conducted a review of any applicable records in consultation with other federal agencies, as appropriate. It has been determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A).

You may request additional information about your placement on the No Fly List and have the opportunity to respond to any information provided if you believe that the above determination is in error. Following these steps, you may also request an administrative review of your status on the No Fly List.

If you would like to request additional information about your placement on the No Fly List, you must contact us within 30 days of the date of this letter. During this initial 30-day period, and for good cause shown, you may request a 30-day extension. You may contact DHS TRIP via email at TRIP@dhs.gov or write to the address found in the letterhead.

If we do not receive your request for additional information or a request for an extension within 30 days of the date of this letter, the determination described above will become final. Should you choose not to continue with the redress process described above, you may seek judicial review of this determination within 60 days in an appropriate United States Court of Appeals pursuant to 49 U.S.C. § 46110. Please note that if you do continue with the redress process described above, you may still seek judicial review in the United States Court of Appeals at its conclusion.

If you have any further questions, you may contact DHS TRIP at the addresses given above.

Sincerely,

DHS Traveler Redress Inquiry Program

TSA AR000034



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

March 13, 2018

U.S. Department of Homeland Security
Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA FIRST CLASS MAIL AND ELECTRONIC MAIL

**Re:**    Request for additional information for Fahmi Ahmed Moharam
       (TRIP Redress Control Number: **2263437**)

To Whom It May Concern:

     Our client, **Mr. Fahmi Ahmed Moharam** recently received  letter in response to a DHS
Travel Inquiry Form filed on October 29, 2017, indicating that he is on the United States
Government's No Fly List because he has been identified as an "individual who may be a threat
to civil aviation or national security." We believe this determination was made in error and
hereby request an administrative review of Mr. Moharam's status.

     The "absence of any meaningful procedures" for Mr. Moharam to contest his placement on
the No–Fly List would violate his procedural due process rights. *Latif v. Holder*, 28 F. Supp. 3d
1134, 1161 (D. Or. 2014). As legal counsel for Mr. Moharam, and pursuant to the TRIP
procedures described in the February 14, 2018 letter, we hereby request all available information
about his placement on the No Fly List, including but not limited to: the specific criterion under
which Mr. Moharam has been placed on the No Fly List; the nominating agencies and any
information pertaining to Mr. Moharam's placement on the No Fly List; and the timeline and
process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP
procedures, that DHS will provide an unclassified summary of the information that DHS has
relied on to support Mr. Moharam's status on the No Fly List.

     Please note that DHS' letter, which is enclosed, was dated February 14, 2018, and that this
request is made within 30 days of receipt.

     Thank you for your time and consideration in this matter. Please contact us if you have any
questions or require additional information.

Sincerely,

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



TSA AR000035

Jamshid Saloor, Law Student Intern
Princess Masilungan, Law Student Intern
Tarek Z. Ismail, Senior Staff Attorney
PPII
tismail PPII

cc:      GPII

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4455
(e) cunyclear@mail.law.cuny.edu

CU
NY

TSA AR000036

| From: | RedressFinal, TRIP |
|---|---|
| To: | tarek.ismai PPII |
| Cc: | GPII |
| Subject: | RE: TRIP Application - Request For Additional Information |
| Date: | Monday, March 19, 2018 4:04:00 PM |
| Attachments: | DHS Form 590.pdf |

Thank you for submitting your client's request for more information to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP). This email constitutes an interim response. Once the review of your client's request is complete, we will send a written response. If you have any further questions, please contact DHS TRIP via e-mail at TRIP@dhs.gov or write to the address:

> U.S. Department of Homeland Security
> Traveler Redress Inquiry Program (DHS TRIP)
> RE: 2263437
> 601 South 12th Street, TSA-901
> Arlington, VA  20598-6901

Please note that DHS TRIP requires a DHS Form 590, Authorization to Release Information to Another Person, for every representative who wishes to communicate on behalf of and/or receive updates for a redress applicant. We have accepted this request for more information and placed it into process but we have removed Mr. Saloor from this reply as we do not have a 590 on file for him. Attached is the form 590 should Mr. Moharam wish to complete one for Mr. Saloor.

Sincerely,
DHS TRIP

**From:** Jamshid Saloor PPII
**Sent:** Tuesday, March 13, 2018 2:38 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov> GPII

**Cc:** tarek.ismai PPII          princess.masilungar PPII
**Subject:** TRIP Application - Request For Additional Information

To whom it may concern:

I hope this email finds you well. Please see the attached document, which contains:

1. DHS TRIP response to Mr. Fahmi Ahmed Moharam's application (Redress Control Number: 2263437)
2. Mr. Moharam's request for additional information

Please let me know if you have any questions.

Thank you,

TSA AR000037

Jamshid Saloor


--
Jamshid Saloor
J.D. Candidate, Class of 2018
City University of New York School of Law
jamshid.saloor PPII

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

TSA AR000038

DEPARTMENT OF HOMELAND SECURITY
# AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

## SECTION I. Personal Information

Name

Address

| City | State | Zip Code |
|---|---|---|
| Country | Telephone Number(s) | |
| Date of Birth | Place of Birth (city, state, country) | |

## SECTION II. Representative Information

Name

Address

| City | State | Zip Code |
|---|---|---|
| Country | Telephone Number(s) | |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _____    Date _____

**PRIVACY ACT STATEMENT:**

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)

TSA AR000039

| From: | quiniva.smith PPII |
| To: | RedressFinal, TRIP; GPII |
| Cc: | souad.haddara PPII    tarek.ismai PPII |
| Subject: | Request Update for Fahmi Ahmed Moharam, Redress #2263437 |
| Date: | Tuesday, October 30, 2018 6:39:59 PM |
| Attachments: | TRIP_Appeal_3.13.18.docx |

To whom it may concern,

We are writing to you on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

Almost 8 months have passed since our initial request for administrative review. This undue delay is causing Mr. Moharam undue harm and we seek a response to our request for administrative review.

I am attaching the March 13th appeal letter for reference. Please update us as soon as possible with respect to the progress of this case.

Sincerely,
Quiniva Smith
Souad Haddara
*Student Attorneys*
Tarek Ismail, Esq.
*Supervising Attorney*

**Quiniva Smith**
J.D. Candidate 2020
City University of New York School of Law
quiniva.smith PPII

TSA AR000040



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

March 13, 2018

U.S. Department of Homeland Security
Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA FIRST CLASS MAIL AND ELECTRONIC MAIL

**Re:**    Request for additional information for Fahmi Ahmed Moharam
          (TRIP Redress Control Number: **2263437**)

To Whom It May Concern:

        Our client, **Mr. Fahmi Ahmed Moharam** recently received letter in response to a DHS
Travel Inquiry Form filed on October 29, 2017, indicating that he is on the United States
Government's No Fly List because he has been identified as an "individual who may be a threat
to civil aviation or national security." We believe this determination was made in error and
hereby request an administrative review of Mr. Moharam's status.

    The "absence of any meaningful procedures" for Mr. Moharam to contest his placement on
the No–Fly List would violate his procedural due process rights. *Latif v. Holder*, 28 F. Supp. 3d
1134, 1161 (D. Or. 2014). As legal counsel for Mr. Moharam, and pursuant to the TRIP
procedures described in the February 14, 2018 letter, we hereby request all available information
about his placement on the No Fly List, including but not limited to: the specific criterion under
which Mr. Moharam has been placed on the No Fly List; the nominating agencies and any
information pertaining to Mr. Moharam's placement on the No Fly List; and the timeline and
process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP
procedures, that DHS will provide an unclassified summary of the information that DHS has
relied on to support Mr. Moharam's status on the No Fly List.

        Please note that DHS' letter, which is enclosed, was dated February 14, 2018, and that this
request is made within 30 days of receipt.

        Thank you for your time and consideration in this matter. Please contact us if you have any
questions or require additional information.

Sincerely,

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@law.cuny.edu



TSA AR000041

Jamshid Saloor, Law Student Intern
Princess Masilungan, Law Student Intern
Tarek Z. Ismail, Senior Staff Attorney



tismai

cc:

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4455
(e) cunyclear@mail.law.cuny.edu

TSA AR000042

| | |
|---|---|
| **From:** | RedressFinal, TRIP |
| **To:** | tarek.ismai PPII |
| **Subject:** | RE: Request Update for Fahmi Ahmed Moharam, Redress #2263437 |
| **Date:** | Friday, November 9, 2018 9:32:00 AM |
| **Attachments:** | DHS Form 590.pdf |

Thank you for your inquiry regarding the status of your client's Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) request for more information. Your client's request for more information is under review.

At the end of the review process, you will receive a written response via physical and electronic mail. At this time, there is no additional information to share.

Please note that DHS TRIP requires a DHS Form 590, Authorization to Release Information to Another Person, for every representative who wishes to communicate on behalf of and/or receive updates for a redress applicant. We removed Quiniva Smith and Souad Haddara from this reply as we do not have a 590 on file for them. Attached is the form 590 should Mr. Moharam wish to complete one for them.

Sincerely,
DHS TRIP

**From:** quiniva.smith PPII PPII
**Sent:** Tuesday, October 30, 2018 6:40 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>; GPII

**Cc:** souad.haddara PPII     tarek.ismai PPII
**Subject:** Request Update for Fahmi Ahmed Moharam, Redress #2263437

To whom it may concern,

We are writing to you on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

Almost 8 months have passed since our initial request for administrative review. This undue delay is causing Mr. Moharam undue harm and we seek a response to our request for administrative review.

TSA AR000043

I am attaching the March 13th appeal letter for reference. Please update us as soon as possible with respect to the progress of this case.


Sincerely,
Quiniva Smith
Souad Haddara
*Student Attorneys*
Tarek Ismail, Esq.
*Supervising Attorney*


**Quiniva Smith**
J.D. Candidate 2020
City University of New York School of Law
quiniva.smith PPII

| | |
|---|---|
| **From:** | wendy.jennings PPII |
| **To:** | RedressFinal, TRIP; GPII |
| **Cc:** | Tarek; hannah.walsh PPII |
| **Subject:** | Fahmi Moharam TRIP appeal |
| **Date:** | Monday, February 11, 2019 11:31:23 AM |
| **Attachments:** | TRIP_Appeal.pdf |

To Whom It May Concern:

We are writing on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We last heard from you in November 2018, when you informed us that there was not yet information to share.

We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

Almost 11 months have passed since our initial request for administrative review. This delay is causing Mr. Moharam undue harm and we seek a response to our request for administrative review. I am attaching the March 13th appeal letter for reference. Please update us as soon as possible with respect to the progress of this case. Mr. GPII, is there a time soon when we could speak with you regarding Mr. Moharam's case? If you cannot speak about his case specifically, we would appreciate speaking with you about TRIP more broadly.

Thank you,

Sincerely,

Wendy Jennings
Hannah Walsh
Student Attorneys

Tarek Ismail, Esq.
Supervising Attorney

_____

Wendy Jennings

JD Candidate 2019 | CUNY School of Law

TSA AR000045

USCA Case #22-1184    Document #2006786    Filed: 07/07/2023    Page 48 of 247



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

March 13, 2018

U.S. Department of Homeland Security
Travel Redress Inquiry Program (DHS TRIP)
601 South 12ᵗʰ Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA FIRST CLASS MAIL AND ELECTRONIC MAIL

**Re:**    Request for additional information for Fahmi Ahmed Moharam
(TRIP Redress Control Number: **2263437**)

To Whom It May Concern:

Our client, **Mr. Fahmi Ahmed Moharam** recently received  letter in response to a DHS
Travel Inquiry Form filed on October 29, 2017, indicating that he is on the United States
Government's No Fly List because he has been identified as an "individual who may be a threat
to civil aviation or national security." We believe this determination was made in error and
hereby request an administrative review of Mr. Moharam's status.

The "absence of any meaningful procedures" for Mr. Moharam to contest his placement on
the No–Fly List would violate his procedural due process rights. *Latif v. Holder*, 28 F. Supp. 3d
1134, 1161 (D. Or. 2014). As legal counsel for Mr. Moharam, and pursuant to the TRIP
procedures described in the February 14, 2018 letter, we hereby request all available information
about his placement on the No Fly List, including but not limited to: the specific criterion under
which Mr. Moharam has been placed on the No Fly List; the nominating agencies and any
information pertaining to Mr. Moharam's placement on the No Fly List; and the timeline and
process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP
procedures, that DHS will provide an unclassified summary of the information that DHS has
relied on to support Mr. Moharam's status on the No Fly List.

Please note that DHS' letter, which is enclosed, was dated February 14, 2018, and that this
request is made within 30 days of receipt.

Thank you for your time and consideration in this matter. Please contact us if you have any
questions or require additional information.

Sincerely,

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



Jamshid Saloor, Law Student Intern
Princess Masilungan, Law Student Intern
Tarek Z. Ismail, Senior Staff Attorney

PPII

tismai PPII

cc:     GPII

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4455
(e) cunyclear@mail.law.cuny.edu



TSA AR000047

| | |
|---|---|
| **From:** | RedressFinal, TRIP |
| **To:** | "Tarek" |
| **Subject:** | RE: Fahmi Moharam TRIP appeal |
| **Date:** | Friday, February 15, 2019 6:27:00 PM |
| **Attachments:** | DHS Form 590.pdf |

Thank you for your inquiry regarding the status of your client's Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) request for more information. Your client's request for more information is in process.

Please note that DHS TRIP requires a DHS Form 590, Authorization to Release Information to Another Person, for every representative who wishes to communicate on behalf of and/or receive updates for a redress applicant. We have removed Ms. Jennings and Ms. Walsh from this reply as we do not have a 590 on file for them. Attached is the Form 590 should Mr. Moharam wish to complete one for Ms. Jennings and Ms. Walsh.

At the end of the review process, you and your client will receive a written response via electronic mail. At this time, there is no additional information to share.

Sincerely,
DHS TRIP

-----Original Message-----
From: wendy.jennings PPII
Sent: Monday, February 11, 2019 11:31 AM
To: RedressFinal, TRIP <TRIP@tsa.dhs.gov>; GPII
Cc: Tarek <tarek.ismai PPII ; hannah.walsh PPII
Subject: Fahmi Moharam TRIP appeal

To Whom It May Concern:

We are writing on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We last heard from you in November 2018, when you informed us that there was not yet information to share.

We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

Almost 11 months have passed since our initial request for administrative review. This delay is causing Mr. Moharam undue harm and we seek a response to our request for administrative

TSA AR000048

review. I am attaching the March 13th appeal letter for reference. Please update us as soon as possible with respect to the progress of this case. Mr GPII, is there a time soon when we could speak with you regarding Mr. Moharam's case? If you cannot speak about his case specifically, we would appreciate speaking with you about TRIP more broadly.

Thank you,

Sincerely,

Wendy Jennings
Hannah Walsh
Student Attorneys

Tarek Ismail, Esq.
Supervising Attorney

_____

Wendy Jennings

JD Candidate 2019 | CUNY School of Law

| | |
|---|---|
| **From:** | RedressFinal, TRIP |
| **To:** | "Naz Ahmad" |
| **Cc:** | GPII |
| **Subject:** | RE: 2263437 - Request for Extension |
| **Date:** | Monday, April 19, 2021 3:08:00 PM |

Thank you for your most recent inquiry. This email is to confirm that your client has been granted an extension until October 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

With respect to your renewed request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Thursday, April 15, 2021 11:06 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello —

I am writing to follow up on our request for an extension, which is currently due April 19, 2021.

Kind regards,

Naz

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Wednesday, April 7, 2021 at 12:41 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

Hello —

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

TSA AR000050

Kind regards,

Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.
Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII    Sharmin Piancca

TSA AR000051

**Appx53**

PPII                                          Princess Masilungan
PPII                                          , Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                          Sharmin Piancca
PPII                                          Princess Masilungan <PPII
Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

TSA AR000052

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                          Sharmin Piancca
PPII                          Princess Masilungan
PPII                          Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000053

| | |
|---|---|
| **From:** | Tarek Z. Ismail |
| **To:** | RedressFinal, TRIP; GPII |
| **Cc:** | "Naz Ahmad" |
| **Subject:** | Re: Fahmi Moharam TRIP appeal |
| **Date:** | Monday, July 22, 2019 12:01:26 PM |

Dear Mr. GPII

Following up on this message, again, regarding Mr. Moharam's whose appeal has now been pending for 1 year and 4 months.

We look forward to your prompt and informative response.

Best,
Tarek

Tarek Z. Ismail
Senior Staff Attorney
CLEAR project
CUNY School of Law
2 Court Square
Long Island
PPII        PPII

On 3/11/2019 11:04 AM, Tarek Z. Ismail wrote:

> Dear Mr. GPII
>
> Following up on this message regarding Mr. Moharam, whose appeal has been pending for nearly a year.
>
> We anticipate your prompt and informative response.
>
> Best,
> Tarek
>
> Tarek Z. Ismail
> Senior Staff Attorney
> CLEAR project
> CUNY School of Law
> 2 Court Square
> Long Island
> PPII        PPII

On 2/11/2019 11:31 AM, wendy.jennings PPII wrote:

>> To Whom It May Concern:
>>
>> We are writing on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.
>>
>> We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We last heard from you in November 2018, when you informed us that there was not yet information to share.
>>
>> We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List,

TSA AR000054

Appx56

and the timeline and process for Mr. Moharam's placement
on the No Fly List. We expect, in accordance with TRIP
procedures, that DHS will provide an unclassified summary
of the information that DHS has relied on to support Mr.
Moharam's status on the No Fly List.

Almost 11 months have passed since our initial request
for administrative review. This delay is causing Mr.
Moharam undue harm and we seek a response to our request
for administrative review. I am attaching the March 13th
appeal letter for reference. Please update us as soon as
possible with respect to the progress of this case. Mr.
[REDACTED] is there a time soon when we could speak with you
regarding Mr. Moharam's case? If you cannot speak about
his case specifically, we would appreciate speaking with
you about TRIP more broadly.

Thank you,

Sincerely,

Wendy Jennings
Hannah Walsh
Student Attorneys

Tarek Ismail, Esq.
Supervising Attorney

_____

Wendy Jennings

JD Candidate 2019  |  CUNY School of Law

TSA AR000055

| From: | RedressFinal, TRIP |
|---|---|
| To: | "tarek.ismai PPII |
| Cc: | "Naz Ahmad"; GPII |
| Subject: | RE: Fahmi Moharam TRIP appeal |
| Date: | Wednesday, July 31, 2019 5:26:00 PM |

Thank you for your inquiry regarding the status of your client's Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) request for more information. DHS TRIP continues to process your client's request for review. At the end of the review process, you will receive a written response via electronic mail. At this time, there is no additional information to share.

Sincerely,
DHS TRIP

**From:** Tarek Z. Ismail PPII
**Sent:** Monday, July 22, 2019 11:54 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>; GPII
**Cc:** 'Naz Ahmad' <naz.ahmad@law.cuny.edu>
**Subject:** Re: Fahmi Moharam TRIP appeal

Dear Mr. GPII,

Following up on this message, again, regarding Mr. Moharam's whose appeal has now been pending for 1 year and 4 months.

We look forward to your prompt and informative response.

Best,
Tarek

Tarek Z. Ismail
Senior Staff Attorney
CLEAR project
CUNY School of Law
2 Court Square
Long Island
tarek.ismail PPII
PPII

On 3/11/2019 11:04 AM, Tarek Z. Ismail wrote:

Dear Mr. GPII,

Following up on this message regarding Mr. Moharam, whose appeal has been pending for nearly a year.

We anticipate your prompt and informative response.

Best,
Tarek

Tarek Z. Ismail
Senior Staff Attorney
CLEAR project
CUNY School of Law
2 Court Square
Long Island City, 11101
tarek.ismail PPII
PPII

TSA AR000056

On 2/11/2019 11:31 AM, wendy.jennings PPII ████████ wrote:

To Whom It May Concern:

We are writing on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We last heard from you in November 2018, when you informed us that there was not yet information to share.

We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

Almost 11 months have passed since our initial request for administrative review. This delay is causing Mr. Moharam undue harm and we seek a response to our request for administrative review. I am attaching the March 13th appeal letter for reference. Please update us as soon as possible with respect to the progress of this case. Mr. ████████, is there a time soon when we could speak with you regarding Mr. Moharam's case? If you cannot speak about his case specifically, we would appreciate speaking with you about TRIP more broadly.

Thank you,

Sincerely,

Wendy Jennings
Hannah Walsh
Student Attorneys

Tarek Ismail, Esq.
Supervising Attorney

_____

Wendy Jennings

JD Candidate 2019  |  CUNY School of Law

| From: | hannah.walsh PPII |
|---|---|
| To: | TRIP@dhs.gov; GPII |
| Subject: | TRIP Appeal -Request for additional information 2263437 |
| Date: | Friday, November 15, 2019 5:03:06 PM |
| Attachments: | TRIP_Appeal.pdf |

Dear Mr. GPII

We are writing on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We last heard from you on February 15, 2019, when you informed us that the request is in process. On July 2019, we contacted you regarding the status of Mr. Moharam's DHS TRIP appeal. TRIP failed to respond to our status update request even after our outreach to you directly.

We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

**One year and eight months (over 612 days) have passed since our initial request for administrative review.** This delay is unacceptable and continues to cause Mr. Moharam undue harm. I am attaching the March 13th appeal letter for reference. Please update us immediately with respect to the progress of this case.

Mr. GPII, is there a time soon when we could speak with you regarding Mr. Moharam's case? If you cannot speak about his case specifically, we would appreciate speaking with you about TRIP more broadly.

Sincerely,

Hannah Walsh
*Student Attorney, CLEAR Project*
Candidate for Juris Doctor, 2020
City University of New York (CUNY) School of Law

TSA AR000058



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

March 13, 2018

U.S. Department of Homeland Security
Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA FIRST CLASS MAIL AND ELECTRONIC MAIL

**Re:**    Request for additional information for Fahmi Ahmed Moharam
(TRIP Redress Control Number: **2263437**)

To Whom It May Concern:

Our client, **Mr. Fahmi Ahmed Moharam** recently received  letter in response to a DHS
Travel Inquiry Form filed on October 29, 2017, indicating that he is on the United States
Government's No Fly List because he has been identified as an "individual who may be a threat
to civil aviation or national security." We believe this determination was made in error and
hereby request an administrative review of Mr. Moharam's status.

The "absence of any meaningful procedures" for Mr. Moharam to contest his placement on
the No–Fly List would violate his procedural due process rights. *Latif v. Holder*, 28 F. Supp. 3d
1134, 1161 (D. Or. 2014). As legal counsel for Mr. Moharam, and pursuant to the TRIP
procedures described in the February 14, 2018 letter, we hereby request all available information
about his placement on the No Fly List, including but not limited to: the specific criterion under
which Mr. Moharam has been placed on the No Fly List; the nominating agencies and any
information pertaining to Mr. Moharam's placement on the No Fly List; and the timeline and
process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP
procedures, that DHS will provide an unclassified summary of the information that DHS has
relied on to support Mr. Moharam's status on the No Fly List.

Please note that DHS' letter, which is enclosed, was dated February 14, 2018, and that this
request is made within 30 days of receipt.

Thank you for your time and consideration in this matter. Please contact us if you have any
questions or require additional information.

Sincerely,

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



TSA AR000059

Jamshid Saloor, Law Student Intern
Princess Masilungan, Law Student Intern
Tarek Z. Ismail, Senior Staff Attorney
PPII
tismail PPII 

cc: GPII

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4455
(e) cunyclear@mail.law.cuny.edu

CU NY

TSA AR000060

| | |
|---|---|
| **From:** | GPII |
| **To:** | hannah.walsh PPII TRIP@dhs.gov |
| **Subject:** | RE: TRIP Appeal -Request for additional information 2263437 |
| **Date:** | Monday, November 18, 2019 3:54:53 PM |

Ms. Walsh,

Thank you for your email – I can confirm for you that a response to Mr. Moharam's request for information regarding his placement on the No Fly List is being processed. Redress cases tend to be complex inquiries touching upon sensitive national security and law enforcement matters that require extensive coordination amongst many federal government agencies so that the response can be as complete as possible, given those national security and law enforcement concerns. Because of this necessary, complex interagency process regarding the redress process generally, I am unable to commit to any specific time frame for a response to Mr. Moharam's specific inquiry, other than to reiterate that this specific matter is being worked and that DHS TRIP will provide Mr. Moharam and you with the reply as soon as it is able to do so.

Thank you,



Assistant Chief Counsel
Intelligence & Vetting Operations
Transportation Security Administration

**From:** hannah.walsh PPII
**Sent:** Friday, November 15, 2019 5:03 PM
**To:** TRIP@dhs.gov; GPII
**Subject:** TRIP Appeal -Request for additional information

Dear Mr. GPII

We are writing on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We last heard from you on February 15, 2019, when you informed us that the request is in process. On July 2019, we contacted you regarding the status of Mr. Moharam's DHS TRIP appeal. TRIP failed to respond to our status update request even after our outreach to you directly.

TSA AR000061

We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

**One year and eight months (over 612 days) have passed since our initial request for administrative review.** This delay is unacceptable and continues to cause Mr. Moharam undue harm. I am attaching the March 13th appeal letter for reference. Please update us immediately with respect to the progress of this case.

Mr. GPII, is there a time soon when we could speak with you regarding Mr. Moharam's case? If you cannot speak about his case specifically, we would appreciate speaking with you about TRIP more broadly.

Sincerely,

Hannah Walsh
*Student Attorney, CLEAR Project*
Candidate for Juris Doctor, 2020
City University of New York (CUNY) School of Law

TSA AR000062

| | |
|---|---|
| **From:** | hannah.walsh PPII |
| **To:** | GPII     TRIP@dhs.gov |
| **Cc:** | Naz Ahmad; ramzi.kassem@law.cuny.edu |
| **Subject:** | Re: TRIP Appeal -Request for additional information 2263437 |
| **Date:** | Monday, November 25, 2019 7:40:38 PM |
| **Attachments:** | 590_NA PM SP_SIGNED.pdf |
| | 590_RK_SIGNED.pdf |

Dear Mr. GPII

Thank you for your response regarding Mr. Fahmi Moharam's appeal of his placement on the No Fly List. Recently, the U.S. Federal Court of Appeals for the Ninth Circuit held that such classified information that you referenced supporting a nomination may be disclosed to security cleared counsel. Kashem v. Barr, 941 F.ed 358, 383 (9th Cir. Oct. 21, 2019).

Ramzi Kassem, Mr. Moharam's counsel, holds active TS-SCI security clearance. We are requesting that Mr. Kassem to be given access to the classified information allegedly supporting Mr. Moharam's inclusion on the No Fly List. Attached is a signed DHS 590, authorizing the release of information to Mr. Kassem.

In addition, Naz Ahmad holds interim TS-SCI clearance. To the extent Ms. Ahmad's current clearance status is sufficient, we request that Ms. Ahmad also be given access to the classified information allegedly supporting Mr. Moharm's inclusion on the No Fly List. A DHS 590 authorizing the release of information to Ms. Ahmad is also attached.

Mr. Kassem and Ms. Ahmad are willing to coordinate with a Classified Information Security Officer to facilitate this review.

Sincerely,

Hannah Walsh
*Student Attorney, CLEAR Project*
Candidate for Juris Doctor, 2020
City University of New York (CUNY) School of Law

---

**From:** GPII
**Sent:** Monday, November 18, 2019 3:54 PM
**To:** hannah.walsh PPII          TRIP@dhs.gov
**Subject:** RE: TRIP Appeal -Request for additional information
Ms. Walsh,
Thank you for your email – I can confirm for you that a response to Mr. Moharam's request for information regarding his placement on the No Fly List is being processed. Redress cases tend to be complex inquiries touching upon sensitive national security and law enforcement matters that require extensive coordination amongst many federal government agencies so that

the response can be as complete as possible, given those national security and law enforcement concerns. Because of this necessary, complex interagency process regarding the redress process generally, I am unable to commit to any specific time frame for a response to Mr. Moharam's specific inquiry, other than to reiterate that this specific matter is being worked and that DHS TRIP will provide Mr. Moharam and you with the reply as soon as it is able to do so.

Thank you,

 GPII

Assistant Chief Counsel
Intelligence & Vetting Operations
Transportation Security Administration

**From:** hannah.walsh PPII
**Sent:** Friday, November 15, 2019 5:03 PM
**To:** TRIP@dhs.gov; GPII
**Subject:** TRIP Appeal -Request for additional information

Dear Mr. GPII :

We are writing on behalf of our client, Fahmi Ahmed Moharam, Redress #2263437.

We timely submitted a DHS TRIP appeal on Mr. Moharam's behalf on March 13, 2018, less than 30 days after he received notice of his No Fly List designation on February 14, 2018. We request a follow up on the status of Mr. Moharam's administrative review. We last heard from you on February 15, 2019, when you informed us that the request is in process. On July 2019, we contacted you regarding the status of Mr. Moharam's DHS TRIP appeal. TRIP failed to respond to our status update request even after our outreach to you directly.

We again request any additional information available regarding Mr. Moharam's placement on the No Fly List, including but not limited to: the specific criterion under which Mr. Moharam has been placed on the No Fly List, the nominating agencies and any information pertaining to Mr. Moharam's placement on the No Fly List, and the timeline and process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP procedures, that DHS will provide an unclassified summary of the information that DHS has relied on to support Mr. Moharam's status on the No Fly List.

**One year and eight months (over 612 days) have passed since our initial request for administrative review.** This delay is unacceptable and continues to cause Mr. Moharam undue harm. I am attaching the March 13th appeal letter for reference. Please update us immediately with respect to the progress of this case.

Mr. GPII , is there a time soon when we could speak with you regarding Mr. Moharam's case? If you cannot speak about his case specifically, we would appreciate speaking with you about TRIP more broadly.

Sincerely,

Hannah Walsh
*Student Attorney, CLEAR Project*
Candidate for Juris Doctor, 2020
City University of New York (CUNY) School of Law

TSA AR000064

DEPARTMENT OF HOMELAND SECURITY
## AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

### SECTION I. Personal Information

Name
Fahmi Ahmed Moharam

Address

PPII

| Date of Birth | Place of Birth (city, state, country) |
|---|---|
| PPII /1975 | PPII |

### SECTION II. Representative Information

Name
Main Street Legal Services Inc./Naz Ahmad, Princess Masilungan, Sharmin Pianca

Address
2 Court Square

| City | State | Zip Code |
|---|---|---|
| Long Island City | New York | 11101 |
| Country | Telephone Number(s) | |
| USA | PPII | |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _[signature]_          Date 11-24-19

### PRIVACY ACT STATEMENT:

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)                                          Page 1 of 1

TSA AR000065

DEPARTMENT OF HOMELAND SECURITY
## AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

**SECTION I. Personal Information**

Name
Fahmi Moharam

Address

PPII

| Date of Birth | Place of Birth (city, state, country) |
|---|---|
| PPII /1975 | PPII |

**SECTION II. Representative Information**

| Name | | |
|---|---|---|
| CUNY Law Main Street Legal Services/ Ramzi Kassem | | |
| Address | | |
| 2 Court Square | | |
| City | State | Zip Code |
| Long Island City | NY | 11101 |
| Country | Telephone Number(s) | |
| USA | PPII | |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _____      Date 11-20-19

### PRIVACY ACT STATEMENT:

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)                                                                 Page 1 of 1

TSA AR000066

| | |
|---|---|
| **From:** | RedressFinal, TRIP |
| **To:** | "yakoob_dihyem PPII |
| **Cc:** | "tarek.ismai PPII |
| **Subject:** | DHS TRIP Redress Case 2263437 |
| **Date:** | Thursday, February 20, 2020 12:10:00 PM |
| **Attachments:** | RCN 2263437 Moharam F – 02.20.20.pdf |

Thank you for submitting your request for more information to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP). DHS TRIP has researched and completed our review of your request.

Attached is the response to your request for additional information. Per your submitted DHS Form 590, Authorization to Release Information to Another Person, we are sending a courtesy copy to your attorney.

Sincerely,
DHS TRIP

TSA AR000067



**U.S. Department of Homeland Security**
Traveler Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901

February 20, 2020

Mr. Fahmi Ahmed Moharam



Redress Control Number: 2263437

Dear Mr. Moharam:

This letter concerns the redress inquiry that you submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) on October 29, 2017.

Along with information you have provided in your application to DHS TRIP, we have conducted a review of any applicable records in consultation with other federal agencies, as appropriate. We have determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A). In particular, we have determined that you are an individual who represents a threat of engaging in or conducting a violent act of terrorism and are operationally capable of doing so.

On March 13, 2018, you requested additional information about your placement on the No Fly List as well as the opportunity to respond to any information provided if you believe that the above determination is in error.

Below is an unclassified summary that includes reasons supporting your placement on the No Fly List. Consistent with DHS TRIP policy, we have provided this information, to the extent feasible, after considering the national security, law enforcement, and/or other interests at stake. We are unable to provide additional disclosures, beyond the summary below, regarding your placement on the No Fly List. Factors limiting disclosure in this context include national security concerns.

You are on the U.S. Government's No Fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017. The

TSA AR000068

information you shared during your interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns.

Additional reasons for and details regarding your placement on the U.S. Government's No Fly List cannot be provided to you due to national security concerns.

If you think that this determination is in error, or if you think that the information provided to you is inaccurate, we encourage you to respond and provide us with information you think is relevant. Such information should be submitted to DHS TRIP at the above address or via email to TRIP@dhs.gov within 60 days of the issuance of this letter. Information you submit will be considered before a final determination of your status on the No Fly List is made.

If we do not receive any additional information or a request for an extension within 60 days of the date of this letter, the determination described above will become a final order. Within 60 days of this determination becoming final, you may seek judicial review of this determination in an appropriate United States Court of Appeals pursuant to 49 U.S.C. § 46110. Please note, however, that if you do continue with the administrative redress process described above, you may still seek judicial review in the United States Court of Appeals at its conclusion.

If you have any further questions, you may contact DHS TRIP at the addresses given above.

Sincerely,

Deborah O. Moore

Deborah O. Moore
Director
DHS Traveler Redress Inquiry Program

TSA AR000069

Analysis: Hold_2263437_MANUAL_214201816714                                                    Page 1 of 2



**Analysis**

# Hold_2263437_MANUAL_214201816714

### General

| | | | |
|---|---|---|---|
| Name | Hold_2263437_MANUAL_214201816714 | | |
| Created On | 2/14/2018 4:07 PM | Analysis Closed Date | 2/20/2020 12:22 PM |
| Status | Inactive | Status Reason | Completed |
| Case | 2263437 | Component | Hold |
| Tracking Date | | | |
| Type | Stage 2 | | |
| Disposition | No Fly Determination Upheld | Suggested Resolution Letter | 20011A Enhanced Stage 2 Summary |
| Primary Liaison | | Primary Analyst | |
| Package Location | | | |

### All Person Information

TSA AR000070

Appx72

Analysis: Hold_2263437_MANUAL_214201816714                          Page 2 of 2

**Notes**

**Summary**
Summary

TSA AR000071

Appx73

Analysis: TSC_2263437_MANUAL_316201812377

Page 1 of 2



TSA AR000072

Analysis: TSC_2263437_MANUAL_316201812377                                    Page 2 of 2

**Notes**



**Summary**

Summary

TSA AR000073

UNCLASSIFIED//FOUO



**Terrorist Screening Center**
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535

### MEMORANDUM

TO:         Deborah O. Moore, Ph.D.
            Director
            DHS Traveler Redress Inquiry Program
            Transportation Security Administration

FROM:       Charles H. Kable
            Director
            Terrorist Screening Center

SUBJECT:    Fahmi Ahmed MOHARAM (Redress Control Number 2263437)

DATE:       11 February 2020

(U//FOUO) This letter is in response to a request by DHS TRIP applicant Fahmi Ahmed Moharam (U.S. Citizen) for available information maintained by the U.S. Government (USG) that resulted in his No Fly status. As per the revised redress protocols, the Terrorist Screening Center (TSC) contacted the nominator/originator to request an unclassified or declassified summary of Moharam's available information.

(U) The following information was provided for release to the applicant. Factors limiting disclosure in this context include national security concerns.

> (U) Fahmi Ahmed Moharam, you are on the U.S. Government's No Fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017. The information you shared during your interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns.

> (U) Additional reasons for and details regarding your placement on the U.S. Government's No Fly List cannot be provided to you due to national security concerns.

(U//FOUO) If you have any questions or require additional information, please contact TSC Redress Office at LEP

UNCLASSIFIED//FOUO

TSA AR000074

U.S. Department of Homeland Security
Traveler Redress Inquiry Program (DHS TRIP)
601 South 12ᵗʰ Street, TSA-901
Arlington, VA 20598-6901



**Homeland Security**

February 14, 2018

Mr. Fahmi Ahmed Moharam
c/o Tarek Z. Ismail, Main Street Legal Services, Inc.
2 Court Square
Long Island City, NY 11101
United States

Redress Control Number: 2263437

Dear Mr. Moharam:

This letter concerns the redress inquiry that you submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) on October 29, 2017.

We have conducted a review of any applicable records in consultation with other federal agencies, as appropriate. It has been determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A).

You may request additional information about your placement on the No Fly List and have the opportunity to respond to any information provided if you believe that the above determination is in error. Following these steps, you may also request an administrative review of your status on the No Fly List.

If you would like to request additional information about your placement on the No Fly List, you must contact us within 30 days of the date of this letter. During this initial 30-day period, and for good cause shown, you may request a 30-day extension. You may contact DHS TRIP via email at TRIP@dhs.gov or write to the address found in the letterhead.

If we do not receive your request for additional information or a request for an extension within 30 days of the date of this letter, the determination described above will become final. Should you choose not to continue with the redress process described above, you may seek judicial review of this determination within 60 days in an appropriate United States Court of Appeals pursuant to 49 U.S.C. § 46110. Please note that if you do continue with the redress process described above, you may still seek judicial review in the United States Court of Appeals at its conclusion.

If you have any further questions, you may contact DHS TRIP at the addresses given above.

Sincerely,

DHS Traveler Redress Inquiry Program

TSA AR000075



CREATING
LAW
ENFORCEMENT
ACCOUNTABILITY &
RESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

March 13, 2018

U.S. Department of Homeland Security
Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA FIRST CLASS MAIL AND ELECTRONIC MAIL

**Re:**    Request for additional information for Fahmi Ahmed Moharam
        (TRIP Redress Control Number: **2263437**)

To Whom It May Concern:

Our client, **Mr. Fahmi Ahmed Moharam** recently received  letter in response to a DHS
Travel Inquiry Form filed on October 29, 2017, indicating that he is on the United States
Government's No Fly List because he has been identified as an "individual who may be a threat
to civil aviation or national security." We believe this determination was made in error and
hereby request an administrative review of Mr. Moharam's status.

The "absence of any meaningful procedures" for Mr. Moharam to contest his placement on
the No–Fly List would violate his procedural due process rights. *Latif v. Holder*, 28 F. Supp. 3d
1134, 1161 (D. Or. 2014). As legal counsel for Mr. Moharam, and pursuant to the TRIP
procedures described in the February 14, 2018 letter, we hereby request all available information
about his placement on the No Fly List, including but not limited to: the specific criterion under
which Mr. Moharam has been placed on the No Fly List; the nominating agencies and any
information pertaining to Mr. Moharam's placement on the No Fly List; and the timeline and
process for Mr. Moharam's placement on the No Fly List. We expect, in accordance with TRIP
procedures, that DHS will provide an unclassified summary of the information that DHS has
relied on to support Mr. Moharam's status on the No Fly List.

Please note that DHS' letter, which is enclosed, was dated February 14, 2018, and that this
request is made within 30 days of receipt.

Thank you for your time and consideration in this matter. Please contact us if you have any
questions or require additional information.

Sincerely,

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



TSA AR000076

Jamshid Saloor, Law Student Intern
Princess Masilungan, Law Student Intern
Tarek Z. Ismail, Senior Staff Attorney
PPII

tismail PPII

cc:    

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4455
(e) cunyclear@mail.law.cuny.edu



TSA AR000077



**U.S. Department of Homeland Security**
Traveler Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901

## Homeland Security

February 20, 2020

Mr. Fahmi Ahmed Moharam



Redress Control Number: 2263437

Dear Mr. Moharam:

This letter concerns the redress inquiry that you submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) on October 29, 2017.

Along with information you have provided in your application to DHS TRIP, we have conducted a review of any applicable records in consultation with other federal agencies, as appropriate. We have determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A). In particular, we have determined that you are an individual who represents a threat of engaging in or conducting a violent act of terrorism and are operationally capable of doing so.

On March 13, 2018, you requested additional information about your placement on the No Fly List as well as the opportunity to respond to any information provided if you believe that the above determination is in error.

Below is an unclassified summary that includes reasons supporting your placement on the No Fly List. Consistent with DHS TRIP policy, we have provided this information, to the extent feasible, after considering the national security, law enforcement, and/or other interests at stake. We are unable to provide additional disclosures, beyond the summary below, regarding your placement on the No Fly List. Factors limiting disclosure in this context include national security concerns.

You are on the U.S. Government's No Fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017. The

TSA AR000078

information you shared during your interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns.

Additional reasons for and details regarding your placement on the U.S. Government's No Fly List cannot be provided to you due to national security concerns.

If you think that this determination is in error, or if you think that the information provided to you is inaccurate, we encourage you to respond and provide us with information you think is relevant. Such information should be submitted to DHS TRIP at the above address or via email to TRIP@dhs.gov within 60 days of the issuance of this letter. Information you submit will be considered before a final determination of your status on the No Fly List is made.

If we do not receive any additional information or a request for an extension within 60 days of the date of this letter, the determination described above will become a final order. Within 60 days of this determination becoming final, you may seek judicial review of this determination in an appropriate United States Court of Appeals pursuant to 49 U.S.C. § 46110. Please note, however, that if you do continue with the administrative redress process described above, you may still seek judicial review in the United States Court of Appeals at its conclusion.

If you have any further questions, you may contact DHS TRIP at the addresses given above.

Sincerely,

Deborah O. Moore
Director
DHS Traveler Redress Inquiry Program

TSA AR000079

| From: | Naz Ahmad |
|---|---|
| To: | RedressFinal, TRIP |
| Cc: | Hannah Walsh; Sharmin Piancca; Princess Masilungan; Tarek Ismail |
| Subject: | 2263437 - Request for Extension |
| Date: | Friday, April 17, 2020 1:22:15 PM |
| Attachments: | TRIP Extension Request FM 04.17.2020.pdf |
|  | 590_NA PM SP_SIGNED.pdf |
|  | 590_RK_SIGNED.pdf |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000080



CREATING
LAW
ENFORCEMENT
ACCOUNTABILITY &
RESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

April 17, 2020

Deborah O. Moore
Director
DHS Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA ELECTRONIC MAIL

**Re:**    Appeal determination
(TRIP Redress Control Number **2263437**)

Dear Ms. Moore:

I write to respond to your letter dated February 20, 2020. This letter came in response to a lengthy process commenced by Mr. Fahmi Moharam on October 29, 2017. On that day, he submitted a redress inquiry to DHS TRIP after he was denied boarding a flight to the United States at King Abdulaziz International Airport in Jeddah, Saudi Arabia on October 15, 2017.

On February 14, 2018, DHS TRIP sent Mr. Moharam a letter informing him of his placement on the No Fly List. On March 13, 2018, Mr. Moharam submitted a request for additional information to DHS TRIP, per mandated TRIP procedure.

On February 20, 2020, almost two years after this request for additional information, DHS TRIP finally returned confirmation of Mr. Moharam's continued placement on the No Fly List, as well as an unclassified summary of the alleged reasons for this status determination. During this time, we also requested that our legal director with valid security clearance receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. To date, DHS TRIP has not responded to this request. We kindly request a prompt response to this request.

We continue to believe his placement on the No Fly List is in error. We are requesting an extension until October 19, 2020 to respond, in order for Mr. Moharam to have a fair opportunity to address the serious allegations made against him in the February 20, 2020 letter he received, especially in light of the difficulties created by the COVID-19 pandemic. We also request a record of the interview at the U.S. Consulate in Jeddah from November 2017 that the February 2020 letter states DHS TRIP has relied on to make their determination. Mr. Moharam requires access to this record in order to have a meaningful opportunity to address the issues raised in the February 2020 letter.

Thank you in advance for your understanding and prompt response.

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@law.cuny.edu



TSA AR000081

Sincerely,


*/s/ Naz Ahmad*
Naz Ahmad



DEPARTMENT OF HOMELAND SECURITY
## AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

### SECTION I. Personal Information

Name
Fahmi Ahmed Moharam

Address
PPII

| Date of Birth | Place of Birth (city, state, country) |
|---|---|
| PPII/1975 | PPII |

### SECTION II. Representative Information

Name
Main Street Legal Services Inc./Naz Ahmad, Princess Masilungan, Sharmin Pianca

Address
2 Court Square

| City | State | Zip Code |
|---|---|---|
| Long Island City | New York | 11101 |

| Country | Telephone Number(s) |
|---|---|
| USA | PPII |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _[signature]_    Date 11-24-19

**PRIVACY ACT STATEMENT:**

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)    Page 1 of 1

TSA AR000083

DEPARTMENT OF HOMELAND SECURITY
## AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

**SECTION I. Personal Information**

Name
Fahmi Moharam

Address

PPII

| Date of Birth | Place of Birth (city, state, country) |
|---|---|
| PPII /1975 | PPII |

**SECTION II. Representative Information**

Name
CUNY Law Main Street Legal Services/ Ramzi Kassem

Address
2 Court Square

| City | State | Zip Code |
|---|---|---|
| Long Island City | NY | 11101 |
| Country | Telephone Number(s) | |
| USA | PPII | |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _____     Date 11-20-19

**PRIVACY ACT STATEMENT:**

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking  redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)                                                                 Page 1 of 1

TSA AR000084

| From: | Naz Ahmad |
|---|---|
| To: | RedressFinal, TRIP |
| Cc: | Hannah Walsh; Sharmin Piancca; Princess Masilungan; Tarek Ismail |
| Subject: | Re: 2263437 - Request for Extension |
| Date: | Monday, April 27, 2020 1:46:44 PM |
| Attachments: | TRIP Extension Request-Final Draft 4.16.20.pdf |
| | 590_NA PM SP_SIGNED.pdf |
| | 590_RK_SIGNED.pdf |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII Sharmin Piancca
PPII Princess Masilungan
PPII Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

TSA AR000085

Naz Ahmad

TSA AR000086



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

April 16, 2020

Deborah O. Moore
Director
DHS Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA ELECTRONIC MAIL

**Re:**     Appeal determination
            (TRIP Redress Control Number **2263437**)

Dear Ms. Moore:

I write to respond to your letter dated February 20, 2020. This letter came in response to a lengthy process commenced by Mr. Fahmi Moharam on October 29, 2017. On that day, he submitted a redress inquiry to DHS TRIP after he was denied boarding a flight to the United States at King Abdulaziz International Airport in Jeddah, Saudi Arabia on October 15, 2017.

On February 14, 2018, DHS TRIP sent Mr. Moharam a letter informing him of his placement on the No Fly List. On March 13, 2018, Mr. Moharam submitted a request for additional information to DHS TRIP, per mandated TRIP procedure.

On February 20, 2020, almost two years after this request for additional information, DHS TRIP finally returned confirmation of Mr. Moharam's continued placement on the No Fly List, as well as an unclassified summary of the alleged reasons for this status determination. During this time, we also requested that our legal director with valid security clearance receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. To date, DHS TRIP has not responded to this request. We kindly request a prompt response to this request.

We continue to believe his placement on the No Fly List is in error. We are requesting an extension until October 19, 2020 to respond, in order for Mr. Moharam to have a fair opportunity to address the serious allegations made against him in the February 20, 2020 letter he received, especially in light of the difficulties created by the COVID-19 pandemic. We also request a record of the interview at the U.S. Consulate in Jeddah from November 2017 that the February 2020 letter states DHS TRIP has relied on to make their determination. Mr. Moharam requires access to this record in order to have a meaningful opportunity to address the issues raised in the February 2020 letter.

Thank you in advance for your understanding and prompt response.

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@law.cuny.edu



TSA AR000087

Sincerely,


*/s/ Naz Ahmad*
Naz Ahmad



TSA AR000088

Appx90

DEPARTMENT OF HOMELAND SECURITY
## AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

**SECTION I. Personal Information**

Name
Fahmi Ahmed Moharam

Address

PPII

| Date of Birth | Place of Birth (city, state, country) |
|---|---|
| PPII /1975 | PPII |

**SECTION II. Representative Information**

Name
Main Street Legal Services Inc./Naz Ahmad, Princess Masilungan, Sharmin Pianca

Address
2 Court Square

| City | State | Zip Code |
|---|---|---|
| Long Island City | New York | 11101 |

| Country | Telephone Number(s) |
|---|---|
| USA | PPII |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _[signature]_                    Date 11-24-19

**PRIVACY ACT STATEMENT:**

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking  redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)                                        Page 1 of 1

TSA AR000089

DEPARTMENT OF HOMELAND SECURITY
## AUTHORIZATION TO RELEASE INFORMATION TO ANOTHER PERSON

Please complete this form to authorize the Department of Homeland Security (DHS) or its designated DHS Component element to disclose your personal information to another person. You are asked to provide your information only to facilitate the identification and processing of your request. Without your information DHS or its designated DHS Component element may be unable to process your request.

### SECTION I. Personal Information

Name
Fahmi Moharam

Address

**PPII**

| Date of Birth | Place of Birth (city, state, country) |
|---|---|
| PPII /1975 | PPII |

### SECTION II. Representative Information

Name
CUNY Law Main Street Legal Services/ Ramzi Kassem

Address
2 Court Square

| City | State | Zip Code |
|---|---|---|
| Long Island City | NY | 11101 |
| Country | Telephone Number(s) | |
| USA | PPII | |

*Pursuant to the Privacy Act of 1974 (5 U.S.C. §552a(b)), I authorize DHS and/or its DHS Component elements to release any and all information relating to my redress request to my representative .*

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above in Section I. I understand that falsification of this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both.*

Signature _____     Date 11-20-19

### PRIVACY ACT STATEMENT:

**AUTHORITY:** Title IV of the Intelligence Reform and Terrorism Prevention Act of 2004 authorizes DHS to take security measures to protect travel, and under Subtitle B, Section 4012(1)(G), the Act directs DHS to provide appeal and correction opportunities for travelers whose information may be incorrect.

**PRINCIPAL PURPOSE(S):** DHS will use this information in order to assist you with seeking  redress in connection with travel.

**ROUTINE USE(S):** DHS will use and disclose this information to appropriate governmental agencies to verify your identity, distinguish your identity from that of another individual, such as someone included on a watch list, and/or address your redress request. Additionally, limited information may be shared with non-governmental entities, such as air carriers, where necessary for the sole purpose of carrying out your redress request.

**DISCLOSURE:** Furnishing this information is voluntary; however DHS may not be able to process your redress request without the information requested.

DHS Form 590 (8/11)                                   Page 1 of 1

TSA AR000090

| From: | RedressFinal, TRIP |
|---|---|
| To: | "Naz Ahmad" |
| Cc: | Hannah Walsh; Sharmin Piancca; Princess Masilungan; Tarek Ismail |
| Subject: | RE: 2263437 - Request for Extension |
| Date: | Thursday, May 7, 2020 10:20:00 AM |

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                          Sharmin Piancca
PPII                          Princess Masilungan PPII
Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello —

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

TSA AR000091

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                              , Sharmin Piancca
PPII                              Princess Masilungan
PPII                              Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello —

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000092

| | |
|---|---|
| **From:** | RedressFinal, TRIP |
| **To:** | "Naz Ahmad" |
| **Cc:** | GPII |
| **Subject:** | RE: 2263437 - Request for Extension |
| **Date:** | Tuesday, October 13, 2020 9:51:00 AM |

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII                      Sharmin Piancca
PPII                                          Princess Masilungan
PPII                                          Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP

TSA AR000093

grants your request.  Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                           Sharmin Piancca
PPII                                Princess Masilungan PPII
Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                           Sharmin Piancca
PPII                                Princess Masilungan
PPII                                Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

TSA AR000094

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000095

| From: | RedressFinal, TRIP |
|---|---|
| To: | RedressFinal, TRIP |
| Subject: | Fw: 2263437 - Request for Extension |
| Date: | Monday, November 2, 2020 9:37:05 AM |
| Attachments: | TRIP FM Extension Request 2020.10.07.pdf |

**From:** Naz Ahmad
**Sent:** Wednesday, October 7, 2020 11:31 AM
**To:** RedressFinal, TRIP
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP"
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad
**Cc:** Hannah Walsh , Sharmin Piancca , Princess Masilungan , Tarek Ismail
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,

DHS TRIP

**From:** Naz Ahmad
**Sent:** Monday, April 27, 2020 1:42 PM

TSA AR000096

**To:** RedressFinal, TRIP
**Cc:** Hannah Walsh ; Sharmin Piancca ; Princess Masilungan ; Tarek Ismail
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                          Sharmin Piancca
PPII                          , Princess Masilungan
PPII                          Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000097



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

October 7, 2020

Deborah O. Moore
Director
DHS Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA ELECTRONIC MAIL

**Re:**    Appeal determination
(TRIP Redress Control Number **2263437**)

Dear Ms. Moore:

On February 14, 2018, DHS TRIP sent Mr. Moharam a letter informing him of his placement on the No Fly List. On March 13, 2018, Mr. Moharam submitted a request for additional information to DHS TRIP, per mandated TRIP procedure.

### Request for Extension

On February 20, 2020, almost two years after this request for additional information, DHS TRIP finally returned confirmation of Mr. Moharam's continued placement on the No Fly List, as well as an unclassified summary of the alleged reasons for this status determination.

We continue to believe his placement on the No Fly List is in error. On May 7, 2020, our initial request for an extension was granted due to the extenuating circumstances posed by the COVID-19 pandemic. We are requesting an additional extension until April 19, 2021 to respond, in order for Mr. Moharam to have a fair opportunity to address the serious allegations made against him in the February 20, 2020 letter, especially in light of the difficulties created by the COVID-19 pandemic. We also renew our request for a record of the interview at the U.S. Consulate in Jeddah from November 2017 that the February 2020 letter states DHS TRIP has relied on to make their determination. Mr. Moharam requires access to this record in order to have a meaningful opportunity to address the issues raised in the February 2020 letter.

### Request for Access to Classified Information

After waiting two years for information regarding Mr. Moharam's placement on the No Fly List, we received an unclassified two-sentence summary. Consequently, we then requested in February 2020 that our legal director with valid security clearance receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement. In DHS TRIP's May 7, 2020 response to Mr. Moharam's first request for an extension of time, DHS TRIP asserted that it

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



was both unwilling to provide classified information to Mr. Moharam's security cleared counsel, and was unable to provide a copy of the interview conducted in Jeddah, Saudi Arabia in 2017, without justification.

Under the *Al Haramain II*[1] framework relied upon by the Ninth Circuit in *Kashem v. Barr*[2], if the government wishes to withhold classified information from travelers it must undertake mitigation measures to offset potential unfairness to the traveler, including providing an unclassified summary of the basis for No Fly List designation, or permitting a lawyer with appropriate security clearance to access the classified information. The government may only altogether withhold the information without any mitigation measures when the measures are not practical.[3] The unclassified "summary" already provided to Mr. Moharam does not qualify as a reasonable mitigation measure as it offsets no unfairness and defeats the purpose of the *Al Haramain II* framework.

The fourth *Kashem* plaintiff received an unclassified summary strikingly similar to the one Mr. Moharam received.[4] The Ninth Circuit noted that disclosing only this one sentence summary could have been procedurally insufficient had the government's *in camera* filings not convinced the Court that further disclosure would have unduly implicated national security.[5] In that case, alternative mitigation methods were impractical as the record did not reflect whether the *Kashem* plaintiffs were represented by an attorney with appropriate security clearance.[6] In Mr. Moharam's case, as the unclassified "summary" was deficient, the alternative mitigation measure of providing the classified information to Mr. Moharam's counsel who possess appropriate security clearance must be followed under the holding of *Kashem*.

The administrative record thus far reflects our twice-repeated request for this information which has since been refused. We respectfully renew our request to be given this information so that Mr. Moharam may have an opportunity to meaningfully address the government's concerns about his travel, including the November 2017 interview record and any other pertinent information.

Thank you in advance for your understanding and prompt response.

Sincerely,

Naz Ahmad, *Senior Staff Attorney*
Amal Thabateh, *Student Attorney*
Daniel Cione, *Student Attorney*

---

[1] *Al Haramain v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012).

[2] *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019).

[3] *Id.* at 380.

[4] Compare the response the plaintiff in *Kashem* received, "The Government has concerns about the nature and purpose of [plaintiff's] travel to Yemen in 2010," *id.* at 368 with what was provided to Mr. Moharam, "You are the U.S. Government's No fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017."

[5] *Kashem v. Barr*, at 383.

[6] *Id.* at 386.

TSA AR000099

| From: | Naz Ahmad |
|---|---|
| To: | RedressFinal, TRIP |
| Cc: | GPII |
| Subject: | Re: 2263437 - Request for Extension |
| Date: | Wednesday, April 7, 2021 12:47:25 PM |
| Attachments: | TRIP Extension FM.pdf |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

Kind regards,

Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.
Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

TSA AR000100

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

---

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII                        Sharmin Piancca
PPII                                     Princess Masilungan
PPII                                     Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                        Sharmin Piancca
PPII                                     Princess Masilungan PPII
Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email,

TSA AR000101

contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                        Sharmin Piancca
PPII                        Princess Masilungan
PPII                        Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000102

USCA Case #22-1184    Document #2006786    Filed: 07/07/2023    Page 105 of 247



CREATING
LAW
ENFORCEMENT
ACCOUNTABILITY &
RESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

April 7, 2021

Deborah O. Moore
Director
DHS Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA ELECTRONIC MAIL

**Re:**   Appeal determination
        (TRIP Redress Control Number **2263437**)

Dear Ms. Moore:

On February 14, 2018, DHS TRIP sent Mr. Moharam a letter informing him of his placement on the No Fly List. On March 13, 2018, Mr. Moharam submitted a request for additional information to DHS TRIP, per mandated TRIP procedure.

### Request for Extension

On February 20, 2020, almost two years after this request for additional information, DHS TRIP finally returned confirmation of Mr. Moharam's continued placement on the No Fly List, as well as an unclassified summary of the alleged reasons for this status determination.

We continue to believe his placement on the No Fly List is in error. On May 7, 2020, our first request for an extension was granted due to the extenuating circumstances posed by the COVID-19 pandemic. We requested an additional extension until April 19, 2021 to respond, which was granted on October 13, 2020. We hereby request another extension until October 19, 2021 in order for Mr. Moharam to have a fair opportunity to address the serious allegations made against him in the February 20, 2020 letter, especially in light of the continuing difficulties created by the COVID-19 pandemic.

### Request for Access to Classified Information

After waiting two years for information regarding Mr. Moharam's placement on the No Fly List, we received an unclassified two-sentence summary. Consequently, we then requested in February 2020 that our legal director with valid security clearance receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement. In DHS TRIP's May 7, 2020 response to Mr. Moharam's first request for an extension of time, DHS TRIP asserted that it was both unwilling to provide classified information to Mr. Moharam's security cleared counsel,

---

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



TSA AR000103

and was unable to provide a copy of the interview conducted in Jeddah, Saudi Arabia in 2017, without justification.

Under the *Al Haramain II*[1] framework relied upon by the Ninth Circuit in *Kashem v. Barr*[2], if the government wishes to withhold classified information from travelers it must undertake mitigation measures to offset potential unfairness to the traveler, including providing an unclassified summary of the basis for No Fly List designation, or permitting a lawyer with appropriate security clearance to access the classified information. The government may only altogether withhold the information without any mitigation measures when the measures are not practical.[3] The unclassified "summary" already provided to Mr. Moharam does not qualify as a reasonable mitigation measure as it offsets no unfairness and defeats the purpose of the *Al Haramain II* framework.

The fourth *Kashem* plaintiff received an unclassified summary strikingly similar to the one Mr. Moharam received.[4] The Ninth Circuit noted that disclosing only this one sentence summary could have been procedurally insufficient had the government's *in camera* filings not convinced the Court that further disclosure would have unduly implicated national security.[5] In that case, alternative mitigation methods were impractical as the record did not reflect whether the *Kashem* plaintiffs were represented by an attorney with appropriate security clearance.[6] In Mr. Moharam's case, as the unclassified "summary" was deficient, the alternative mitigation measure of providing the classified information to Mr. Moharam's counsel who possess appropriate security clearance must be followed under the holding of *Kashem*.

The unclassified summary contains no information as to what activities the federal government believes Mr. Moharam was engaged in, or what areas of Yemen it believes he traveled to. It does not indicate whatsoever what, if anything, distinguishes Mr. Moharam from the thousands of other Yemeni Americans who travel to Yemen to visit their families and are not placed on the No Fly List. This information is necessary to meaningfully address the federal government's supposed concerns about Mr. Moharam and his travels to Yemen.

The administrative record thus far reflects our thrice-repeated request for this information which has since been refused. We respectfully renew our request to be given this information so that Mr. Moharam may have an opportunity to meaningfully address the government's concerns about his travel, including the November 2017 interview record and any other pertinent information.

Thank you in advance for your understanding and prompt response.

Sincerely,

---

[1] *Al Haramain v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012).
[2] *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019).
[3] *Id.* at 380.
[4] Compare the response the plaintiff in *Kashem* received, "The Government has concerns about the nature and purpose of [plaintiff's] travel to Yemen in 2010," *id.* at 368 with what was provided to Mr. Moharam, "You are the U.S. Government's No fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017."
[5] *Kashem v. Barr*, at 383.
[6] *Id.* at 386.

TSA AR000104

Naz Ahmad, *Senior Staff Attorney*
Amal Thabateh, *Student Attorney*
Daniel Cione, *Student Attorney*

TSA AR000105

| From: | Naz Ahmad |
|---|---|
| To: | RedressFinal, TRIP |
| Cc: | GPII |
| Subject: | Re: 2263437 - Request for Extension |
| Date: | Thursday, April 15, 2021 11:06:32 AM |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to follow up on our request for an extension, which is currently due April 19, 2021.

Kind regards,

Naz

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Wednesday, April 7, 2021 at 12:41 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

Hello –

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

Kind regards,

Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,

DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email,

TSA AR000106

contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>

**Date:** Thursday, May 7, 2020 at 10:21 AM

**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>

**Cc:** Hannah Walsh PPII                          Sharmin Piancca

PPII                                        Princess Masilungan

PPII                                        Tarek Ismail PPII

**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,

DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>

**Sent:** Monday, April 27, 2020 1:42 PM

**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>

**Cc:** Hannah Walsh PPII                          Sharmin Piancca

PPII                                        Princess Masilungan PPII

Tarek Ismail PPII

**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>

**Date:** Friday, April 17, 2020 at 1:17 PM

TSA AR000107

**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                          Sharmin Piancca
PPII                                    Princess Masilungan
PPII                              Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000108

| From: | Naz Ahmad |
|---|---|
| To: | RedressFinal, TRIP |
| Cc: | GPII |
| Subject: | Re: 2263437 - Request for Extension |
| Date: | Tuesday, October 19, 2021 7:00:03 PM |
| Attachments: | 2263437_F Moharam Response_2021.10.19.pdf |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached Mr. Moharam's response and request for tolling.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Monday, April 19, 2021 at 3:08 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your most recent inquiry.  This email is to confirm that your client has been granted an extension until October 19, 2021.  If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

With respect to your renewed request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Thursday, April 15, 2021 11:06 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

TSA AR000109

Appx111

Hello –

I am writing to follow up on our request for an extension, which is currently due April 19, 2021.

Kind regards,

Naz

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Wednesday, April 7, 2021 at 12:41 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

Hello –

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

Kind regards,

Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.
Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII

TSA AR000110

Appx112

**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

---

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII                        Sharmin Piancca
PPII                                    Princess Masilungan
PPII                                    Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>

TSA AR000111

Appx113

**Cc:** Hannah Walsh PPII                              ; Sharmin Piancca
PPII                              Princess Masilungan PPII
Tarek Ismai PPII
**Subject:** Re: 2263437 - Request for Extension

> CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                      , Sharmin Piancca
PPII                              , Princess Masilungan
PPII                              , Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000112

USCA Case #22-1184    Document #2006786    Filed: 07/07/2023    Page 115 of 247



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

October 19, 2021

Deborah O. Moore
Director
DHS Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA ELECTRONIC MAIL

**Re:**    TRIP Redress Control Number **2263437**

Dear Ms. Moore:

On February 14, 2018, DHS TRIP sent Mr. Moharam a letter informing him of his placement on the No Fly List. On March 13, 2018, Mr. Moharam submitted a request for additional information to DHS TRIP, per mandated TRIP procedure.

On February 20, 2020, almost two years after this request for additional information, DHS TRIP finally returned confirmation of Mr. Moharam's continued placement on the No Fly List, as well as an unclassified summary of the alleged reasons for this status determination.

We continue to believe his placement on the No Fly List is in error. On May 7, 2020, our first request for an extension was granted due to the extenuating circumstances posed by the COVID-19 pandemic. We requested an additional extension until April 19, 2021 to respond, which was granted on October 13, 2020. DHS TRIP granted a third extension until October 19, 2021.

Our office has previously requested on at least three occasions access to the classified information allegedly supporting the basis for Mr. Moharam's placement, and each time have been denied.

On October 6, 2021, Mr. Moharam filed a complaint in the District of Columbia, challenging the unconstitutional procedures pertaining to TRIP and his ability to seek removal from the No Fly List (attached). We maintain that the procedures and information currently available to Mr. Moharam are constitutionally inadequate and DHS TRIP has failed to provide sufficient information upon which Mr. Moharam can provide a response.

Mr. Moharam's ability to respond to the unclassified summary should be tolled while his complaint is pending in the District of Columbia.

In the event that DHS TRIP refuses to toll his time to respond, Mr. Moharam submits the accompanying affidavit, reserving his right to supplement given DHS TRIP's failure to share the full reasons for his placement on the No Fly List.

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



TSA AR000113

Thank you in advance for your understanding and prompt response.


Sincerely,


Naz Ahmad, *Senior Staff Attorney*

TSA AR000114

**Affidavit of Fahmi Moharam**

1. My name is Fahmi Moharam. I am submitting this affidavit in support of my request to be removed from the No Fly List. I reserve my rights to provide further information concerning my travel to Yemen during 2011 - 2017 if more information and other procedural protections are provided to me concerning my placement on the No Fly List.

2. I was born on PPII ███████████.

3. I am a naturalized U.S. citizen.

4. I currently live in Indiana.

5. I first came to the United States as a child.

6. My mother resides in Yemen.

7. My wife and four of my five children reside in Yemen.

8. Because my mother, wife, and children reside in Yemen. I have made many trips to Yemen over the years, including before 2011 and after, up to my last trip in 2017.

9. My main purpose in going to Yemen, when I went between 2011 and 2017 was to visit my family and spend time with them, and secondarily, to pursue religious study.

10. Between 2011 – 2017, I made at least three trips to Yemen.

11. My ability to recall specific dates of travel to and within Yemen is weak. To the extent I am able to provide information about these travels, I would have to rely on my general memory of those visits as well as passport records and flight itineraries.

12. If provided more information and adequate procedures to challenge my placement on the No Fly List, I would welcome any specific questions about my travel and activities in Yemen between 2011 and 2017.

1

TSA AR000115

Aff. of Fahmi Moharam

13. I have never undergone terrorist training or been provided instruction, or received

   military training by a designated terrorist group.

14. I have never indicated intent to participate in planning or conducting any attack of any

   kind.

15. I do not have, nor have I ever in the past had, any plan or desire to martyr myself.

16. To my knowledge, I have no contact with known terrorists or terrorist facilitators who

   recruit or facilitate travel of terrorist operatives, nor have had I any such contact in the

   past.

17. I am not planning any attack of any kind.

18. I am not, and have never been, associated with a terrorist group or cell, to my knowledge.

19. I am not accumulating any weapons or explosives.

20. I am vehemently opposed to terrorism and what groups like Al Qaeda and ISIS stand for.


I, Fahmi Moharam, swear under penalty of perjury that the foregoing is true and correct to the
best of my knowledge.

_Fahmi Moharam_

Sworn to before me

This _19_ day of _10_ , 2021.

_Regina L Harris,_ Regina L Harris

Notary Public

REGINA L HARRIS
Notary Public - State of Michigan
County of Wayne
My Commission Expires Nov 26, 2025
Acting in the County of _Wayne_

11-26-2025

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FAHMI AHMED MOHARAM<br>104 South Cabin Street Apt B<br>Ligonier, IN 46767; | |
| *Plaintiff*, | |
| v. | |
| FEDERAL BUREAU OF<br>INVESTIGATION; | |
| TERRORIST SCREENING CENTER; | |
| MERRICK GARLAND, Attorney General of<br>the United States, Department of Justice, in<br>his official capacity only; | |
| CHRISTOPHER WRAY, Director of the<br>Federal Bureau of Investigation, in his official<br>capacity only; | |
| CHARLES KABLE, Director of the Terrorist<br>Screening Center, in his official capacity<br>only; | Civil Action No. 21cv2607 |
| DEPARTMENT OF HOMELAND<br>SECURITY; | |
| ALEJANDRO MAYORKAS, Secretary of<br>the Department of Homeland Security, in his<br>official capacity only; | |
| NATIONAL COUNTERTERRORISM<br>CENTER; | |
| CHRISTINE ABIZAID, Director of the<br>National Counterterrorism Center, in her<br>official capacity only; | |
| TRANSPORTATION SECURITY<br>ADMINISTRATION; and | |
| DAVID P. PEKOSKE, Administrator of the<br>Transportation Security Administration,<br>Department of Homeland Security, in his<br>official capacity only; | |
| *Defendants.* | |

TSA AR000117

## COMPLAINT

1.     Through the opaque and secretive watchlisting process, the government has deprived plaintiff Fahmi Ahmed Moharam of his fundamental right to travel.  Mr. Moharam's placement on the No Fly List without affording him adequate notice and without a meaningful opportunity for redress violates his procedural and substantive due process rights arising under the Fifth Amendment of the United States Constitution, as well as the Administrative Procedure Act. Accordingly, through this lawsuit, Mr. Moharam seeks an order declaring that (1) defendants have violated and continue to violate his rights under the Fifth Amendment of the U.S. Constitution; and (2) defendants' actions against Mr. Moharam constitute an abuse of discretion and violate the Administrative Procedure Act.  Further, Mr. Moharam seeks an order that requires defendants to remedy their constitutional and statutory violations, including by (1) removing Mr. Moharam from the No Fly List, the Terrorist Screening Database (TSDB), and any other database or watchlist that prevents him from travelling to, from, or within the United States; and (2) providing a declaration that Mr. Moharam is no longer on the No Fly List or in the TSDB and will not be placed back on such list or in such database based on currently available information.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises, in part, under the Fifth Amendment of the United States Constitution.

3.     There has been no final determination by DHS or the TSA Administrator regarding Mr. Moharam's placement on the No Fly List.  Mr. Moharam's response to the last correspondence received from DHS regarding his placement on the No Fly List is due October 19, 2021. Accordingly, 49 U.S.C. § 46110 is not applicable to this action.

4.     Venue is appropriate in this Court under 28 U.S.C. § 1391(e) because a substantial

TSA AR000118

part of the events giving rise to the plaintiff's claims occurred in this district.

## PARTIES

### A. Plaintiff

5.      Plaintiff Fahmi Ahmed Moharam was born and raised in Yemen before immigrating to the United States and becoming a United States citizen.  He currently resides and works in Indiana.

### B. Defendants

6.      Defendant Federal Bureau of Investigation is a component of the Department of Justice.  Defendant FBI administers the Terrorist Screening Center (TSC), which was created to consolidate the federal government's terrorism-related screening capabilities.

7.      Defendant Terrorist Screening Center is responsible for maintaining the TSDB. The No Fly List is a subset of the TSDB.

8.      Defendant Merrick Garland is the Attorney General of the United States and heads the U.S. Department of Justice (DOJ).  Defendant Garland is sued in his official capacity only.

9.      Defendant Christopher Wray is the Director of the FBI.  Defendant Wray is sued in his official capacity only.

10.      Defendant Charles Kable has been the Director of the TSC since April 2013. Defendant Kable is sued in his official capacity only.

11.      Defendant Department of Homeland Security ("DHS") is a department of the U.S. government.  It develops and coordinates the national security strategy of the United States.  DHS operates the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP).

12.      Defendant Alejandro Mayorkas is the Secretary of DHS.  Defendant Mayorkas is sued in his official capacity only.

TSA AR000119

13.     Defendant National Counterterrorism Center (NCTC) is a government organization under the authority of the Office of the Director of National Intelligence.  The NCTC is intimately involved with the process of nominating individuals to the TSDB and the No Fly List, as well with as the DHS TRIP redress process.

14.     Defendant Christine Abizaid is the Director of the NCTC.  Defendant Abizaid is sued in her official capacity only.

15.     Defendant Transportation Security Administration (TSA) is an agency of the U.S. government under the authority of DHS.

16.     Defendant David A. Pekoske is the Administrator of the TSA.  Defendant Pekoske is sued in his official capacity only.

### FACTUAL ALLEGATIONS

**A.     THE TERRORIST SCREENING DATABASE AND THE NO FLY LIST**

**1.     The TSDB and No Fly List Nomination Process**

17.     The TSDB is the federal government's terrorist watchlist.  The TSC has maintained the TSDB since 2003.

18.     Individuals are added to the TSDB through a process of "nomination."  The FBI and the NCTC are the two entities primarily responsible for the process used to nominate individuals for inclusion in TSDB, which is then used to populate the No Fly List.

19.     The process of nominating and approving individuals for placement on the TSDB is a black box that relies on ill-defined, amorphous criteria, provides no notice to individuals prior to their inclusion (and the concomitant deprivation of their rights), and is utterly lacking in safeguards.

20.     According to the "Overview of the U.S. Government's Watchlisting Process and Procedures" (the "Watchlisting Overview") released by the U.S. government in January 2018, in

4

order for a person to be nominated to the TSDB, the "nomination must include enough identifying information to allow screeners to determine whether the individual they are screening is a match to a record in the TSDB" and must also include "enough information to establish a reasonable suspicion that the individual is a known or suspected terrorist." TSC makes the final decision as to whether a nomination satisfies the requirements for TSDB inclusion as a "known or suspected terrorist."

21.     Once an individual is included in the TSDB, that person may be placed on the No Fly List, barring him from boarding an aircraft to or from the United States, as well as any aircraft that flies over U.S. airspace. As with the TSDB, the TSC acts as the gatekeeper for who is included on the No Fly List.

22.     According to the Watchlisting Overview, in order for a nomination to the No Fly List to be accepted by the TSC, there must be reasonable suspicion that the individual poses a threat of: (1) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft; (2) committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; (3) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations, U.S. ships, U.S aircraft, or other auxiliary craft owned or leased by the U.S. Government.

23.     The Overview also contains a catch-all provision, permitting nomination to the No Fly List when an agency determines an individual poses a threat of engaging in or conducting a violent act of terrorism and is operationally capable of doing so.

24.     The TSC shares records it maintains in the TSDB, including the No Fly List, with

TSA AR000121

other government agencies, including defendant TSA, for use by airlines to pre-screen travelers.

25.     Individuals who are included on the No Fly List are not provided any notice prior to their inclusion on the No Fly List nor are they provided any notice of the resulting deprivation of their constitutional right to travel.

**2.      The TSBD and the No Fly List Are Replete with Errors.**

26.     Guilt-by-association is a common basis for inclusion in the TSDB.  The TSC has historically added friends, family members, or other associates of an individual on the TSDB to the TSDB.  These associates can be added without any accompanying derogatory information at all, other than the fact they are associated with another individual in the TSDB.

27.     Further, the FBI and NCTC erroneously add people to the TSDB due to seemingly similar names, typos, and other mistakes on a routine basis.

28.     Additions to the TSDB have skyrocketed over the last ten years.  More than triple the number of individuals were added into the TSDB in 2016 than were added into the TSDB in 2009.  Approximately 99% of all nominations are accepted into the TSDB each year, which now, according to the Congressional Research Service, includes over one million individuals.  Upon information and belief, according to leaked government documents, nearly half of the people on the TSDB have no connection at all to any known terrorist organization.

29.     In 2009, the DOJ Office of Inspector General completed an audit report on the FBI's terrorist watchlist program (the "2009 DOJ OIG Report"), which concluded that the "FBI did not update or remove watch list records as required."  The 2009 DOJ OIG Report found that the FBI failed to:  (1) remove records in a timely manner in 72 percent of cases where it was necessary; (2) modify watchlist records in 67 percent of cases where it was necessary; and (3) remove associations to the FBI's terrorism case classifications in 35 percent of cases where it was necessary.

TSA AR000122

30.     Given that the TSDB is used to populate the No Fly List, it is no surprise that various government reports and audits similarly have concluded that the No Fly List is rife with errors and inaccuracies, and lacks quality controls.

31.     For example, in 2006 the U.S. Government Accountability Office found that tens of thousands of entries were mistakenly added to the No Fly List due to misidentification.

32.     Similarly, the Department of Justice's Office of Inspector General noted in a 2007 report that fully 43% of No Fly List records that were reviewed contained errors, calling the TSC's internal quality assurance process "weak."  These failures are due to a persistent lack of quality controls in the process of accepting nominations to the No Fly List.

33.     Moreover, a 2009 Department of Homeland Security Office of Inspector General Report titled "Effectiveness of the Department of Homeland Security Traveler Redress Inquiry Program" (the "2009 DHS TRIP Report") noted that a major airline encountered 9,000 erroneous terrorist watchlist matches per day in April 2008.  The 2009 DHS TRIP Report also noted that while DHS TRIP, discussed below at paragraphs 34-45, offers solutions to some traveler issues, "it does not address other issues effectively, including the most common—watch list misidentification in aviation security settings."

**3.      DHS TRIP Is Ineffective at Redressing Erroneous Placement on the No Fly List.**

34.     The only process for individuals seeking to resolve travel-related issues due to placement on the No Fly List is DHS TRIP.

35.     Under the current procedures, if a United States citizen or lawful permanent resident who has been denied boarding initiates an inquiry pursuant to DHS TRIP, DHS will send a notification letter that affirmatively states whether the individual is in fact on the No Fly List.

36.     If the individual requests more details, DHS TRIP will forward the file to the TSC

TSA AR000123

Redress Office, which then notifies the NCTC and the relevant nominating agency (either the FBI or NCTC) that a request for additional information has been submitted.

37.     The TSC Redress Office then requests an unclassified summary of the basis for an individual's placement on the No Fly List from the nominating agency.  Upon receiving this unclassified summary, the TSC forwards the case back to DHS TRIP.

38.     DHS TRIP is then required to provide more detail to the individual, specifying the criteria used to evaluate the individual's placement on the No Fly List and, to the extent feasible, providing an unclassified summary of information that states the basis for an individual's inclusion in the No Fly List.  There is no time limit for DHS TRIP to provide this information and many individuals— including Mr. Moharam—have waited years to receive the summary.

39.     This second, more detailed explanation will provide an opportunity for a traveler to submit written responses, including exhibits or other materials, to challenge his or her placement on the No Fly List ("DHS TRIP Appeal").

40.     Upon DHS TRIP's receipt of an individual's DHS TRIP Appeal, DHS TRIP sends the traveler's written response and any included information to the TSC.  The TSC then reviews the response and other available information.

41.     If the TSC determines that the individual seeking review should not remain on the No Fly List, the TSC has the authority to remove them from the No Fly List.  If the TSC determines that they should remain on the list, the TSC submits a recommendation to the TSA Administrator that includes a summary of reasons for that determination.

42.     The TSA Administrator then must issue a final determination and furnish the individual with a final written letter providing the basis for the decision.  TSA must also notify the individual of the right to seek further judicial review under 49 U.S.C. § 46110.

TSA AR000124

43.     DHS TRIP is largely ineffective.  More often than not, DHS TRIP refuses to release specific facts regarding placement on the No Fly List and fails to timely process numerous complaints related to the No Fly List.  Availing oneself of the DHS TRIP process usually includes waiting months or years just to get confirmation of placement on the No Fly List.  DHS TRIP also does not appear to be effective at assisting individuals who may share a name or date of birth with a watchlisted identity.

44.     Further, there is no hearing afforded as part of the DHS TRIP process and no opportunity to cross-examine relevant witnesses.

45.     In addition, the DHS TRIP process provides no mechanism for accessing any documents that may be relied upon as a substantial basis for the TSC's continued inclusion of an individual on the No Fly List or an individual's information within the TSDB.

**B.     MR. MOHARAM'S RIGHTS HAVE BEEN VIOLATED.**

46.     In practice, and as applied to Mr. Moharam, the DHS TRIP process for Mr. Moharam to challenge his placement on the No Fly List is deficient and does not comport with the standards demanded by the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.  Defendants have not provided a legal mechanism that affords Mr. Moharam adequate notice of the reasons for his placement on the TSDB and No Fly List, or a meaningful opportunity to contest his continued inclusion on the TSDB and No Fly List.

**1.     Mr. Moharam Has Been Deprived of His Right to Travel.**

47.     Mr. Moharam was born in Yemen, but has lived in the United States for most of his life and is a United States citizen.

48.     For most of his adult life, Mr. Moharam regularly flew in U.S. airspace.  Similarly, like tens of thousands of Yemeni-Americans, Mr. Moharam regularly traveled to Yemen

TSA AR000125

throughout his adult life, including to pursue religious studies and to visit his mother, wife, children, and other relatives who reside there.

49.     Mr. Moharam is not, and has never been, a threat to national security.  Mr. Moharam does not pose any threat of committing, engaging in, or conducting any act of terrorism.

50.     Upon information and belief, Mr. Moharam was placed on the No Fly list no later than October 2017, when he was denied the right to fly home to the United States from a religious pilgrimage in Saudi Arabia.

51.     Mr. Moharam was subsequently able to return to the United States in late 2017 pursuant to a one-time waiver, described more fully below, available to U.S. citizens and lawful permanent residents who are on the No Fly List.

52.     Before filing the instant complaint and in the hope that perhaps, with the passage of time, officials had finally rectified his unjustified placement on the No Fly List, Mr. Moharam attempted to board a flight on August 3, 2021 from Oakland, CA to Las Vegas, NV.  Mr. Moharam was not permitted to board this flight.  Two unidentified law enforcement agents approached him at the airport and questioned him for approximately ten minutes about his inability to fly.

53.     Due to his placement on the No Fly List, since late 2017 Mr. Moharam has been separated from his family members who currently reside in Yemen, including his mother, his wife, and all of his children, except for his oldest son.

54.     Mr. Moharam's mother in Yemen is in poor health and Mr. Moharam has not been able to visit her or care for her in the ways he could prior to his placement on the No Fly List.

55.     Because of Mr. Moharam's unjust and unlawful placement on the No Fly List, he has suffered emotional and psychological harm because of his inability to visit his children and

TSA AR000126

mother, and financial harm resulting from increased costs to travel within the United States to see his father.

**2.    The Redress Process Available to Mr. Moharam Is Constitutionally Insufficient.**

56.    On October 25, 2017, Mr. Moharam, as directed by airline personnel, contacted officials at the U.S. Consulate General in Jeddah, Saudi Arabia to determine how he could return to the United States.  He was told by consular officials that they would look into the matter and contact him with additional information.

57.    According to emails provided to Mr. Moharam by the Department of State pursuant to the Freedom of Information Act, on the afternoon of October 27, 2017, State Department personnel in Jeddah had obtained from the TSC guidance regarding how to instruct Mr. Moharam to obtain a one-time waiver to return the U.S. by air.

58.    On October 29, 2017, a State Department employee ("State Employee 1"), wrote to another State Department employee ("State Employee 2") who, on information and belief, worked at the U.S. Consulate in Jeddah, Saudi Arabia.  State Employee 1 asked whether Mr. Moharam had been provided with the appropriate guidance regarding his ability to obtain a one-time waiver.  In response, State Employee 2 told DOS Employee 1 that "My understanding is that we are not there yet in terms of the letter," and that after Mr. Moharam was interviewed, "we will then regroup and discuss next steps."

59.    State Employee 1 replied, asking State Employee 2 for clarification, noting that it was "fine" to delay delivery of the one-time waiver guidance to Mr. Moharam if there was "some operational reason," but emphasized that as an American citizen Mr. Moharam has a right to re-enter the United States and that "we have a general obligation to in a timely fashion explain to him how to do that."

11

TSA AR000127

60.     State Department employees intentionally delayed giving Mr. Moharam those instructions, however, and failed to timely inform him of his right as a U.S. citizen to return to the United States, despite being in possession of such guidance since October 27, 2019.  Instead, State Department employees requested that Mr. Moharam come to the Consulate two days later, on October 29, 2017.  Mr. Moharam believed that his visit to the Consulate concerned his ability to fly back to the United Sates.  Instead, it was engineered to provide an opportunity for Mr. Moharam to be interrogated by law enforcement officials from the Regional Security Office in Riyadh and at least one member of the FBI legal attaché's office in Riyadh.

61.     On October 29, 2017, after being interrogated by officials from the Regional Security Office and at least one member of the FBI legal attaché's office in Riyadh, Mr. Moharam submitted an inquiry to DHS TRIP in an effort to challenge his placement on the No Fly List and return to the United States from Yemen.

62.     It was not until November 21, 2017 that Mr. Moharam was granted a one-time waiver to return to the United States via a commercial flight operated by a U.S.-based commercial carrier.  As part of this one-time waiver process, Mr. Moharam was required to provide a proposed itinerary, which was reviewed by the TSC.  Mr. Moharam returned to the United States on December 15, 2017.

63.     Nearly four months after the initial denial of boarding, by letter dated February 14, 2018, DHS TRIP confirmed to Mr. Moharam that he had been placed on the No Fly List.  A true and correct copy of this correspondence is attached as Exhibit A.

64.     On March 13, 2018, Mr. Moharam then timely filed a request seeking the reasons for his placement on the No Fly List.  A true and correct copy of this correspondence is attached as Exhibit B.

12

65.     Mr. Moharam did not receive a response to this request for nearly two years. During this period, there were no other administrative redress options available for Mr. Moharam to contest his placement on the No Fly List.

66.     In February 2020, DHS finally provided Mr. Moharam a two-sentence-long unclassified "summary," which DHS claimed was the only information it could provide regarding the reasons for his placement on the No Fly List. Specifically, DHS stated that Mr. Moharam was "on the U.S. Government's No Fly list because the Government has concerns about [his] activities during frequent and extended travel to Yemen between 2011 and 2017. The information [he] shared during [his] interview at the U.S. Consulate in Jeddah in November 2017 [sic] did not assuage the Government's concerns." A true and correct copy of this correspondence is attached as Exhibit C.

67.     This unclassified "summary" does not satisfy the obligation of DHS to provide information sufficient to allow Mr. Moharam to respond adequately to the allegations concerning him or challenge his placement on the No Fly List.

68.     Mr. Moharam's only form of administrative redress is to submit a DHS TRIP Appeal. But the DHS TRIP Appeal process has proved woefully inadequate. TRIP offers no meaningful review of his No Fly List designation and insulates the TSC from any meaningful administrative oversight with respect to individual nominations.

69.     That is especially true here given that DHS has provided a purported "summary" of reasons for Mr. Moharam's placement on the No Fly List that does not contain any details that would allow him to mount an effective DHS TRIP Appeal. Critically, DHS did not provide Mr. Moharam any information that would allow him to actually respond to any "derogatory information." One example of this is the vague statement that the government has "concerns"

13

TSA AR000129

about his "activities."  It is impossible for Mr. Moharam to meaningfully challenge his placement on the No Fly List or craft an administrative appeal that effectively responds to the government's alleged but undescribed "concerns" about his travel in Yemen.

70.     Mr. Moharam has also been deprived of documents that are necessary to challenge his placement on the No Fly List, which the government has withheld on the vague grounds that national security concerns preclude their disclosure.  In particular, DHS TRIP refused Mr. Moharam's May 20, 2020 request for documents related to the October 29, 2017, FBI/Regional Security Office interview in Jeddah, Saudi Arabia.  The perfunctory, unclassified summary referenced the interview specifically, asserting that "the information you shared during your interview at the U.S Consulate in Jeddah in November [sic] 2017 did not assuage the Government's concerns."  Mr. Moharam was forced to pursue separate FOIA litigation just to receive partial, heavily redacted reports related to the October 29, 2017, interrogation in Jeddah, Saudi Arabia.

71.     Additionally, Mr. Moharam is represented by counsel with an appropriate security clearance who were nonetheless denied access to any classified information concerning the basis for Mr. Moharam's placement on the No Fly List.  Because Mr. Moharam has retained counsel with appropriate security clearances, DHS can and should produce any responsive classified material that is not otherwise exempt from disclosure to his security-cleared counsel.

72.     Further, there is no impartial arbiter in the DHS TRIP process that can test the government's claim that national security reasons prevent the government from sharing additional information.  Such an independent party is necessary for the DHS TRIP process to conform to procedural due process requirements.  Additionally, there is no impartial arbiter to adjudicate Mr. Moharam's DHS TRIP appeal.

73.     Nor does Mr. Moharam have any opportunity for a hearing through the DHS TRIP

TSA AR000130

process even though hearings are required where lesser or similar liberty deprivations are at issue, such as the loss of a community board seat coupled with public accusations of criminal behavior, or revocation of a passport.

74.     Without additional procedural safeguards, including a full statement of reasons, access to relevant documents for security-cleared counsel, and a live hearing, Mr. Moharam has been, and continues to be, deprived of a meaningful opportunity to contest his continued inclusion on the No Fly List.

### FIRST CLAIM FOR RELIEF
### Violations of Mr. Moharam's Fifth Amendment Procedural Due Process Rights
### (as to all defendants)

75.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1-74 above.

76.     Mr. Moharam has a protected liberty interest in travelling domestically and internationally within or over U.S. airspace.

77.     Defendants' placement and retention of Mr. Moharam on the No Fly List violated his constitutionally protected liberty interests by depriving him of his right to travel and making it impossible for him to travel by plane to see his mother, wife, and children in Yemen.

78.     Defendants have included Mr. Moharam on the No Fly List without notice and without providing him with a constitutionally adequate mechanism to challenge his inclusion on the No Fly List and the resulting deprivation of his liberty interests, as described above.

79.     Defendants have deprived Mr. Moharam of a meaningful opportunity to challenge his placement on the No Fly List, and DHS TRIP does not and has not provided Mr. Moharam with an adequate procedure to contest his placement therein, by failing to provide Mr. Moharam (1) a full statement of reasons or bases on which defendants relied to place and maintain him on

TSA AR000131

the No Fly List; (2) the information supporting those bases; (3) the opportunity to challenge his placement in a live hearing before a neutral decision-maker; and (4)  access for security-cleared counsel to any classified information allegedly supporting his placement.

80.     Defendants therefore have deprived Mr. Moharam of his constitutionally protected liberty interests without adequate procedural due process.

<p style="text-align:center"><strong>SECOND CLAIM FOR RELIEF</strong><br>
<strong><em>Violation of Mr. Moharam's Fifth Amendment Rights Caused by Unconstitutionally Vague Criteria for Inclusion on the No Fly List, as Applied to Mr. Moharam</em></strong><br>
<strong><em>(as to all defendants)</em></strong></p>

81.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1- 74 above.

82.     The Fifth Amendment to the U.S. Constitution requires the government to provide individuals with fair notice of conduct that is prohibited to prevent arbitrary or discriminatory enforcement by government officials.

83.     The criteria for inclusion on the No Fly List, as established and executed by defendants, are unconstitutionally vague under the Fifth Amendment as applied to Mr. Moharam because defendants failed to provide him with fair notice of what prohibited conduct they believe justifies his placement on the No Fly List.

84.     The only justification given to Mr. Moharam for his placement on the No Fly List is unspecified government concerns regarding his travels to Yemen from 2011 to2017. It is thus impossible to ascertain what conduct Mr. Moharam has engaged in that the government considers relevant to the No Fly List criteria.

TSA AR000132

**THIRD CLAIM FOR RELIEF**
**Violation of Mr. Moharam's Fifth Amendment Substantive Due Process Rights**
**(as to all defendants)**

85.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1- 74 above.

86.     Mr. Moharam's fundamental rights include the right not to be arbitrarily deprived of his freedom to travel to, from, and within the United States, as well as over U.S. air space.

87.     Defendants' placement of Mr. Moharam on the No Fly List directly and substantially infringes on Mr. Moharam's fundamental liberty right to travel.

88.     Defendants' placement and retention of Mr. Moharam on the No Fly List serves no governmental interest whatsoever.  Mr. Moharam is not a threat to national security interests or aviation.

89.     Defendants violated Mr. Moharam's constitutional rights and have deprived him of a fundamental right without legitimate governmental interest.

**FOURTH CLAIM FOR RELIEF**
**Violations of the Administrative Procedure Act, §§ 702, 706**
**(as to all defendants)**

90.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1- 74 above.

91.     Defendants' placement of Mr. Moharam on the No Fly List, and failure to provide him with a constitutionally adequate mechanism to challenge his placement constitute agency actions under the Administrative Procedure Act (hereinafter "APA"), 5 U.S.C. §§ 701, 706.

92.     The APA prohibits federal agency action that is arbitrary, capricious, unconstitutional, an abuse of discretion or contrary to law.  5 U.S.C. § 706.

93.     Defendants have failed to provide Mr. Moharam with an adequate mechanism that

17

affords him adequate notice and the reasons for his placement on the No Fly List and have failed to provide him a meaningful opportunity to be heard and contest his placement on the No Fly List. To date, DHS TRIP has provided only two sentences justifying his placement on the list, which lack the context and specificity necessary to permit a meaningful response. Defendants' actions are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, unconstitutional, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

94.    For similar reasons, the DHS TRIP process fails to provide Mr. Moharam with a meaningful opportunity to be heard.

95.    Defendants have no rational basis to suspect Mr. Moharam of presenting a threat to commercial aviation or national security. Defendants' actions as described above in including Mr. Moharam on the TSDB and No Fly List are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

### REQUEST FOR RELIEF

WHEREFORE, Mr. Moharam respectfully requests that the Court:

a.    Declare that defendants violated, and continue to violate, Mr. Moharam's rights under the Fifth Amendment to the U.S. Constitution;

b.    Declare that defendants' actions against Mr. Moharam violated, and continue to violate, the Administrative Procedure Act;

c.    Issue an order that requires defendants to:

    i.    Remedy the constitutional and statutory violations identified above, including by removing Mr. Moharam from the Terrorist Screening Database, the No Fly

18

TSA AR000134

List, and any other database that prevents him flying to, from, and within the United States;

ii.    Provide a declaration that Mr. Moharam is no longer in the Terrorist Screening Database and/or on the No Fly List and will not be placed back on the list and/or in the database based on currently available information;

iii.    In the alternative, provide Mr. Moharam with a legal mechanism that affords him adequate notice of the reasons for his placement in the Terrorist Screening Database and on the No Fly List and a meaningful opportunity to contest his continued inclusion on the Terrorist Screening Database and the No Fly List;

d.    Award Mr. Moharam reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

e.    Grant Mr. Moharam such other relief as the Court deems appropriate.

Dated: October 6, 2021                Respectfully submitted,


By:  s/Robert S. Litt

        Robert S. Litt (D.C. Bar No. 312470)
        MORRISON & FOERSTER LLP
        2000 Pennsylvania Avenue, NW
        Suite 6000
        Washington, D.C. 20006
        Telephone: (202) 887-1588
        Email:  rlitt@mofo.com

        Adam J. Hunt (pursuant to LCvR 83.2(g))
        Janie C. Buckley (pursuant to LCvR 83.2(g))
        MORRISON & FOERSTER LLP
        250 W. 55th St.
        New York, NY 10019
        Telephone: (212) 468-8000
        Email:  adamhunt@mofo.com
                jbuckley@mofo.com

TSA AR000135

-and-

**CLEAR PROJECT**
**MAIN STREET LEGAL SERVICES, INC.**

*/s/ Ramzi Kassem*
Ramzi Kassem (pursuant to LCvR 83.2(g))
Naz Ahmad (pursuant to LCvR 83.2(g))
CUNY School of Law
2 Court Square
Long Island City, NY 11101
T: (718) 340-4558
F: (718) 340-4478
E:       ramzi.kassem@law.cuny.edu
          naz.ahmad@law.cuny.edu

*Counsel for Plaintiff Fahmi Ahmed Moharam*

TSA AR000136

| | |
|---|---|
| **From:** | RedressFinal, TRIP |
| **To:** | Naz Ahmad |
| **Cc:** | GPII |
| **Subject:** | RE: 2263437 - Request for Extension |
| **Date:** | Wednesday, December 8, 2021 12:05:00 PM |

Thank you for your email. DHS TRIP does not believe that Mr. Moharam's filing of a lawsuit is a valid reason to hold his previously submitted inquiry in abeyance. Accordingly, DHS TRIP will continue processing Mr. Moharam's DHS TRIP inquiry, which may result in a final determination of the TSA Administrator removing him from, or maintaining him on the No Fly List. Mr. Moharam may provide any additional information or material that he deems relevant within 30 days from the date of this email. Any information or materials Mr. Moharam provides, or that you provide on his behalf, will be considered prior to making a determination.

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Tuesday, October 19, 2021 6:00 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached Mr. Moharam's response and request for tolling.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Monday, April 19, 2021 at 3:08 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your most recent inquiry. This email is to confirm that your client has been granted an extension until October 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

With respect to your renewed request for counsel to receive access to classified information

TSA AR000137

regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Thursday, April 15, 2021 11:06 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

> CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello —

I am writing to follow up on our request for an extension, which is currently due April 19, 2021.

Kind regards,

Naz

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Wednesday, April 7, 2021 at 12:41 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** "GPII
**Subject:** Re: 2263437 - Request for Extension

Hello —

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

Kind regards,

Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

TSA AR000138

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII                          , Sharmin Piancca
PPII                          Princess Masilungan
PPII                          , Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

TSA AR000139

Appx141

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII ; Sharmin Piancca PPII ; Princess Masilungan PPII Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

> CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII , Sharmin Piancca PPII Princess Masilungan PPII Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

TSA AR000140

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000141

| From: | Naz Ahmad |
|---|---|
| To: | RedressFinal, TRIP |
| Cc: | GPII |
| Subject: | Re: 2263437 - Request for Extension |
| Date: | Tuesday, October 19, 2021 7:00:03 PM |
| Attachments: | 2263437_F Moharam Response_2021.10.19.pdf |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached Mr. Moharam's response and request for tolling.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Monday, April 19, 2021 at 3:08 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your most recent inquiry.  This email is to confirm that your client has been granted an extension until October 19, 2021.  If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

With respect to your renewed request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Thursday, April 15, 2021 11:06 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

TSA AR000142

Appx144

Hello –

I am writing to follow up on our request for an extension, which is currently due April 19, 2021.

Kind regards,

Naz

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Wednesday, April 7, 2021 at 12:41 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

Hello –

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

Kind regards,

Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.
Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII

TSA AR000143

**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII                                Sharmin Piancca
PPII                                          Princess Masilungan
PPII                                          Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>

TSA AR000144

Appx146

**Cc:** Hannah Walsh PPII
PPII                                          Sharmin Piancca
Princess Masilungan PPII
Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

> CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII
PPII                                          , Princess Masilungan
PPII                                          Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000145

**Appx147**

USCA Case #22-1184    Document #2006786    Filed: 07/07/2023    Page 148 of 247



CREATING
LAW
ENFORCEMENT
ACCOUNTABILITY &
RESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

October 19, 2021

Deborah O. Moore
Director
DHS Travel Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901
TRIP@dhs.gov

VIA ELECTRONIC MAIL

**Re:**    TRIP Redress Control Number **2263437**

Dear Ms. Moore:

On February 14, 2018, DHS TRIP sent Mr. Moharam a letter informing him of his placement on the No Fly List. On March 13, 2018, Mr. Moharam submitted a request for additional information to DHS TRIP, per mandated TRIP procedure.

On February 20, 2020, almost two years after this request for additional information, DHS TRIP finally returned confirmation of Mr. Moharam's continued placement on the No Fly List, as well as an unclassified summary of the alleged reasons for this status determination.

We continue to believe his placement on the No Fly List is in error. On May 7, 2020, our first request for an extension was granted due to the extenuating circumstances posed by the COVID-19 pandemic. We requested an additional extension until April 19, 2021 to respond, which was granted on October 13, 2020. DHS TRIP granted a third extension until October 19, 2021.

Our office has previously requested on at least three occasions access to the classified information allegedly supporting the basis for Mr. Moharam's placement, and each time have been denied.

On October 6, 2021, Mr. Moharam filed a complaint in the District of Columbia, challenging the unconstitutional procedures pertaining to TRIP and his ability to seek removal from the No Fly List (attached). We maintain that the procedures and information currently available to Mr. Moharam are constitutionally inadequate and DHS TRIP has failed to provide sufficient information upon which Mr. Moharam can provide a response.

Mr. Moharam's ability to respond to the unclassified summary should be tolled while his complaint is pending in the District of Columbia.

In the event that DHS TRIP refuses to toll his time to respond, Mr. Moharam submits the accompanying affidavit, reserving his right to supplement given DHS TRIP's failure to share the full reasons for his placement on the No Fly List.

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@law.cuny.edu



TSA AR000146

Thank you in advance for your understanding and prompt response.


Sincerely,


Naz Ahmad, *Senior Staff Attorney*

TSA AR000147

**Affidavit of Fahmi Moharam**

1. My name is Fahmi Moharam. I am submitting this affidavit in support of my request to be removed from the No Fly List. I reserve my rights to provide further information concerning my travel to Yemen during 2011 - 2017 if more information and other procedural protections are provided to me concerning my placement on the No Fly List.

2. I was born on PPII █████████████.

3. I am a naturalized U.S. citizen.

4. I currently live in Indiana.

5. I first came to the United States as a child.

6. My mother resides in Yemen.

7. My wife and four of my five children reside in Yemen.

8. Because my mother, wife, and children reside in Yemen. I have made many trips to Yemen over the years, including before 2011 and after, up to my last trip in 2017.

9. My main purpose in going to Yemen, when I went between 2011 and 2017 was to visit my family and spend time with them, and secondarily, to pursue religious study.

10. Between 2011 – 2017, I made at least three trips to Yemen.

11. My ability to recall specific dates of travel to and within Yemen is weak. To the extent I am able to provide information about these travels, I would have to rely on my general memory of those visits as well as passport records and flight itineraries.

12. If provided more information and adequate procedures to challenge my placement on the No Fly List, I would welcome any specific questions about my travel and activities in Yemen between 2011 and 2017.

1

TSA AR000148

Aff. of Fahmi Moharam

13. I have never undergone terrorist training or been provided instruction, or received

military training by a designated terrorist group.

14. I have never indicated intent to participate in planning or conducting any attack of any

kind.

15. I do not have, nor have I ever in the past had, any plan or desire to martyr myself.

16. To my knowledge, I have no contact with known terrorists or terrorist facilitators who

recruit or facilitate travel of terrorist operatives, nor have had I any such contact in the

past.

17. I am not planning any attack of any kind.

18. I am not, and have never been, associated with a terrorist group or cell, to my knowledge.

19. I am not accumulating any weapons or explosives.

20. I am vehemently opposed to terrorism and what groups like Al Qaeda and ISIS stand for.


I, Fahmi Moharam, swear under penalty of perjury that the foregoing is true and correct to the
best of my knowledge.

_____
Fahmi Moharam


Sworn to before me

This _19_ day of _10_ , 2021.


_Regina L Harris,_ Regina L Harris
Notary Public

REGINA L HARRIS
Notary Public - State of Michigan
County of Wayne
My Commission Expires Nov 26, 2025
Acting in the County of _Wayne_

11-26-2025

2

TSA AR000149

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FAHMI AHMED MOHARAM
104 South Cabin Street Apt B
Ligonier, IN 46767;

*Plaintiff*,

v.

FEDERAL BUREAU OF
INVESTIGATION;

TERRORIST SCREENING CENTER;

MERRICK GARLAND, Attorney General of
the United States, Department of Justice, in
his official capacity only;

CHRISTOPHER WRAY, Director of the
Federal Bureau of Investigation, in his official
capacity only;

CHARLES KABLE, Director of the Terrorist          Civil Action No. 21cv2607
Screening Center, in his official capacity
only;

DEPARTMENT OF HOMELAND
SECURITY;

ALEJANDRO MAYORKAS, Secretary of
the Department of Homeland Security, in his
official capacity only;

NATIONAL COUNTERTERRORISM
CENTER;

CHRISTINE ABIZAID, Director of the
National Counterterrorism Center, in her
official capacity only;

TRANSPORTATION SECURITY
ADMINISTRATION; and

DAVID P. PEKOSKE, Administrator of the
Transportation Security Administration,
Department of Homeland Security, in his
official capacity only;

*Defendants.*

TSA AR000150

Appx152

## **COMPLAINT**

1.      Through the opaque and secretive watchlisting process, the government has deprived plaintiff Fahmi Ahmed Moharam of his fundamental right to travel. Mr. Moharam's placement on the No Fly List without affording him adequate notice and without a meaningful opportunity for redress violates his procedural and substantive due process rights arising under the Fifth Amendment of the United States Constitution, as well as the Administrative Procedure Act. Accordingly, through this lawsuit, Mr. Moharam seeks an order declaring that (1) defendants have violated and continue to violate his rights under the Fifth Amendment of the U.S. Constitution; and (2) defendants' actions against Mr. Moharam constitute an abuse of discretion and violate the Administrative Procedure Act. Further, Mr. Moharam seeks an order that requires defendants to remedy their constitutional and statutory violations, including by (1) removing Mr. Moharam from the No Fly List, the Terrorist Screening Database (TSDB), and any other database or watchlist that prevents him from travelling to, from, or within the United States; and (2) providing a declaration that Mr. Moharam is no longer on the No Fly List or in the TSDB and will not be placed back on such list or in such database based on currently available information.

### **JURISDICTION AND VENUE**

2.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises, in part, under the Fifth Amendment of the United States Constitution.

3.      There has been no final determination by DHS or the TSA Administrator regarding Mr. Moharam's placement on the No Fly List. Mr. Moharam's response to the last correspondence received from DHS regarding his placement on the No Fly List is due October 19, 2021. Accordingly, 49 U.S.C. § 46110 is not applicable to this action.

4.      Venue is appropriate in this Court under 28 U.S.C. § 1391(e) because a substantial

TSA AR000151

part of the events giving rise to the plaintiff's claims occurred in this district.

## PARTIES

### A. Plaintiff

5.      Plaintiff Fahmi Ahmed Moharam was born and raised in Yemen before immigrating to the United States and becoming a United States citizen.  He currently resides and works in Indiana.

### B. Defendants

6.      Defendant Federal Bureau of Investigation is a component of the Department of Justice.  Defendant FBI administers the Terrorist Screening Center (TSC), which was created to consolidate the federal government's terrorism-related screening capabilities.

7.      Defendant Terrorist Screening Center is responsible for maintaining the TSDB. The No Fly List is a subset of the TSDB.

8.      Defendant Merrick Garland is the Attorney General of the United States and heads the U.S. Department of Justice (DOJ).  Defendant Garland is sued in his official capacity only.

9.      Defendant Christopher Wray is the Director of the FBI.  Defendant Wray is sued in his official capacity only.

10.      Defendant Charles Kable has been the Director of the TSC since April 2013. Defendant Kable is sued in his official capacity only.

11.      Defendant Department of Homeland Security ("DHS") is a department of the U.S. government.  It develops and coordinates the national security strategy of the United States.  DHS operates the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP).

12.      Defendant Alejandro Mayorkas is the Secretary of DHS.  Defendant Mayorkas is sued in his official capacity only.

<div style="text-align:center">3</div>

13.    Defendant National Counterterrorism Center (NCTC) is a government organization under the authority of the Office of the Director of National Intelligence.  The NCTC is intimately involved with the process of nominating individuals to the TSDB and the No Fly List, as well with as the DHS TRIP redress process.

14.    Defendant Christine Abizaid is the Director of the NCTC.  Defendant Abizaid is sued in her official capacity only.

15.    Defendant Transportation Security Administration (TSA) is an agency of the U.S. government under the authority of DHS.

16.    Defendant David A. Pekoske is the Administrator of the TSA.  Defendant Pekoske is sued in his official capacity only.

### FACTUAL ALLEGATIONS

**A.    THE TERRORIST SCREENING DATABASE AND THE NO FLY LIST**

    **1.    The TSDB and No Fly List Nomination Process**

17.    The TSDB is the federal government's terrorist watchlist.  The TSC has maintained the TSDB since 2003.

18.    Individuals are added to the TSDB through a process of "nomination."  The FBI and the NCTC are the two entities primarily responsible for the process used to nominate individuals for inclusion in TSDB, which is then used to populate the No Fly List.

19.    The process of nominating and approving individuals for placement on the TSDB is a black box that relies on ill-defined, amorphous criteria, provides no notice to individuals prior to their inclusion (and the concomitant deprivation of their rights), and is utterly lacking in safeguards.

20.    According to the "Overview of the U.S. Government's Watchlisting Process and Procedures" (the "Watchlisting Overview") released by the U.S. government in January 2018, in

TSA AR000153

order for a person to be nominated to the TSDB, the "nomination must include enough identifying information to allow screeners to determine whether the individual they are screening is a match to a record in the TSDB" and must also include "enough information to establish a reasonable suspicion that the individual is a known or suspected terrorist." TSC makes the final decision as to whether a nomination satisfies the requirements for TSDB inclusion as a "known or suspected terrorist."

21.     Once an individual is included in the TSDB, that person may be placed on the No Fly List, barring him from boarding an aircraft to or from the United States, as well as any aircraft that flies over U.S. airspace. As with the TSDB, the TSC acts as the gatekeeper for who is included on the No Fly List.

22.     According to the Watchlisting Overview, in order for a nomination to the No Fly List to be accepted by the TSC, there must be reasonable suspicion that the individual poses a threat of: (1) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft; (2) committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; (3) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations, U.S. ships, U.S aircraft, or other auxiliary craft owned or leased by the U.S. Government.

23.     The Overview also contains a catch-all provision, permitting nomination to the No Fly List when an agency determines an individual poses a threat of engaging in or conducting a violent act of terrorism and is operationally capable of doing so.

24.     The TSC shares records it maintains in the TSDB, including the No Fly List, with

TSA AR000154

other government agencies, including defendant TSA, for use by airlines to pre-screen travelers.

25.     Individuals who are included on the No Fly List are not provided any notice prior to their inclusion on the No Fly List nor are they provided any notice of the resulting deprivation of their constitutional right to travel.

### 2.     The TSBD and the No Fly List Are Replete with Errors.

26.     Guilt-by-association is a common basis for inclusion in the TSDB.  The TSC has historically added friends, family members, or other associates of an individual on the TSDB to the TSDB.  These associates can be added without any accompanying derogatory information at all, other than the fact they are associated with another individual in the TSDB.

27.     Further, the FBI and NCTC erroneously add people to the TSDB due to seemingly similar names, typos, and other mistakes on a routine basis.

28.     Additions to the TSDB have skyrocketed over the last ten years.  More than triple the number of individuals were added into the TSDB in 2016 than were added into the TSDB in 2009.  Approximately 99% of all nominations are accepted into the TSDB each year, which now, according to the Congressional Research Service, includes over one million individuals.  Upon information and belief, according to leaked government documents, nearly half of the people on the TSDB have no connection at all to any known terrorist organization.

29.     In 2009, the DOJ Office of Inspector General completed an audit report on the FBI's terrorist watchlist program (the "2009 DOJ OIG Report"), which concluded that the "FBI did not update or remove watch list records as required."  The 2009 DOJ OIG Report found that the FBI failed to:  (1) remove records in a timely manner in 72 percent of cases where it was necessary; (2) modify watchlist records in 67 percent of cases where it was necessary; and (3) remove associations to the FBI's terrorism case classifications in 35 percent of cases where it was necessary.

TSA AR000155

30.     Given that the TSDB is used to populate the No Fly List, it is no surprise that various government reports and audits similarly have concluded that the No Fly List is rife with errors and inaccuracies, and lacks quality controls.

31.     For example, in 2006 the U.S. Government Accountability Office found that tens of thousands of entries were mistakenly added to the No Fly List due to misidentification.

32.     Similarly, the Department of Justice's Office of Inspector General noted in a 2007 report that fully 43% of No Fly List records that were reviewed contained errors, calling the TSC's internal quality assurance process "weak."  These failures are due to a persistent lack of quality controls in the process of accepting nominations to the No Fly List.

33.     Moreover, a 2009 Department of Homeland Security Office of Inspector General Report titled "Effectiveness of the Department of Homeland Security Traveler Redress Inquiry Program" (the "2009 DHS TRIP Report") noted that a major airline encountered 9,000 erroneous terrorist watchlist matches per day in April 2008.  The 2009 DHS TRIP Report also noted that while DHS TRIP, discussed below at paragraphs 34-45, offers solutions to some traveler issues, "it does not address other issues effectively, including the most common—watch list misidentification in aviation security settings."

**3.     DHS TRIP Is Ineffective at Redressing Erroneous Placement on the No Fly List.**

34.     The only process for individuals seeking to resolve travel-related issues due to placement on the No Fly List is DHS TRIP.

35.     Under the current procedures, if a United States citizen or lawful permanent resident who has been denied boarding initiates an inquiry pursuant to DHS TRIP, DHS will send a notification letter that affirmatively states whether the individual is in fact on the No Fly List.

36.     If the individual requests more details, DHS TRIP will forward the file to the TSC

TSA AR000156

Redress Office, which then notifies the NCTC and the relevant nominating agency (either the FBI or NCTC) that a request for additional information has been submitted.

37.     The TSC Redress Office then requests an unclassified summary of the basis for an individual's placement on the No Fly List from the nominating agency.  Upon receiving this unclassified summary, the TSC forwards the case back to DHS TRIP.

38.     DHS TRIP is then required to provide more detail to the individual, specifying the criteria used to evaluate the individual's placement on the No Fly List and, to the extent feasible, providing an unclassified summary of information that states the basis for an individual's inclusion in the No Fly List.  There is no time limit for DHS TRIP to provide this information and many individuals— including Mr. Moharam—have waited years to receive the summary.

39.     This second, more detailed explanation will provide an opportunity for a traveler to submit written responses, including exhibits or other materials, to challenge his or her placement on the No Fly List ("DHS TRIP Appeal").

40.     Upon DHS TRIP's receipt of an individual's DHS TRIP Appeal, DHS TRIP sends the traveler's written response and any included information to the TSC.  The TSC then reviews the response and other available information.

41.     If the TSC determines that the individual seeking review should not remain on the No Fly List, the TSC has the authority to remove them from the No Fly List.  If the TSC determines that they should remain on the list, the TSC submits a recommendation to the TSA Administrator that includes a summary of reasons for that determination.

42.     The TSA Administrator then must issue a final determination and furnish the individual with a final written letter providing the basis for the decision.  TSA must also notify the individual of the right to seek further judicial review under 49 U.S.C. § 46110.

8

TSA AR000157

43.     DHS TRIP is largely ineffective.  More often than not, DHS TRIP refuses to release specific facts regarding placement on the No Fly List and fails to timely process numerous complaints related to the No Fly List.  Availing oneself of the DHS TRIP process usually includes waiting months or years just to get confirmation of placement on the No Fly List.  DHS TRIP also does not appear to be effective at assisting individuals who may share a name or date of birth with a watchlisted identity.

44.     Further, there is no hearing afforded as part of the DHS TRIP process and no opportunity to cross-examine relevant witnesses.

45.     In addition, the DHS TRIP process provides no mechanism for accessing any documents that may be relied upon as a substantial basis for the TSC's continued inclusion of an individual on the No Fly List or an individual's information within the TSDB.

**B.    MR. MOHARAM'S RIGHTS HAVE BEEN VIOLATED.**

46.     In practice, and as applied to Mr. Moharam, the DHS TRIP process for Mr. Moharam to challenge his placement on the No Fly List is deficient and does not comport with the standards demanded by the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.  Defendants have not provided a legal mechanism that affords Mr. Moharam adequate notice of the reasons for his placement on the TSDB and No Fly List, or a meaningful opportunity to contest his continued inclusion on the TSDB and No Fly List.

**1.    Mr. Moharam Has Been Deprived of His Right to Travel.**

47.     Mr. Moharam was born in Yemen, but has lived in the United States for most of his life and is a United States citizen.

48.     For most of his adult life, Mr. Moharam regularly flew in U.S. airspace.  Similarly, like tens of thousands of Yemeni-Americans, Mr. Moharam regularly traveled to Yemen

TSA AR000158

throughout his adult life, including to pursue religious studies and to visit his mother, wife, children, and other relatives who reside there.

49.    Mr. Moharam is not, and has never been, a threat to national security.  Mr. Moharam does not pose any threat of committing, engaging in, or conducting any act of terrorism.

50.    Upon information and belief, Mr. Moharam was placed on the No Fly list no later than October 2017, when he was denied the right to fly home to the United States from a religious pilgrimage in Saudi Arabia.

51.    Mr. Moharam was subsequently able to return to the United States in late 2017 pursuant to a one-time waiver, described more fully below, available to U.S. citizens and lawful permanent residents who are on the No Fly List.

52.    Before filing the instant complaint and in the hope that perhaps, with the passage of time, officials had finally rectified his unjustified placement on the No Fly List, Mr. Moharam attempted to board a flight on August 3, 2021 from Oakland, CA to Las Vegas, NV.  Mr. Moharam was not permitted to board this flight.  Two unidentified law enforcement agents approached him at the airport and questioned him for approximately ten minutes about his inability to fly.

53.    Due to his placement on the No Fly List, since late 2017 Mr. Moharam has been separated from his family members who currently reside in Yemen, including his mother, his wife, and all of his children, except for his oldest son.

54.    Mr. Moharam's mother in Yemen is in poor health and Mr. Moharam has not been able to visit her or care for her in the ways he could prior to his placement on the No Fly List.

55.    Because of Mr. Moharam's unjust and unlawful placement on the No Fly List, he has suffered emotional and psychological harm because of his inability to visit his children and

TSA AR000159

mother, and financial harm resulting from increased costs to travel within the United States to see his father.

**2.      The Redress Process Available to Mr. Moharam Is Constitutionally Insufficient.**

56.      On October 25, 2017, Mr. Moharam, as directed by airline personnel, contacted officials at the U.S. Consulate General in Jeddah, Saudi Arabia to determine how he could return to the United States.  He was told by consular officials that they would look into the matter and contact him with additional information.

57.      According to emails provided to Mr. Moharam by the Department of State pursuant to the Freedom of Information Act, on the afternoon of October 27, 2017, State Department personnel in Jeddah had obtained from the TSC guidance regarding how to instruct Mr. Moharam to obtain a one-time waiver to return the U.S. by air.

58.      On October 29, 2017, a State Department employee ("State Employee 1"), wrote to another State Department employee ("State Employee 2") who, on information and belief, worked at the U.S. Consulate in Jeddah, Saudi Arabia.  State Employee 1 asked whether Mr. Moharam had been provided with the appropriate guidance regarding his ability to obtain a one-time waiver.  In response, State Employee 2 told DOS Employee 1 that "My understanding is that we are not there yet in terms of the letter," and that after Mr. Moharam was interviewed, "we will then regroup and discuss next steps."

59.      State Employee 1 replied, asking State Employee 2 for clarification, noting that it was "fine" to delay delivery of the one-time waiver guidance to Mr. Moharam if there was "some operational reason," but emphasized that as an American citizen Mr. Moharam has a right to re-enter the United States and that "we have a general obligation to in a timely fashion explain to him how to do that."

TSA AR000160

60.     State Department employees intentionally delayed giving Mr. Moharam those instructions, however, and failed to timely inform him of his right as a U.S. citizen to return to the United States, despite being in possession of such guidance since October 27, 2019.  Instead, State Department employees requested that Mr. Moharam come to the Consulate two days later, on October 29, 2017.  Mr. Moharam believed that his visit to the Consulate concerned his ability to fly back to the United Sates.  Instead, it was engineered to provide an opportunity for Mr. Moharam to be interrogated by law enforcement officials from the Regional Security Office in Riyadh and at least one member of the FBI legal attaché's office in Riyadh.

61.     On October 29, 2017, after being interrogated by officials from the Regional Security Office and at least one member of the FBI legal attaché's office in Riyadh, Mr. Moharam submitted an inquiry to DHS TRIP in an effort to challenge his placement on the No Fly List and return to the United States from Yemen.

62.     It was not until November 21, 2017 that Mr. Moharam was granted a one-time waiver to return to the United States via a commercial flight operated by a U.S.-based commercial carrier.  As part of this one-time waiver process, Mr. Moharam was required to provide a proposed itinerary, which was reviewed by the TSC.  Mr. Moharam returned to the United States on December 15, 2017.

63.     Nearly four months after the initial denial of boarding, by letter dated February 14, 2018, DHS TRIP confirmed to Mr. Moharam that he had been placed on the No Fly List.  A true and correct copy of this correspondence is attached as Exhibit A.

64.     On March 13, 2018, Mr. Moharam then timely filed a request seeking the reasons for his placement on the No Fly List.  A true and correct copy of this correspondence is attached as Exhibit B.

TSA AR000161

65.     Mr. Moharam did not receive a response to this request for nearly two years. During this period, there were no other administrative redress options available for Mr. Moharam to contest his placement on the No Fly List.

66.     In February 2020, DHS finally provided Mr. Moharam a two-sentence-long unclassified "summary," which DHS claimed was the only information it could provide regarding the reasons for his placement on the No Fly List.  Specifically, DHS stated that Mr. Moharam was "on the U.S. Government's No Fly list because the Government has concerns about [his] activities during frequent and extended travel to Yemen between 2011 and 2017.  The information [he] shared during [his] interview at the U.S. Consulate in Jeddah in November 2017 [sic] did not assuage the Government's concerns."  A true and correct copy of this correspondence is attached as Exhibit C.

67.     This unclassified "summary" does not satisfy the obligation of DHS to provide information sufficient to allow Mr. Moharam to respond adequately to the allegations concerning him or challenge his placement on the No Fly List.

68.     Mr. Moharam's only form of administrative redress is to submit a DHS TRIP Appeal.  But the DHS TRIP Appeal process has proved woefully inadequate.  TRIP offers no meaningful review of his No Fly List designation and insulates the TSC from any meaningful administrative oversight with respect to individual nominations.

69.     That is especially true here given that DHS has provided a purported "summary" of reasons for Mr. Moharam's placement on the No Fly List that does not contain any details that would allow him to mount an effective DHS TRIP Appeal.  Critically, DHS did not provide Mr. Moharam any information that would allow him to actually respond to any "derogatory information."  One example of this is the vague statement that the government has "concerns"

13

TSA AR000162

about his "activities."  It is impossible for Mr. Moharam to meaningfully challenge his placement on the No Fly List or craft an administrative appeal that effectively responds to the government's alleged but undescribed "concerns" about his travel in Yemen.

70.    Mr. Moharam has also been deprived of documents that are necessary to challenge his placement on the No Fly List, which the government has withheld on the vague grounds that national security concerns preclude their disclosure.  In particular, DHS TRIP refused Mr. Moharam's May 20, 2020 request for documents related to the October 29, 2017, FBI/Regional Security Office interview in Jeddah, Saudi Arabia.  The perfunctory, unclassified summary referenced the interview specifically, asserting that "the information you shared during your interview at the U.S Consulate in Jeddah in November [sic] 2017 did not assuage the Government's concerns."  Mr. Moharam was forced to pursue separate FOIA litigation just to receive partial, heavily redacted reports related to the October 29, 2017, interrogation in Jeddah, Saudi Arabia.

71.    Additionally, Mr. Moharam is represented by counsel with an appropriate security clearance who were nonetheless denied access to any classified information concerning the basis for Mr. Moharam's placement on the No Fly List.  Because Mr. Moharam has retained counsel with appropriate security clearances, DHS can and should produce any responsive classified material that is not otherwise exempt from disclosure to his security-cleared counsel.

72.    Further, there is no impartial arbiter in the DHS TRIP process that can test the government's claim that national security reasons prevent the government from sharing additional information.  Such an independent party is necessary for the DHS TRIP process to conform to procedural due process requirements.  Additionally, there is no impartial arbiter to adjudicate Mr. Moharam's DHS TRIP appeal.

73.    Nor does Mr. Moharam have any opportunity for a hearing through the DHS TRIP

TSA AR000163

process even though hearings are required where lesser or similar liberty deprivations are at issue, such as the loss of a community board seat coupled with public accusations of criminal behavior, or revocation of a passport.

74.     Without additional procedural safeguards, including a full statement of reasons, access to relevant documents for security-cleared counsel, and a live hearing, Mr. Moharam has been, and continues to be, deprived of a meaningful opportunity to contest his continued inclusion on the No Fly List.

### FIRST CLAIM FOR RELIEF
#### Violations of Mr. Moharam's Fifth Amendment Procedural Due Process Rights
#### (as to all defendants)

75.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1-74 above.

76.     Mr. Moharam has a protected liberty interest in travelling domestically and internationally within or over U.S. airspace.

77.     Defendants' placement and retention of Mr. Moharam on the No Fly List violated his constitutionally protected liberty interests by depriving him of his right to travel and making it impossible for him to travel by plane to see his mother, wife, and children in Yemen.

78.     Defendants have included Mr. Moharam on the No Fly List without notice and without providing him with a constitutionally adequate mechanism to challenge his inclusion on the No Fly List and the resulting deprivation of his liberty interests, as described above.

79.     Defendants have deprived Mr. Moharam of a meaningful opportunity to challenge his placement on the No Fly List, and DHS TRIP does not and has not provided Mr. Moharam with an adequate procedure to contest his placement therein, by failing to provide Mr. Moharam (1) a full statement of reasons or bases on which defendants relied to place and maintain him on

TSA AR000164

the No Fly List; (2) the information supporting those bases; (3) the opportunity to challenge his placement in a live hearing before a neutral decision-maker; and (4) access for security-cleared counsel to any classified information allegedly supporting his placement.

80.     Defendants therefore have deprived Mr. Moharam of his constitutionally protected liberty interests without adequate procedural due process.

<div align="center">

**SECOND CLAIM FOR RELIEF**
**Violation of Mr. Moharam's Fifth Amendment Rights Caused by Unconstitutionally Vague Criteria for Inclusion on the No Fly List, as Applied to Mr. Moharam (as to all defendants)**

</div>

81.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1- 74 above.

82.     The Fifth Amendment to the U.S. Constitution requires the government to provide individuals with fair notice of conduct that is prohibited to prevent arbitrary or discriminatory enforcement by government officials.

83.     The criteria for inclusion on the No Fly List, as established and executed by defendants, are unconstitutionally vague under the Fifth Amendment as applied to Mr. Moharam because defendants failed to provide him with fair notice of what prohibited conduct they believe justifies his placement on the No Fly List.

84.     The only justification given to Mr. Moharam for his placement on the No Fly List is unspecified government concerns regarding his travels to Yemen from 2011 to2017. It is thus impossible to ascertain what conduct Mr. Moharam has engaged in that the government considers relevant to the No Fly List criteria.

TSA AR000165

**THIRD CLAIM FOR RELIEF**
**Violation of Mr. Moharam's Fifth Amendment Substantive Due Process Rights**
**(as to all defendants)**

85.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1- 74 above.

86.     Mr. Moharam's fundamental rights include the right not to be arbitrarily deprived of his freedom to travel to, from, and within the United States, as well as over U.S. air space.

87.     Defendants' placement of Mr. Moharam on the No Fly List directly and substantially infringes on Mr. Moharam's fundamental liberty right to travel.

88.     Defendants' placement and retention of Mr. Moharam on the No Fly List serves no governmental interest whatsoever.  Mr. Moharam is not a threat to national security interests or aviation.

89.     Defendants violated Mr. Moharam's constitutional rights and have deprived him of a fundamental right without legitimate governmental interest.

**FOURTH CLAIM FOR RELIEF**
**Violations of the Administrative Procedure Act, §§ 702, 706**
**(as to all defendants)**

90.     Mr. Moharam hereby alleges and incorporates by reference the allegations of paragraphs 1- 74 above.

91.     Defendants' placement of Mr. Moharam on the No Fly List, and failure to provide him with a constitutionally adequate mechanism to challenge his placement constitute agency actions under the Administrative Procedure Act (hereinafter "APA"), 5 U.S.C. §§ 701, 706.

92.     The APA prohibits federal agency action that is arbitrary, capricious, unconstitutional, an abuse of discretion or contrary to law.  5 U.S.C. § 706.

93.     Defendants have failed to provide Mr. Moharam with an adequate mechanism that

TSA AR000166

affords him adequate notice and the reasons for his placement on the No Fly List and have failed to provide him a meaningful opportunity to be heard and contest his placement on the No Fly List. To date, DHS TRIP has provided only two sentences justifying his placement on the list, which lack the context and specificity necessary to permit a meaningful response. Defendants' actions are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, unconstitutional, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

94.    For similar reasons, the DHS TRIP process fails to provide Mr. Moharam with a meaningful opportunity to be heard.

95.    Defendants have no rational basis to suspect Mr. Moharam of presenting a threat to commercial aviation or national security. Defendants' actions as described above in including Mr. Moharam on the TSDB and No Fly List are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Moharam respectfully requests that the Court:

a.  Declare that defendants violated, and continue to violate, Mr. Moharam's rights under the Fifth Amendment to the U.S. Constitution;

b.  Declare that defendants' actions against Mr. Moharam violated, and continue to violate, the Administrative Procedure Act;

c.  Issue an order that requires defendants to:

   i.  Remedy the constitutional and statutory violations identified above, including by removing Mr. Moharam from the Terrorist Screening Database, the No Fly

18

List, and any other database that prevents him flying to, from, and within the United States;

    ii.    Provide a declaration that Mr. Moharam is no longer in the Terrorist Screening Database and/or on the No Fly List and will not be placed back on the list and/or in the database based on currently available information;

    iii.    In the alternative, provide Mr. Moharam with a legal mechanism that affords him adequate notice of the reasons for his placement in the Terrorist Screening Database and on the No Fly List and a meaningful opportunity to contest his continued inclusion on the Terrorist Screening Database and the No Fly List;

d.   Award Mr. Moharam reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

e.   Grant Mr. Moharam such other relief as the Court deems appropriate.

Dated: October 6, 2021             Respectfully submitted,

                             By:  s/Robert S. Litt               

                              Robert S. Litt (D.C. Bar No. 312470)
                              MORRISON & FOERSTER LLP
                              2000 Pennsylvania Avenue, NW
                              Suite 6000
                              Washington, D.C. 20006
                              Telephone: (202) 887-1588
                              Email:  rlitt@mofo.com

                              Adam J. Hunt (pursuant to LCvR 83.2(g))
                              Janie C. Buckley (pursuant to LCvR 83.2(g))
                              MORRISON & FOERSTER LLP
                              250 W. 55th St.
                              New York, NY 10019
                              Telephone: (212) 468-8000
                              Email:  adamhunt@mofo.com
                                    jbuckley@mofo.com

TSA AR000168

-and-

**CLEAR PROJECT**
**MAIN STREET LEGAL SERVICES, INC.**

*/s/ Ramzi Kassem*
Ramzi Kassem (pursuant to LCvR 83.2(g))
Naz Ahmad (pursuant to LCvR 83.2(g))
CUNY School of Law
2 Court Square
Long Island City, NY 11101
T: (718) 340-4558
F: (718) 340-4478
E:     ramzi.kassem@law.cuny.edu
        naz.ahmad@law.cuny.edu

*Counsel for Plaintiff Fahmi Ahmed Moharam*

20

| From: | Naz Ahmad |
|---|---|
| To: | RedressFinal, TRIP |
| Cc: | GPII |
| Subject: | Re: 2263437 - Request for Extension |
| Date: | Friday, January 7, 2022 6:18:17 PM |
| Attachments: | 2263437_Submission_2022.01.07.pdf |

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached Mr. Moharam's response to the February 20, 2020 unclassified summary. Mr. Moharam reserves his right to supplement his response if he is provided with more detailed information concerning the alleged basis for his placement on the No Fly List.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>

**Date:** Wednesday, December 8, 2021 at 12:05 PM

**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>

**Cc:** GPII

**Subject:** RE: 2263437 - Request for Extension

Thank you for your email. DHS TRIP does not believe that Mr. Moharam's filing of a lawsuit is a valid reason to hold his previously submitted inquiry in abeyance. Accordingly, DHS TRIP will continue processing Mr. Moharam's DHS TRIP inquiry, which may result in a final determination of the TSA Administrator removing him from, or maintaining him on the No Fly List. Mr. Moharam may provide any additional information or material that he deems relevant within 30 days from the date of this email. Any information or materials Mr. Moharam provides, or that you provide on his behalf, will be considered prior to making a determination.

Sincerely,

DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>

**Sent:** Tuesday, October 19, 2021 6:00 PM

**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>

**Cc:** GPII

**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached Mr. Moharam's response and request for tolling.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>

TSA AR000170

**Date:** Monday, April 19, 2021 at 3:08 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your most recent inquiry. This email is to confirm that your client has been granted an extension until October 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

With respect to your renewed request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Thursday, April 15, 2021 11:06 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

> CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to follow up on our request for an extension, which is currently due April 19, 2021.

Kind regards,
Naz

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Wednesday, April 7, 2021 at 12:41 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

Hello –

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

Kind regards,
Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's

TSA AR000171

counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,

DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII    Sharmin Piancca
PPII , Princess Masilungan
PPII , Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,

DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII ; Sharmin Piancca
PPII Princess Masilungan PPII
Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email,

TSA AR000172

contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

---

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                          Sharmin Piancca
PPII                          , Princess Masilungan
PPII                          , Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

TSA AR000173



**C**REATING
**L**AW
**E**NFORCEMENT
**A**CCOUNTABILITY &
**R**ESPONSIBILITY

Main Street Legal Services, Inc.
CUNY School of Law
2 Court Square
Long Island City, NY 11101-4356
www.cunyclear.org

January 7, 2022

Deborah O. Moore
Director
DHS Traveler Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20498-6901
TRIP@dhs.gov

<u>VIA ELECTRONIC MAIL</u>

**Re:     Appeal of Determination
          (TRIP Redress Control Number: 2263437)**

Dear Ms. Moore:

Enclosed please find Mr. Fahmi Moharam's response to the unclassified summary provided by DHS TRIP on February 20, 2020. Mr. Moharam reserves his right to supplement this response if he receives more specific information concerning the basis for his placement on the No Fly List.

**I.      PROCEDURAL BACKGROUND**

The February 20, 2020 summary came in response to a process commenced by Mr. Moharam in October 2017, when he submitted a redress inquiry to the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP") after being denied boarding on a flight returning to the United States from Saudi Arabia.

On February 14, 2018, DHS TRIP sent Mr. Moharam a letter informing him of his placement on the No Fly List. On March 13, 2018, Mr. Moharam timely submitted a request for additional information to DHS TRIP, per mandated TRIP procedure. On February 20, 2020, more than two years after Mr. Moharam received confirmation of his placement on the No Fly List, DHS TRIP finally provided a brief unclassified summary of the alleged reasons for this status determination.

Mr. Moharam's placement on the No Fly List was in error. The unclassified summary DHS TRIP sent on February 20, 2020 states that Mr. Moharam was placed on the No Fly List because

(t) 718.340.4558 / 718.340.4533
(f) 718.340.4478
(e) cunyclear@ law.cuny.edu



TSA AR000174

of his identification as an individual who "may be a threat to civil aviation or national security" because the U.S. government has determined that he represents a threat of engaging in or conducting a violent act of terrorism and is operationally capable of doing so. Specifically, the summary states that this determination was made because "the U.S. Government has concerns about [Mr. Moharam's] activities during frequent and extended travel to Yemen between 2011 and 2017. The information [Mr. Moharam] shared during [his] interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns."

Mr. Moharam is not and has never been operationally capable or willing to engage in or conduct any violent acts of terrorism. Mr. Moharam was born in Yemen and his wife, children except for one, and mother still reside in Yemen. Accordingly, since he became an adult, he has traveled between the United States and Yemen to visit family and to pursue religious study. The government's conclusion that he was a threat to civil aviation or national security was erroneous, arbitrary and capricious.

## II.    CURRENT DEPARTMENT OF HOMELAND SECURITY REDRESS PROCEDURES ARE PROCEDURALLY DEFICIENT

From October 2017 to the present, Mr. Moharam has engaged in a lengthy and time-intensive process of challenging his placement on the No Fly List. Since 2017, the Department has not provided Mr. Moharam with any evidence that substantiates or affirms the alleged basis for his placement on the No Fly List. Rather, the Department's unclassified summary, sent only in February 2020, stated that Mr. Moharam "may be a threat to civil aviation or national security" because the U.S. government has determined that he represents a "threat of engaging in or conducting a violent act of terrorism and is operationally capable of doing so." Ex. A, DHS TRIP Unclassified Summary. The unclassified summary provided only the following purported basis for this determination: "the U.S. Government has concerns about [Mr. Moharam's] activities during frequent and extended travel to Yemen between 2011 and 2017. The information [Mr. Moharam] shared during [his] interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns." *Id.*

The unclassified summary is so vague as to be impossible to respond to. The summary fails to specify which "activities" DHS TRIP believes Mr. Moharam engaged in that are "concerning." There were many thousands of Yemeni Americans who traveled between Yemen and the United States between 2011 and 2017; an individual's mere presence in Yemen should not be enough to warrant placement on the No Fly List. DHS TRIP has failed to provide a full statement of reasons for his placement and/or evidentiary basis such that Mr. Moharam can adequately respond. In this posture, Mr. Moharam is limited severely in his ability to refute the allegations.[1]

---

[1] As noted above, Mr. Moharam reserves his right to supplement his response should further information be provided to him concerning the basis for his placement.

TSA AR000175

## A.    Lack of Access to Relevant Information

The February 20, 2020 DHS TRIP letter stated: "The information [Mr. Moharam] shared during [his] interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns." On April 17, 2020, counsel for Mr. Moharam requested access to the record of this referenced interview, in order for Mr. Moharam to have a meaningful opportunity to address the allegations. DHS TRIP refused to provide any record of this interview. Ex. B, DHS TRIP Email. DHS TRIP has therefore denied Mr. Moharam access to potentially relevant information that would provide him meaningful notice such that he can actually respond to DHS TRIP concerns.

In addition, Mr. Moharam has requested at least three times that his counsel, who have appropriate security clearances, be given access to the classified information that allegedly supports the basis for his placement on the No Fly List. DHS TRIP has so far refused to provide security-cleared counsel access to any of the classified information allegedly supporting the basis for his placement on the No Fly List. *Id.*

## B.    The Unclassified Summary Provided Insufficient Notice

DHS TRIP's unclassified summary regarding Mr. Moharam's placement on the No Fly List provides insufficient notice, especially when compared to publicly available examples of other such summaries, such as the unclassified summaries provided to some of the plaintiffs in *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019). In that case, the Ninth Circuit determined that the U.S. government had provided three of the plaintiffs with "summaries [that] afforded the plaintiffs a meaningful opportunity to tailor their responses to the subject matter of the government's concerns," because the summaries included references to statements made to FBI agents and third parties, travel to particular countries, and detailed conduct in specific countries (for example, alleged training with specific groups). *Kashem*, 941 F.3d at 368.

Unlike the summaries the U.S. government provided to the *Kashem* plaintiffs, DHS TRIP provided Mr. Moharam with insufficient information to meaningfully dispute or respond to the alleged basis for his placement on the No Fly List. DHS TRIP failed to inform Mr. Moharam which activities substantiated his placement on the No Fly List, or travel to which specific locales. Nor did DHS TRIP even bother to broadly characterize the sources for these allegations, so that Mr. Moharam might have an adequate opportunity to challenge their credibility. Similarly, there was no explanation as to how Mr. Moharam's activities purportedly served as a basis to view him as a threat to civil aviation or national security or consider him as posing a threat of engaging in or conducting a violent act of terrorism.

Specifically, the unclassified summaries provided to plaintiffs in *Kashem* included far more explicit details substantiating placement, such as detailed descriptions of conduct. *Kashem* plaintiffs, Mohamed Sheikh Abdirahman Kariye, Stephen Durga Persaud and Amir M. Meshal all received unclassified summaries that provided over one page's worth of explicit details alleging the bases for their respective placement on the No Fly List.[2] Per the *Kashem* opinion, the

---

[2] Ex. A, Joint Statement of Agreed Facts to Kariye Joint Statement, *Latif v. Holder*, No. 3:10-cv-00750 (D. Or. Mar. 15, 2015), ECF No. 175-1, https://www.aclu.org/legal-document/latif-et-al-v-holder-et-al-exhibit-

TSA AR000176

unclassified summaries described the alleged conduct warranting placement on the No Fly List in more detail than was provided to Mr. Moharam. One plaintiff "allegedly acknowledged to the FBI traveling to Somalia and joining and receiving weapons training from the Islamic Courts Union." *Kashem*, 941 F.3d at 368. Another plaintiff was included on the No Fly List for statements made to FBI agents in which he "admitted [to] engaging in militant activities in Somalia…fighting in Somalia with a group of armed militants that probably included members of al-Qaeda; and being hosted in Somalia by individuals associated with the Council of Islamic Courts, the military wing of which – al-Shabaab – is a designated foreign terrorist organization." *Id.* For a third plaintiff was DHS explained that the basis for his placement was statements made to FBI agents regarding "purchasing and distributing lectures by Anwar Al-Aulaqi" and emails sent to Al-Aulaqi and writing posts for Al-Aulaqi's website "advocating the bombing of Jewish settlements." *Id.* DHS TRIP provided no such explanation or detail to Mr. Moharam, instead it only said it had concerns about his activities "during frequent and extended travel to Yemen." The degree of detail and explanation illustrated in *Kashem* is a far cry from what Mr. Moharam received. His unclassified summary was no more than a few lines, all of which were vague and lacking in evidentiary value. In sum, the allegations are so vague as to be impossible to disprove or respond to.

## III.    TRAVEL TO YEMEN

As mentioned above, Mr. Moharam was born in Yemen and lived there as a child before coming to the United States and acquiring U.S. citizenship. His wife, children except his eldest, and his mother, all reside in Yemen. Mr. Moharam, like many Yemeni-Americans, has traveled extensively to Yemen as an adult. As he described in his declaration, he visited Yemen to see family and pursue religious study. Ex. C, Dec. of Fahmi Moharam, ¶¶ 13-14. Also as noted in his declaration, Mr. Moharam visited Dammaj[3] multiple times between 2002 and 2013. *Id.* ¶ 13. After his placement on the List, through counsel, Mr. Moharam learned that the U.S. government believed that the school at Dammaj was akin to a recruitment center for extremists, at least at one moment in time.

As Mr. Moharam noted, his visits to Dammaj lasted three to six months, on average. Ex. C, ¶ 15. He usually visited Dammaj with his wife and children. *Id.* He spent most of his time at Dammaj in study or prayer. *Id.* ¶ 14. Mr. Moharam was at Dammaj during the second siege of the town by Houthis in 2013 and 2014. *Id.* ¶ 16. His family arrived at Dammaj before this siege began. *Id.* ¶ 17. Mr. Moharam was hit by a bullet during the siege, and was evacuated by the Red Cross. *Id.* ¶¶ 20-21. As Mr. Moharam explained, the Houthis believed everyone who was at Dammaj was a "terrorist", regardless of whether they took up arms or not. *Id.* ¶ 22. Mr. Moharam was not involved in any of the fighting at Dammaj during the siege. Mr. Moharam did not participate in any armed violence or terrorist activity in Yemen or elsewhere. *Id.* ¶ 31, Ex. D, Dec. of Rayouf Shaeb'an, ¶ 16. Mr. Moharam did not receive any military training at Dammaj or elsewhere. *Id.* ¶ 28, *see* Ex. D, ¶ 16.

---

kariye-joint-statement; Ex A, Joint Statement of Agreed Facts to Persaud Joint Statement, *Latif v. Holder,* No. 3:10-cv-00750, (D. Or. Mar. 15, 2015), ECF No. 180-1, https://www.aclu.org/legal-document/latif-et-al-v-holder-et-al-exhibit-persaud-joint-statement; Ex. A, Joint Statement of Agreed Facts to Meshal Joint Statement, *Latif v. Holder,* No. 3:10-cv-00750, (D. Or. Mar. 15, 2015), ECF No. 178-1, https://www.aclu.org/legal-document/latif-et-al-v-holder-et-al-exhibit-meshal-joint-statement.
[3] Also spelled Dimaj.

TSA AR000177

After the siege, Mr. Moharam has not returned to Dammaj. Ex. C, ¶ 24. In his visits to Yemen after the end of the siege, Mr. Moharam went to Yemen to visit his family, who reside in Ibb. *Id.* ¶ 26, Ex. D, ¶¶ 9, 12.

As the attached declaration of Professor Laurent Bonnefoy, a leading expert on Salafism in Yemen, makes clear, mere attendance at the Dar al-Hadith school or living in the town of Dammaj would not automatically render someone an extremist or a threat. "The vast majority of the tens of thousands of Dammaj alumni . . . be they Yemenis or foreigners, never had any direct connection with armed violence." Ex. E, ¶ 33. Prof. Bonnefoy further notes that "it is thus perfectly possible, and even likely, that one could stay for years in Dammaj without ever receiving any kind of military training." *Id.* Prof. Bonnefoy also explained in his declaration that the leadership the Dar al-Hadith school consistently rejected jihadism, rebuffing the support Al-Qaeda offered during the 2013-2014 Houthi siege. *Id.* ¶ 17. Therefore, Mr. Moharam's travel to Dammaj does not render him a threat to civil aviation or national security, and does not render him operationally capable of carrying out a violent act of terrorism.

## IV. MR. MOHARAM DOES NOT SATISFY ANY OF THE KNOWN CRITERIA FOR PLACEMENT ON THE NO FLY LIST

The unclassified summary does not delineate what factors or evidence support a finding that Mr. Moharam "represents a threat of engaging in or conducting a violent act of terrorism and is operationally capable of doing so." Publicly available Department of Homeland Security guidelines delineate a number of scenarios that would support a finding that an individual is capable of engaging in a violent act of terrorism for purposes of placement on the No Fly List, none of which is satisfied in this context. *See Watchlisting Guidance*, pp. 52-3 (2013).

- Mr. Moharam has never undergone terrorist training nor military training by a designated terrorist group.

- Mr. Moharam has never visited a terrorist training camp.

- Mr. Moharam has never indicated intent, nor possessed any such intent, to participate in planning or conducting an attack, nor in martyring himself.

- Mr. Moharam has not knowingly been in contact with a known terrorist facilitator who recruits or facilitates operations.

- Mr. Moharam is not, and has never been, associated with a terrorist group.

- Mr. Moharam is not accumulating weapons or explosives, nor has he in the past.

Mr. Moharam should be removed from the No Fly List, as he has shown by more than a preponderance of the evidence that the allegations made in the unclassified summary are baseless.

Sincerely,

5

TSA AR000178

*/s/ Naz Ahmad*____
Naz Ahmad
*Senior Staff Attorney*

6

TSA AR000179

Redress Number: 2263437

## Exhibits

| Exhibit A | DHS TRIP February 20, 2020 letter |
| Exhibit B | DHS TRIP May 7, 2020 e-mail |
| Exhibit C | Declaration of Fahmi Moharam |
| Exhibit D | Declaration of Rayouf Shaeba'n (with certified translation) |
| Exhibit E | Declaration of Laurent Bonnefoy with curriculum vitae |

TSA AR000180

Redress Number: 2263437

# EXHIBIT A

TSA AR000181



**U.S. Department of Homeland Security**
Traveler Redress Inquiry Program (DHS TRIP)
601 South 12th Street, TSA-901
Arlington, VA 20598-6901

February 20, 2020

Mr. Fahmi Ahmed Moharam



Redress Control Number: 2263437

Dear Mr. Moharam:

This letter concerns the redress inquiry that you submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) on October 29, 2017.

Along with information you have provided in your application to DHS TRIP, we have conducted a review of any applicable records in consultation with other federal agencies, as appropriate. We have determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3)(A). In particular, we have determined that you are an individual who represents a threat of engaging in or conducting a violent act of terrorism and are operationally capable of doing so.

On March 13, 2018, you requested additional information about your placement on the No Fly List as well as the opportunity to respond to any information provided if you believe that the above determination is in error.

Below is an unclassified summary that includes reasons supporting your placement on the No Fly List. Consistent with DHS TRIP policy, we have provided this information, to the extent feasible, after considering the national security, law enforcement, and/or other interests at stake. We are unable to provide additional disclosures, beyond the summary below, regarding your placement on the No Fly List. Factors limiting disclosure in this context include national security concerns.

You are on the U.S. Government's No Fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017. The

TSA AR000182

information you shared during your interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns.

Additional reasons for and details regarding your placement on the U.S. Government's No Fly List cannot be provided to you due to national security concerns.

If you think that this determination is in error, or if you think that the information provided to you is inaccurate, we encourage you to respond and provide us with information you think is relevant. Such information should be submitted to DHS TRIP at the above address or via email to TRIP@dhs.gov within 60 days of the issuance of this letter. Information you submit will be considered before a final determination of your status on the No Fly List is made.

If we do not receive any additional information or a request for an extension within 60 days of the date of this letter, the determination described above will become a final order. Within 60 days of this determination becoming final, you may seek judicial review of this determination in an appropriate United States Court of Appeals pursuant to 49 U.S.C. § 46110. Please note, however, that if you do continue with the administrative redress process described above, you may still seek judicial review in the United States Court of Appeals at its conclusion.

If you have any further questions, you may contact DHS TRIP at the addresses given above.

Sincerely,

*Deborah O. Moore*

Deborah O. Moore
Director
DHS Traveler Redress Inquiry Program

TSA AR000183

# EXHIBIT B

TSA AR000184

**Subject:** RE: 2263437 - Request for Extension
**Date:** Thursday, May 7, 2020 at 10:20:45 AM Eastern Daylight Time
**From:** RedressFinal, TRIP
**To:** Naz Ahmad
**CC:** Hannah Walsh, Sharmin Piancca, Princess Masilungan, Tarek Ismail

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII       Sharmin Piancca
PPII      Princess Masilungan PPII     ; Tarek
Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

> CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII ▮▮▮▮▮▮▮▮▮▮▮▮, Sharmin Piancca PPII ▮▮▮▮▮▮▮▮▮ Princess Masilungan PPII ▮▮▮▮▮▮▮▮▮▮▮▮ Tarek Ismail PPII ▮▮▮▮▮▮▮▮▮▮
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

Kind regards,

Naz Ahmad

# EXHIBIT C

TSA AR000187

Redress Number: 2263437

## Declaration of Fahmi Moharam

1. My name is Fahmi Moharam. I submit this declaration in support of my request to be removed from the No Fly List. I reserve my rights to supplement this declaration and my request if more information is provided to me concerning my placement on the No Fly List.

2. I am providing more information concerning my travel to Yemen from 2011 to 2017. This declaration supplements the affidavit I previously submitted to DHS TRIP on October 19, 2021.

3. I was born on PPII .

4. I am a naturalized U.S. citizen.

5. I currently live in Indiana.

6. I first came to the United States as a child.

7. My mother resides in Yemen.

8. My wife, whom I married in 2007, and four of my five children reside in Yemen. Two of my children are from a previous marriage.

9. I have never met my youngest son in person because he was born in 2018, after I returned to the United States and I have been on the No Fly List since then.

10. Because my mother, wife, and children reside in Yemen, I have made many trips to Yemen over the years, including before and after 2011, up to my last trip in 2017.

11. Because my family still lives in Ibb, Yemen, where I was born, I spend time there whenever I go back to Yemen.

12. My ability to recall specific dates of travel to and within Yemen is weak.

13. In addition to visiting my family in Ibb, between 2002 and 2013, I visited Dammaj and the mosque there.

1

Redress Number: 2263437

14. I visited Dammaj to learn more about Islam and deepen my religious practice. When I was at Dammaj, most of my time was spent in prayer or study.

15. My visits to Dammaj typically ranged from three months to six months. It is possible that on occasion a visit would be shorter or longer than that time period. I usually took my wife and children with me, after our marriage and the birth of our children.

16. I have not been back to Dammaj since the end of the siege by the Houthis in 2013 and 2014. I was present during the second Houthi siege of Dammaj in 2013.

17. My family and I had arrived at Dammaj before the siege began, and we got stuck there while the siege was ongoing.

18. We lived under daily fear of attack by the Houthis surrounding the village.

19. This was a traumatic experience for me, especially seeing women and children being killed indiscriminately.

20. I was hit by a bullet fired by the Houthis.

21. I survived and was evacuated by the Red Cross due to my injuries. My family remained behind for a while because they were not injured. I do not recall the exact date I was evacuated.

22. Because of the ongoing conflict and siege, the Houthis viewed everyone at Dammaj as a "terrorist" even though we came there just to study and advance our knowledge of Islam.

23. Eventually, at the end of the siege, everyone left Dammaj, including my wife and children.

24. I have not been back to Dammaj since the end of the siege.

25. I was not involved in any of the fighting at Dammaj.

26. When I visited Yemen after the siege of Dammaj ended in 2014, I did so to visit my family. In 2014 we went for religious pilgrimage to Saudi Arabia.

2

Redress Number: 2263437

27. I have never attended any terrorist training camp.

28. I have never undergone terrorist training and I have never been provided instruction or received military training by a designated terrorist group.

29. I have never indicated intent to participate in planning or conducting any attack.

30. I have never had an intent to participate in planning or conducting any attack.

31. I have not been involved in terrorist activity or armed violence in Yemen or elsewhere.

32. I do not have, nor have I ever in the past had, any plan or desire to martyr myself.

33. To my knowledge, I have no contact with known terrorists or terrorist facilitators who recruit or facilitate travel of terrorist operatives, nor have I had any such contact in the past.

34. I am not, and have never been, associated with a terrorist group or cell.

35. I am not accumulating weapons or explosives, nor have I ever done so.

36. I have kept a few guns in Yemen, but I keep them for personal safety and/or self-defense, and gun ownership is widespread in Yemen. I do not recall ever owning more than three guns at the same time in Yemen. I do not own any guns in the United States.

37. I am vehemently opposed to terrorism and what groups like Al Qaeda and ISIS stand for.


I, Fahmi Moharam, swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Fahmi Moharam

Sworn to before me this ⟨7⟩ day of ⟨January⟩, 2022.

NOTARY PUBLIC SEAL
INDIANA

MARIA D MEDINA, Notary Public
Noble County, State of Indiana
Commission Number NP0733191
My Commission Expires April 20, 2029

Notary Public

3

TSA AR000190

Redress Number: 2263437

# EXHIBIT D

TSA AR000191

<u>إفادة خطية</u>

1. اسمي ريوف صالح بن صالح صبيعان.
2. PPII
3. PPII
4. أنا مواطنة يمنية وأقيم حالياً في مدينة إب باليمن.
5. تزوجت من فهمي مهرم في ٨ تشرين الأول/ أكتوبر ٢٠٠٧.
6. وقد تزوجنا في مدينة إب حيث سكنّا معاً في هذه المدينة.
7. لديّ ثلاثة أطفال.
8. النشاطات التي قمنا بها بعد الزواج هي الذهاب إلى المناطق الريفية الجميلة المحيطة بمدينة إب.
9. وبخصوص الأوقات التي كان زوجي متواجداً فيها خلال الفترة من كانون الأول/ ديسمبر ٢٠١١ وحتى تشرين الأول/ أكتوبر ٢٠١٧، فقد كان متواجداً معنا طوال الوقت، وذهبنا مرة واحدة معاً إلى مكة لأداء العمرة كبقية المسلمين.
10. قمنا بزيارة إلى دماج معاً كأسرة قبل الحصار في ٢٠١٣/ ٢٠١٤. وكان غرض الزيارة هو الدراسة الدينية.
11. وكانت أسرتنا هناك أثناء الحصار.
12. ولم نزر دماج منذ عام ٢٠١٤ لأن الوضع ما عاد آمناً للقيام بزيارة.
13. أثناء الحصار، أصيب زوجي، فهمي، بجراح وتم إخلاؤه.
14. يؤثر غياب زوجي، فهمي، تأثيراً كبيراً عليّ وعلى أبنائي. وهم يسألونني دائماً متى سيرجع الوالد، فهم يريدون أن يكونوا برفقته طوال الوقت ويريدون الذهاب إلى الحديقة والأسواق والأماكن الترفيهية معه، كما يفعل الأطفال الآخرون مع والديهم. وكلما رأى أطفالي أطفال الجيران مع والديهم يسألون متى سيرجع والدنا من أمريكا، وهذا الشيء يحزنني جداً. ابني الصغير، لا يعرف أباه ولم يكن برفقته منذ أن وُلد ولا يعرف شخصيته. وعندما يمرض أحد أطفالي في الليل، لا أجد من يسعفه لأن الوضع ليس آمناً للخروج في الليل.
15. لا يمكنني القيام بكل شيء كما يقوم به زوجي، وأنا أشعر بتعب كبير، وأنا وأطفالي مشتاقون له كثيراً. وإني أقول لمن بهمه الأمر أن يضع مكانه مكانَنا، إذ نعيش في حالة صعبة من دون زوجي.
16. وبحسب علمي، لم يشارك فهمي يوماً في أية أنشطة إرهابية ولم يعبّر يوماً عن أي اهتمام بالإرهاب فضلاً عن أنه لم يتصل يوماً مع أية منظمات إرهابية أو إرهابيين.
17. وبحسب علمي، ما كان بمقدور فهمي ارتكاب أية أعمال عنف أو إرهاب لأنه لم يتلقَ أية تدريبات عسكرية أو تدريباً على الأسلحة. علاوة على ذلك، لم يكن لدى فهمي أي اهتمام في ارتكاب أية عمل إرهابي.

طبقاً لأحكام الفقرة الأولى من البند ١٧٤٦ من باب رقم ٢٨ من مدونة القوانين الأمريكية، أؤكد تحت طائلة عقوبة شهادة الزور بأن المعلومات الواردة في هذه الوثيقة حقيقية وصحيحة حسب علمي.

التاريخ: ١/٤/٢٢                                    التوقيع: ا بسم؟

TSA AR000192

USCA Case #22-1184     Document #2006786     Filed: 07/07/2023     Page 195 of 247

**Aiman H. Haddad**
**Freelance Translator**
**English-Arabic**



## Certified Translation

1. My name is Rayouf Saleh bin Saleh Saeba'n.

2. I was born in PPII ████.

3. I was born on PPII ████

4. I am a Yemeni citizen and I currently reside in the city of Ibb.

5. I was married to Fahmi Moharam on October 8, 2007.

6. We were married in the city of Ibb where we lived together.

7. I have three children.

8. The activities we did after the marriage were to go to the beautiful countryside around Ibb.

9. In regards to the period of December 2011 up to October 2017, and the times that my husband was in Yemen, he was always with us. One time we went together to Mecca to perform Umrah like all Muslims.

10. We visited Dammaj together as a family before the siege in 2013/2014. We visited Dammaj for religious study purposes.

11. Our family was there during the siege.

12. We have not visited Dammaj since 2014 because it is no longer safe to do so.

13. My husband, Fahmi, was injured and evacuated during the siege.

14. The absence of my husband Fahmi has had a huge impact on me and my children. And my children always ask me when their father will come back. They want to be with him all the time, and they want to go to the park, to the markets and places of entertainment with their father, like all the other children. Whenever my children see the children of the neighbors with their parents they ask when our father will return from America, and this thing makes me very sad. My young son does not know his father as he has not seen him since his birth and does not know his personality. And when one of my children gets sick at night, I can't find anyone to help him because it's not safe to go out at night.

15. I can't do everything the way my husband does. I'm so tired, and my kids and I miss him so much. And I ask those who are concerned to put themselves in our place, as we live in a difficult situation without my husband.

TSA AR000193

USCA Case #22-1184    Document #2006786    Filed: 07/07/2023    Page 196 of 247



**Aiman H. Haddad**
**Freelance Translator**
**English-Arabic**

16. To my knowledge, Fahmi has never participated in any terrorist activities, expressed interest in terrorist activities, or been in contact with any terrorist groups or terrorists.

17. To my knowledge, Fahmi would not be capable of carrying out any violent or terroristic act as he has no military or weapons training, nor would he be interested in carrying out such an attack.

Pursuant to 28 U.S.C. § 1746, I declare under the laws of the United States that the foregoing is true and correct to the best of my knowledge:

Signature: [signed]          Date: January 4, 2022



I certify that I am competent to translate from Arabic to English and vice versa. The above is an accurate translation of Rayouf Saeba'n's declaration.

Translated from Arabic by:
Aiman H. Haddad
American Translators Association-Certified Translator
January 6, 2022

TSA AR000194

# EXHIBIT E

TSA AR000195

# DECLARATION OF LAURENT BONNEFOY

I, Laurent Bonnefoy, pursuant to 28 U.S.C. § 1746, hereby declare and state as follows:

1.      I am providing this declaration for use by Fahmi Moharam in his response submission to an unclassified summary stating the reasons for his placement on the No Fly List. I have been asked to provide my expert opinion concerning the Dar al-Hadith Institute in Dammaj (Yemen).

**A.      Qualifications**

2.      I am a permanent full-time researcher at the CNRS (Centre national de recherche scientifique – the French public academic institution) and am affiliated with Sciences Po in Paris. I hold a PhD in political science. My curriculum vitae is attached as Exhibit A.

3.      I have published widely on contemporary Yemeni society in academic format as well as in the mainstream media in French, English, and Arabic. I have been invited to speak by leading international universities and institutions, including in the United States at Princeton University, Columbia University, Carnegie Endowment for International Peace, and George Washington University.

**B.      Basis of Opinions**

4.      My opinions below are informed by my expert academic knowledge on the Salafi movement in Yemen, which was the focus of my PhD as well as of a book I published in 2012 with Columbia University Press. In order to write this research and other publications on a similar topic, I spent a total of four years in Yemen, carrying out interviews with Salafi leaders and activists, Yemeni officials, foreign diplomats, and experts in the capital as well as outside of it. I have also engaged with Salafi religious literature and debates in Arabic.

TSA AR000196

Redress Number: 2263437

5.      Building on my expert knowledge, the main point I make throughout this declaration is the following: for any given individual, attending lectures in the Dar al-Hadith Institute of Dammaj (Yemen) or living for periods of time in that village among the Salafi community, hardly equates to engaging in acts of violence or terrorism. While a proportion of Jihadi militants has indeed studied in Dammaj, these remain a small minority among Dammaj alumni. As a consequence, engaging in jihadi violent activity, with al-Qaeda for instance or other organizations, involved some form of rupture with the branch of Salafism that developed in Dar al-Hadith.

6.      Between the early 1980s and 2014 (when it was forced to close down following a conflict with the Huthi rebellion), Dar al-Hadith (translated from Arabic as *The house of the sayings and deeds of the Prophet*) served as the main cradle and base of Salafism in Yemen, a branch of Sunni Islam characterized by its intent to purify religion and return to the practices and teachings of first generations of Muslims.

7.      Located in the rural area of Dammaj, in the suburbs of Saʿada city in the extreme north of Yemen, close to Saudi Arabia, Dar al-Hadith Institute was throughout the aforementioned period the most influential structure of Salafism in the country, and also appealed beyond the borders of the Arabian Peninsula. It provided a religious and ideological base through its publications and was used as a teaching institute for thousands of Yemenis and foreigners.

8.      In understanding the role of the Dar al-Hadith Institute it is important to take into account the history of Salafism in Yemen, with which Dar al-Hadith was identified. In short, the Salafis were one of a number of groups involved in a lengthy (and continuing) struggle for control of the country, yet they never played a prominent role.  The Salafis, by virtue of their religious inclinations and their tribal affiliations, were generally allied with the legitimate government of

2

TSA AR000197

Redress Number: 2263437

Yemen, rather than jihadi groups, and they tended to believe that jihadism was inconsistent with their view of Islam.

### Origins of Salafism in Yemen

9. The institute in Dammaj was established by Muqbil al-Wadi'i (d. 2001) in the early 1980s. While stemming from a Shia Zaydi and tribal background, "Sheikh Muqbil" as he is often called, had developed a strong anti-Shia bias. His center was nonetheless established in what would later become the cradle of the Huthi rebellion, stemming from Shia Zaydi Islam. In the 1990s, skirmishes between the Salafis and local Zaydi tribes were not rare.

10. Al-Wadi'i's students gradually developed a network of mosques and schools across the country as well as abroad. Despite gaining popularity, Salafism in Yemen nevertheless remained a rather marginal movement, one that could hardly claim to be more than a form of counterculture.

11. As it developed in the 1990s, the Salafi movement generally received support from the Yemeni authorities (including intelligence services) due to its overtly apolitical stance and its quietist calls to be unconditionally loyal to the government. This explains why Salafis also emerged in the late 1990s and after the 9/11 attacks as rivals to the Jihadi movement which, although it might have shared some sources with Salafis, was engaged in violent contestation of the government. Salafis argued that the strategies of al-Qaeda and the like had the effect of killing Muslims and generating chaos (*fitna*). Debates between Sheikh Muqbil and Usama Bin Ladin occurred in the early 1990s, generating an ideological rift that the leadership of the Salafi movement in Yemen would frequently express: the tactics of al-Qaeda were not theirs.

3

TSA AR000198

Redress Number: 2263437

12.     After Muqbil al-Wadi'i's death in 2001, the movement went through an internal

crisis and splintered as some wanted the movement to engage in party politics. Ten years later in

2011, a Salafi party was established: the Rashad Union.

### The Salafis Under Pressure

13.     Yahya al-Hajuri, who was based in Dammaj and headed the Dammaj institute since

2001, resolutely refused this evolution. However, his maintained apolitical stance did not save him

and his students from confrontation with the rising local force, the Huthis, a movement that

claimed to defend Zaydi identity and had been previously at odds with the emergence of Salafism.

In 2011 and then again in late 2013, fighting between the former and Salafi residents of Dammaj

led to the forced closure of the religious institute and the relocation of thousands of activists across

the territory in early 2014. Transnational mobilization in favor of the Salafis coming from Islamist

circles did not affect the local power imbalance: Huthi militants controlled the territories around

Sa'ada, had the military might, and were at various times able to impose a siege on Dammaj to

control what was going in and out of the institute.

14.     In addition to the fact that Dar al-Hadith was allied with the central government

they despised, Huthis were persistently accusing the Salafis of developing covert links with Jihadi

groups, claiming that weapons were being smuggled into the institute. They requested that all

individuals who were not originally from Dammaj and its surroundings leave Dar al-Hadith.

15.     The siege created a difficult humanitarian situation in Dammaj, in particular as

some of the infrastructure like water tanks were destroyed in the fighting. The families of students

highlighted on social media the harsh conditions due to the siege: absence of food, medicine, and

the continuous pressure put on them by Huthi snipers, claiming that the participation of young men

in the fighting was purely defensive and reactive.

TSA AR000199

Redress Number: 2263437

16.     In that context, Salafis, with good reason, felt they were abandoned by the Yemeni government as it was seeking to appease the Huthis as well as Western governments, weary of its long-standing relationship with Sunni Islamists. So a ceasefire agreement was signed in January 2014 under the auspices of President Abderabuh Mansur Hadi. It led to the permanent forced closure of Dar al-Hadith as well as the expulsion from Yemen of some foreign students. In the process and after its evacuation, the Huthis even bombed one of the institute's local branches (in Kitaf) as it accused the institute of harboring jihadi fighters.

17.     This accusation was nevertheless controversial. During the siege of Dammaj in late 2013, al-Qaeda leaders had proposed their direct support to Dar al-Hadith. Yahya al-Hajuri had explicitly rejected it, again doing his best to draw a line separating his movement from the jihadis. Such an approach was frequently criticized by jihadis, in particular some who were affiliated with the Islamic State, who saw the forced closure of Dammaj and its defeat in the face of the Huthis as a symbol of the shortcomings of the apolitical, loyalist, and quietist strategy of the Salafis who persistently refused to consider that armed violence could be an effective tool to see their ideology spread across territories.

18.     As he left Dammaj defeated, Yahya al-Hajuri toured the country to mobilize against the Huthis and later settled in Saudi Arabia for a few years. Figures regarding Salafi casualties over the course of the fighting of 2013–2014 allegedly reached 700, a number which cannot be verified but gives an idea of the brutality of the fighting as well as the comparative weakness of the Salafis. The International Red Cross intervened then to evacuate the casualties and also help a number of foreigners return to their country of origin.

TSA AR000200

Redress Number: 2263437

## Post-Dammaj: Salafis and the War

19.     This humiliation traumatized Salafis across the country, turning them into resolute enemies of the Huthi rebel movement, which would seize control of the capital only months later. Consequently, as the war formally started in March 2015, Salafis would easily be mobilized in the military and ideological efforts against the Huthis, with at least some degree of direct support from the coalition headed by Saudi Arabia. An unknown proportion of former residents of Dammaj thus took up arms both as foot soldiers and leaders of the military opposition to the rebellion, most often standing with the internationally recognized government.

20.     The role played by the Salafis in shaping a powerful sectarian narrative, and the fact such a discourse was shared (albeit often implicitly) by many of the adversaries of the Huthis allowed the former to blend in and establish informal alliances.

21.     Early on, Salafis had neither the military might nor the clear will to take the lead in the fighting. They started the war as a vengeful, but nevertheless defeated, group. As the fighting began, leaders of the movement remained in the background, supporting warfare within tribal structures or broader militias, generally funded by regional powers or linked to Yemeni political parties and the army.

22.     As a consequence, the constitution of Salafi militias per se, built around a common ideology and leadership, remained the exception and only lasted for a limited period of time. Such was the case in Taiz where Abu al-Abbas, a Dammaj alumni, established his own cell and controlled some territory in July 2016 before merging with other forces affiliated with the Yemeni government.

TSA AR000201

Redress Number: 2263437

23.     The role played by Salafis in the context of the war in Yemen is at times counterintuitive and is not always tantamount to deepening political and religious rifts. The establishment of a de facto truce at the beginning of the war between the Huthis and Muhammad al-Imam, a prominent Salafi figure in Maʻbar (south of Sanaa) and Dammaj alumni highlight political processes that are in themselves ambivalent. Such is also the case with the choice of former head of the Dammaj institute, Yahya al-Hajuri, to back off and implicitly mitigate his hostility to the Huthis as his region of origin was being targeted by Saudi bombardments. He never explicitly endorsed the legitimacy of the coalition's military campaign in Yemen.

24.     His discreet return to Yemen in the vicinity of Marib (in Juba) and then to tour parts of the country outside of Huthi outreach did not change the fact that he had become marginalized. Indeed, the Salafi field had been restructured due to the war, all in his absence and as he was muted.

**Grassroots Dynamics**

25.     Beyond this elite-focused digest of the evolutions of the Salafi movement in Yemen up to the war in 2015, one must take into account what was actually going on in Dammaj and how individuals may have responded to the aforementioned evolutions. A precautionary statement that one must make is that when confronted with such shifts, instability, and violence, individuals can respond in very different ways. Also, due to the specific nature of Salafism which is loosely structured and is a rather new ideology that is often reactive, and also very constraining on a daily basis (rejecting, for instance, dominant forms of socialization like television, music, alcohol, or qat in the specific Yemeni environment), adherence to the precepts can evolve or become loose.

26.     It is thus important to consider that Salafism is not a static identity. It is a "two-way street": one can become a Salafi at one point and then leave because he chooses to adapt his

7

TSA AR000202

Redress Number: 2263437

practice to a specific environment. These trajectories are fundamental to keep in mind. Consequently, Salafi counterculture is not fundamentally different from other practices that young adults can adhere to when they are shaping their own identity – punks, vegans, white-supremacists, Mennonites – if only to bother their elders and the majority of a society. This fact does not make Salafis nice, appealing, or friendly but it just allows us to understand that one Salafi's personal trajectory cannot solely be read through the collective history of the movement.

27.    While in Dammaj, the main activity of individuals was to study their religion while living in an allegedly ideal society. The absence of music and of televisions created a form of purity that was appealing to individuals, a place where Salafis believed that they could study, eventually marry, and raise children. Such a dream was all the more powerful for foreigners who could frequently fantasize Yemen poverty, backwardness, and the specific history of the country made that dream all the more real and respectful.

28.    Considering the fact that certain individuals settled in Dammaj for long periods of time, life in a village that grew rapidly becoming a town of around 10,000 over the course of a generation was also structured by a number of worldly activities: construction, commerce, and services. Provided that one could cope with the daily constraints of life in Dammaj, it was acceptable to build one's future in such a closed environment, educating children in such a micro-society.

29.    Yet, when it came to violence and gun ownership, it is safe to say that Dammaj was probably not different from the rest of northern Yemeni tribal society. Holding semi-automatic guns and carrying them was certainly not uncommon, in particular for Yemenis who were literally raised with them, whatever their political affiliation and social category. All prominent teachers in

8

TSA AR000203

Redress Number: 2263437

Dammaj, for example, had bodyguards, often coming from their own tribe. As such, some form of military training may have existed but it cannot be seen as a central component of the curriculum.

30.     Evidently, other problems existed for all: tensions with other Salafis, lack of funding, deterioration of health, and death were also part of the reality in Dammaj. All this became all the more pressing after 2004 as the war between the Huthis and the central government began. Pressure put on the Salafis, in particular foreigners, also became significant after 9/11 when the Yemeni government accepted to side with the United States government in the 'Global war on terror'. Visas and residence permits for foreigners became more and more difficult to receive and many individuals in Dammaj lived there as illegal aliens, taking the risk of spending a few days in prison before departing Yemen as they were incapable of paying the fines.

31.     The closure of Dammaj in January 2014 scattered Salafis across Yemen and many foreigners left the country altogether. New cradles of Salafism were established mainly in the South of the country, around Aden and in the Hadramawt region, far from Huthi outreach and also, often, from the military fronts. Given the fact that some of these areas were in 2015 and 2016 under the control of al-Qaeda, some newly relocated Salafis did develop interactions with the jihadis and engage in fighting against the Yemeni government, yet this certainly never was an automatic pattern.

32.     Among the trajectories of foreign Dammaj alumni, that of John Walker Lindh, the famous 'American Taliban' who was captured in Afghanistan in November 2001 has quite often been considered as illustrative of a link between Salafism and violence. Indeed, his trip there has often been construed in the media and certain intelligence agencies as indicative of a tendency of Dammaj to serve as an antechamber of radicalization.

TSA AR000204

Redress Number: 2263437

33.     It is true that among Jihadi militants, a proportion has indeed studied in Dammaj as stressed for example in the biographies of Guantanamo inmates. Yet, it is at the same time clear that the vast majority of the tens of thousands of Dammaj alumni (at any given time during the 2000s decade, French diplomats in Sana'a considered that around one hundred French nationals, of all ages, were residing in Dammaj, some for long periods of time, others for just a few weeks) be they Yemenis or foreigners, never had any direct connection with armed violence. Engaging in jihadi violent activity involved a rupture with Salafism as it was taught in Dammaj. In spite of the development of a deeply sectarian reading of the world and Yemeni society, it is thus perfectly possible, and even likely, that one could stay for years in Dammaj without ever receiving any kind of military training. First-hand accounts, including from American journalist Theo Padnos who stayed in Dammaj undercover in 2009, largely corroborate the fact that the institute could not be depicted as a covert recruiting base for al-Qaeda and the like. Shifts from apolitical Salafism to Jihadism did of course happen, but they largely happened on an individual basis, and whatever the period of time were never automatic.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Paris, France
        January_6th_, 2022

Laurent Bonnefoy

10

TSA AR000205

Appx207



Laurent BONNEFOY

**PPII**

## Permanent CNRS Researcher in political science

## Centre de recherches internationales (CERI)
## Sciences Po – Paris (France)

### Academic Experience

*Since September 2021*  **Centre de Recherches Internationales (France)**

Permanent CNRS researcher.

*September 2018 – August 2021*  ***Centre français d'archéologie et de sciences sociales (Koweït/Oman)***

Permanent CNRS researcher, based in Muscat. Visiting fellow at the Omani Studies Center (Sultan Qaboos University)

*January 2013 – August 2018*  **Centre de Recherches et d'Etudes Internationales (France)**

Permanent CNRS researcher. Deputy Principal Investigator of the WAFAW – European Research council advanced grant project (until September 2017) headed by François BURGAT.

*September 2010 – December 2012*  **Institut français du Proche-Orient (Palestine)**

Full-time researcher, department of contemporary studies. In charge of the Palestinian branch of a multidisciplinary public research center.

*September – December 2009*  **Tours University (France)**

Lecturer in International Relations (24 hours, 150 students).

*September – December 2008*  **Yemen College of Middle Eastern Studies (Yemen)**

Lecturer in Political Anthropology of the Middle East (50 hours). College under the supervision of Professor Steven CATON (Harvard University).

*November 2007 – June 2009*  **Institut de recherches et d'études sur le monde arabe et musulman, Université de Provence (France)**

Associate researcher, CNRS/ANR post-doctoral fellowship for the "Conflicts" research project headed by François BURGAT.

1

TSA AR000206

*October 2003 – October 2006*    **Centre d'études et de recherches internationales (France)**

CNRS doctoral scholarship. Extensive fieldwork in Yemen and Saudi Arabia.

## Education

*October 2003 – October 2007*    **Institut d'études politiques de Paris (France)**

PhD in Political science – International relations. Dissertation: « Les relations transnationales religieuses contemporaines entre le Yémen et l'Arabie Saoudite : un salafisme importé ? » (511 pages) under the supervision of Professor Bertrand BADIE, Mention très honorable avec les félicitations du jury.

*October 2002 – September 2003*    **Institut d'études politiques de Paris (France)**

DEA (Master) in International relations. Dissertation: « La stigmatisation de l'islam et ses limites dans les discours et pratiques des institutions publiques en France et en Grande-Bretagne après le 11 septembre 2001 (The stigmatization of Islam and its limits in the discourse and practice of public institutions in France and Great-Britain after September 11, 2001) » (111 pages) under the supervision of Didier BIGO.

*October 1998 – June 2001*    **Institut d'études politiques de Paris (France)**

Diplôme de Sciences-Po, major in International relations. Dissertation: « L'espace public des réseaux transnationaux dans la question iraquienne (1990-2000) (The public space of transnational networks and the Iraqi issue (1990-2000)) » (134 pages) under the supervision of Ariel COLONOMOS.

*September 1997 – June 1998*    **Lycée Français de Doha (Qatar)**

Baccalauréat économique et social, Mention Très Bien.

## Language skills

**French**: Fluent
**English**: Fluent
**Arabic**: Spoken and read.

## Teaching experience

*September – December 2013 to 2017*    **Institut d'études politiques de Paris (France)**

Master course in Sociology of International relations of the Middle East (4x12 hours, in French)

*September – December 2009*    **Université de Tours (France)**

First year course in International relations (24 hours, in French)

2

TSA AR000207

September – December 2008    **Yemen College of Middle Eastern Studies (Yemen)**
Master course in Social anthropology of the Middle East (50 hours, in English)

In addition to these courses and numerous international conferences, I have been an invited individual lecturer at the following universities: Sanaa University (2008), Princeton University (2011), Columbia University (2012), Birzeit University (2012), New York University (2013), University of Brasilia (2013), Université Paris La Sorbonne (2013), Université du Québec à Montréal (2014), Université de Montréal (2015), Oslo University (2015), Edinburgh University (2015), Université Saint-Joseph (2015), Université de Grenoble (2016), Doha Institute (2016), University of Southern Denmark (2016), Exeter University (2017), Université de Strasbourg (2017), Université de Djibouti (2019), New York University Abu Dhabi (2017), Stockholm University (2019), Université catholique de Lille (2019), Université Libre de Bruxelles (2019).


## Academic publications

### Books :

- Le Y*émen : de l'Arabie heureuse à la guerre*, Paris: Fayard, 217, 348 p.. English translation published by Oxford University Press and Hurst in October 2018 under the title *Yemen and the World. Beyond Insecurity*

- *Jeunesses arabes. Du Maroc au Yémen : loisirs, cultures et politiques* (edited with Myriam Catusse), Paris: La Découverte, 2013, 340 p. (Arabic translation published in Arab Scientific Publishers in 2017, English translation to be published by Manchester University Press).

- *Yémen. Le tournant révolutionnaire* (edited with Franck Mermier and Marine Poirier), Paris: Karthala/CEFAS, 2012, 367 p. Arabic translation published by Dar al-Furat in 2016.

- *Salafism in Yemen. Transnationalism and Religious Identity*, London/New York: Hurst/Columbia University Press, 2011, 336 p.


### Articles in peer reviewed journals:

- « Le salafisme quiétiste face aux recompositions politiques et religieuses dans le monde arabe (2011-2016) », *Archives des sciences sociales des religions*, special issue Recompositions du politique et du religieux depuis les révoltes dans le monde arabe, n°181, 2018, pp. 181-202.

- "Recompositions islamistes sunnites et polarisation confessionnelle dans le Yémen en guerre » (with Abdulsalam al-Rubaidi), *Critique internationale*, dossier spécial « Avec ou sans les Frères. Les islamistes arabes face à la résilience autoritaire », n°78, 2018, pp. 85_103.

- « I'adat tashkil al-huwiyat fi zil al-harb al-da'ira fil-yaman (Transformations des identités dans le contexte de la guerre actuelle au Yémen)" (with Abdulsalam al-Rubaidi), *Idhafat. Arab social sciences journal*, n°38-39, 2017, pp. 50-67.

- « Salafis and the 'Arab Spring' in Yemen: Progressive Politicization and Resilient Quietism" (avec Judit Kuschnitzki), *Arabian Humanities*, n°4, 2015, online journal.

- « La structuration de la révolution yéménite. Essai d'analyse d'un processus en marche » (in collaboration with Marine Poirier), *Revue française de science politique*, vol. 62, n°6, 2012, pp. 895-913.

- "Varieties of Islamism in Yemen: The Logic of Integration under Pressure", *Middle East Review of International Affairs*, vol. 13, n°1, 2009, pp. 26-36.

3

- « Les identités religieuses contemporaines au Yémen : convergence, résistances et instrumentalisations », *Revue des mondes musulmans et de la Méditerranée, n°121-122, 2008, pp. 201-215.*

- « L'invention de la contestation transnationale par les forums et sommets : la naissance d'un « espace public mondial » ? » (with Cecilia Baeza and Hélène Thiollet), *Raisons politiques*, n°19, août 2005, pp. 25-44.

- « Le Rassemblement yéménite pour la Réforme (al-Islâh) face à la crise du 11 septembre et la guerre en Afghanistan » (collaboration with Fayçal Ibn Cheikh), *Chroniques yéménites*, n°9, 2002, pp. 169-176.

Chapters in edited volumes:

- "Reversals of Fortune: The Islah Party in Post-Saleh Yemen" in Marie Christine Heinze, *Yemen and the Search for Stability*, London : IB Tauris 2018.

- « Continuité, réforme et rupture dans l'Etat yéménite post-2011 » in Anna Bozzo and Pierre-Jean Luizard (dir.), *Vers un nouveau Moyen-Orient ? Etats arabes en crise entre logiques de division et sociétés civiles,* Editions Roma Tre Press, 2016, pp. 299-308.

- « Quietist Salafis, the Arab Spring and the Politicization Process » in Francesco Cavatorta and Fabio Merone (eds.), *Salafism after the Arab Awakening. Contending with People's Power*, Londres/New York : Hurst/Oxford University Press, 2016, pp. 205-218.

- « Les recompositions du mouvement salafiste dans le Yémen post-Saleh » in Michel Camau and Frédéric Vairel (eds.), S*oulèvements et recompositions politiques dans le monde arabe,* Montréal : Presses de l'Université de Montréal, 2014, pp. 429-443.

- "The Shabab, Institutionalized Politics and the Islamists in the Yemeni Revolution" in Helen Lackner (ed.), *Why Yemen Matters. A Society in Transition*, London: Saqi Books, 2014, pp. 87-104.

- "Dynamics of the Yemeni Revolution (with Marine Poirier)" in Joel Beinin and Frédéric Vairel (eds.), *Social Movements, Mobilization, and Contestation in the Middle East and North Africa*, Stanford: Stanford University Press, 2013, pp. 228-245.

- « Le Yémen contemporain : une société tribale ? » in Hosham Dawod (dir.), *Les tribus dans le monde musulman*, Paris : Demopolis, 2013, pp. 141-170.

- « La nation yéménite : entre fondements historiques anciens et remises en cause continues » in Joao Medeiros (dir.), *Le mondial des nations,* Paris: Institut Choiseul, 2011, pp. 552-571.

-- "Jihadi violence in Yemen: dealing with local, regional and international contingencies" in Jeevan Deol, Zaheer Kazmi (dir.), *Contextualising Jihadi Thought*, Londres : Hurst, 2011, pp. 251-266.

- "*The Security Paradox and Development in Unified Yemen (1990-2005)*" (with Renaud Detalle) in Necla Tschirgi Michael Lund, Francesco Mancini (dir.), *Security and Development. Searching for Critical Connections*, Boulder : Lynne Reiner, 2010, pp. 99-134.

 "The Yemeni Congregation for Reform (al-Islâh): The Difficult Process of Building a Project for Change" (with Marine Poirier) in Myriam Catusse, Karam Karam (dir.) *Returning to Political Parties? Partisan Logic and Political Transformations in the Arab World*, *Beirut:* Lebanese Center for Policy Studies, 2010, pp. 61-100.

- "How Transnational is Salafism in Yemen?" in Roel Meijer (dir.), *Global Salafism: Islam's New Religious Movement*, New York : Columbia University Press, 2009, pp. 289-309.

- "Salafism in Yemen: A 'Saudisation' ?" in Madawi al-Rasheed (dir.), *Kingdom Without Borders: Saudi Expansion in the World*, Londres : Hurst, 2008, pp. 245-262.

4

- « L'illusion apolitique : adaptations, évolutions et instrumentalisations du salafisme yéménite » in Bernard Rougier (dir.), *Qu'est ce que le salafisme ?*, Paris: Presses Universitaires de France, 2008, pp. 137-159.

Other publications:

- « Yémen, des partis toujours pertinents ? », *Confluences Méditerranée*, n°98, 2016.

- « Yémen : une guerre par procuration ? », *Politique internationale*, n°151, printemps 2016.

- « Au Yémen, l'unité dans la protestation » (en collaboration avec Marine Poirier), *Le Monde diplomatique*, juin 2011, p. 8.

- « Le Yémen entre intégration politique et spirale de la (contre-)violence » (en collaboration avec François Burgat, traduction espagnole), *Casa Arabe Papers*, n°7, 2009, 35 p.

- "Civil Society and Democratization in Yemen. Enhancing the Role of Intermediate Bodies" (en collaboration avec Marine Poirier), *Civil Society in West Asia Working paper n°3*, University of Amsterdam, 2009, 27p.

- Book reviews and notes published in *Arabian Humanities, Chroniques yéménites, Encyclopaedia Universalis, International Journal of Middle East Studies, Journal of Islamic Studies, Maghreb-Machrek, Le Monde diplomatique, Critique internationale, European Review of International Studies* et *Revues des mondes musulmans et de la Méditerranée.*

- 30 papers published on *Orient XXI* (orientxxi.info) since 2013.

5

TSA AR000210

| | |
|---|---|
| **From:** | RedressFinal, TRIP |
| **To:** | Naz Ahmad |
| **Cc:** | GPII |
| **Subject:** | RE: 2263437 - Request for Extension |
| **Date:** | Monday, February 14, 2022 3:50:00 PM |

We are in receipt of your January 7, 2022, correspondence.

You will be notified via electronic mail of the TSA Administrator's final determination on your client's status on the No Fly List. If you have any questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Friday, January 7, 2022 6:13 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello —

Please find attached Mr. Moharam's response to the February 20, 2020 unclassified summary.

Mr. Moharam reserves his right to supplement his response if he is provided with more detailed information concerning the alleged basis for his placement on the No Fly List.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Wednesday, December 8, 2021 at 12:05 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your email. DHS TRIP does not believe that Mr. Moharam's filing of a lawsuit is a valid reason to hold his previously submitted inquiry in abeyance. Accordingly, DHS TRIP will continue processing Mr. Moharam's DHS TRIP inquiry, which may result in a final determination of the TSA Administrator removing him from, or maintaining him on the No Fly List. Mr. Moharam may provide any additional information or material that he deems

TSA AR000211

relevant within 30 days from the date of this email. Any information or materials Mr. Moharam provides, or that you provide on his behalf, will be considered prior to making a determination.

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Tuesday, October 19, 2021 6:00 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached Mr. Moharam's response and request for tolling.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Monday, April 19, 2021 at 3:08 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your most recent inquiry. This email is to confirm that your client has been granted an extension until October 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.

With respect to your renewed request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Thursday, April 15, 2021 11:06 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII

TSA AR000212

Appx214

**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to follow up on our request for an extension, which is currently due April 19, 2021.

Kind regards,

Naz

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Wednesday, April 7, 2021 at 12:41 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

Hello –

Please find attached a request for an extension to response to the unclassified summary, due April 19, 2021.

Kind regards,

Naz

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Tuesday, October 13, 2020 at 3:52 PM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** GPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your inquiry. This email is to confirm that your client has been granted an extension until April 19, 2021. If you have additional questions, please contact DHS TRIP at TRIP@tsa.dhs.gov.
Regarding your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

Sincerely,
DHS TRIP

TSA AR000213

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Wednesday, October 7, 2020 11:32 AM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** GPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

Please find attached a request for an extension of time to respond to the unclassified summary, on behalf of Mr. Moharam.

Kind regards,

Naz Ahmad

**From:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Date:** Thursday, May 7, 2020 at 10:21 AM
**To:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Hannah Walsh PPII                         Sharmin Piancca
PPII                         Princess Masilungan
PPII                         Tarek Ismail PPII
**Subject:** RE: 2263437 - Request for Extension

Thank you for your recent communication. Regarding your request for an extension to respond to DHS TRIP's February 20, 2020, letter to your client, Mr. Fahmi Ahmed Moharam, due to the extenuating circumstances associated with the COVID-19 pandemic, DHS TRIP grants your request. Please provide your client's response and any supporting documentation by October 19, 2020.

With respect to your request for counsel to receive access to classified information regarding Mr. Moharam's No Fly List status, TSA does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d). Regarding the request you made for a copy of the interview conducted at the U.S. Consulate in Jeddah in 2017, please note that DHS TRIP is unable to provide that information.

If you have any further questions, please contact DHS TRIP at TRIP@dhs.gov.

Sincerely,
DHS TRIP

TSA AR000214

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Sent:** Monday, April 27, 2020 1:42 PM
**To:** RedressFinal, TRIP <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                    Sharmin Piancca
PPII                              Princess Masilungan PPII
Tarek Ismail PPII
**Subject:** Re: 2263437 - Request for Extension

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you believe this is SPAM or a phishing email, contact the TSA Cyber Security Operations Center at TSA-SPAM.

Hello –

I am writing to inquire about the status of our request for additional time to respond concerning Mr. Moharam's placement on the No Fly List. I appreciate that responses may be delayed due to the COVID-19 pandemic.

We look forward to your response.

Kind regards,

Naz Ahmad

**From:** Naz Ahmad <naz.ahmad@law.cuny.edu>
**Date:** Friday, April 17, 2020 at 1:17 PM
**To:** "RedressFinal, TRIP" <TRIP@tsa.dhs.gov>
**Cc:** Hannah Walsh PPII                    Sharmin Piancca
PPII                              , Princess Masilungan
PPII                              , Tarek Ismail PPII
**Subject:** 2263437 - Request for Extension

Hello –

Please find attached a timely request for an extension of time to respond to the unclassified summary provided in DHS TRIP's February 20, 2020 letter.

As noted in our letter, our director, Ramzi Kassem, has active TS/SCI security clearance. We kindly request a prompt response to our request for him to receive access to the classified information allegedly supporting the basis for Mr. Moharam's placement on the No Fly List. Please find attached a signed DHS 590 authorizing the release of information to Mr. Kassem.

TSA AR000215

Kind regards,

Naz Ahmad

TSA AR000216

(2) 2018 Watchlisting Guidance

[withheld in full LEP, partially withheld SSI]

TSA AR000217 – TSA AR000367

*FOR OFFICIAL USE ONLY (FOUO)*

# U.S. Government Redress Implementation Plan for USPER No Fly Individuals

### *April 9, 2015*

**WARNING:** *This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior written approval of an authorized DHS Official.*

1

TSA AR000368

*FOR OFFICIAL USE ONLY (FOUO)*

**Introduction**

This implementation plan is designed to guide the U.S. Government's (USG) process for responding to U.S. Person (USPER) No Fly individuals who seek redress through the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) as a result of denial of boarding.[1]

The steps outlined below include revisions to the current redress process to provide greater transparency and more robust review procedures. Most notably, the revisions enhance the USG's response to certain DHS TRIP redress applicants by providing them information not previously disclosed, to include confirmation of a "No Fly" watchlist status and, where possible, the reasons for that status. This additional information is intended to provide these redress applicants with the opportunity to submit to DHS TRIP evidence that may support removal from the No Fly List or otherwise lead to the correction of errors.

These revised redress procedures apply to USPERs who remain on the No Fly List after they have purchased a ticket, have been denied boarding as a result of their inclusion on the No Fly List, and have sought redress through DHS TRIP. The first stage of these revised procedures involves sending a DHS TRIP letter confirming the USPER's placement on the No Fly List and giving the individual 30 calendar days to request further information regarding their inclusion on the No Fly List.[2]

Following receipt of a first stage response, a USPER requesting additional information will receive one of two second stage redress responses. The preferred response would be to provide the applicant with as much information as possible, taking into account the national security and law enforcement interests at stake. Specifically, the preferred response would include applicable No Fly criteria supporting the applicant's placement on the No Fly List and, where possible, an unclassified or declassified summary of information supporting the subject's No Fly status. The amount and type of information provided will vary on a case-by-case basis, depending on the facts and circumstances of each case and the national security and law enforcement interests involved. For cases where the originating[3] agency, in coordination with the Department of Justice (DOJ), and, as appropriate, the Office of the Director of National Intelligence (ODNI), determines that the release of an unclassified or declassified summary of the classified or sensitive information would harm national security or law enforcement interests, the alternate response would at least state the pertinent No Fly criteria but offer no further information. At the conclusion of the second stage, the applicant will be advised of his ability to seek further administrative review of the USG decision. The existing process for further administrative appeal will remain in place and will not change until such time as the Department of Homeland Security (DHS), DOJ, and the Terrorist Screening Center (TSC) agree upon revisions.[4]

**REVISED NO FLY REDRESS DETERMINATION PROCESS**

---

[1] USPER refers to a United States Citizen or a lawful permanent resident (LPR) of the United States.
[2] At the applicant's request, TSA may grant an additional 30-day extension.
[3] *See* 2013 Watchlisting Guidance, Appendix 1, for definitions of nominators and originators.
[4] Revisions to the existing process for further administrative appeal are outside the scope of this implementation plan.

2

TSA AR000369

*FOR OFFICIAL USE ONLY (FOUO)*

**Criteria for the revised process:**

- Applicant
    - Is a USPER;
    - Was denied boarding due to the applicant's presence on the No Fly List when holding a valid airline ticket;
    - Properly submitted a DHS TRIP inquiry; and
    - Remains on the No Fly List following the USG review in Stage One (described below).

1. **STAGE ONE (Initial Redress Application)**
    1.1. Applicant completes a redress inquiry online or via U.S. mail; when an application is submitted online, the DHS TRIP system automatically generates a redress control number (RCN) for the applicant.
    1.2. DHS TRIP sends a letter to the applicant to acknowledge receipt of a complete DHS TRIP application, which confirms the applicant's RCN.[5]
    1.3. DHS TRIP reviews the individual's redress case.
        1.3.1. If the applicant appears to be a match to a name in the Terrorist Screening Database, ***go to step 1.4***.
        1.3.2. If the applicant does not appear to be a match to a name in the Terrorist Screening Database, DHS TRIP personnel will process the inquiry in accordance with existing policy and procedures. ***End process.***
    1.4. DHS TRIP refers case to the TSC.
        1.4.1. TSC requests that the National Counterterrorism Center (NCTC) and nominator(s)/originator(s) review the case to assess the derogatory information and determine if any change in status is necessary.
            1.4.1.1. If no change is warranted, the person remains on the No Fly List. ***Go to step 1.4.2.***
            1.4.1.2. If a change in status is warranted:
                1.4.1.2.1. TSC, after coordination with the nominator(s)/originator(s) and taking into account the national security and law enforcement interests at stake, shall advise DHS TRIP of the change in status.
                1.4.1.2.2. 
                1.4.1.2.3.
        1.4.2. If no change in status is warranted and the applicant is a USPER, TSC/NCTC notifies the affected nominator(s)/originator(s) that an unclassified or declassified summary/tear-line ***may be required*** if the USPER in question requests additional information. ***Go to Step 1.5.***

---

[5] This procedure is currently used by DHS TRIP to acknowledge receipt of the application request.

3

*FOR OFFICIAL USE ONLY (FOUO)*

1.5. Stage One Response – DHS TRIP will send a Stage One letter informing the USPER DHS TRIP applicant that he or she is on the No Fly List and advise the applicant that he or she may request additional information within 30 days or, when the applicant requests and DHS TRIP grants a 30-day extension, 60 days.[6]

    1.5.1. Applicant requests further information through DHS TRIP. ***Time Frame: 30 calendar days. Go to 2, Stage Two.***

    1.5.2. If DHS TRIP does not receive a request for additional information or for an extension within 30 calendar days, ***End Process.***

**2. <u>STAGE TWO (USG Response to USPER No Fly Applicant's Request for Additional Information).</u>**

2.1. DHS TRIP receives an applicant's request for additional information, following a Stage One response, and informs TSC. DHS TRIP will forward TSC any additional information provided by the applicant.

2.2. TSC will notify the NCTC and the nominator(s)/originator(s) that the USPER redress applicant has requested additional information, following a Stage One letter, and TSC requests creation of an unclassified or declassified summary/tear line.

2.3. Nominator(s)/originator(s) will review: original derogatory information, any new information (including any other information relevant to the continued No Fly status), and any information provided by the applicant. DOJ will be notified if information obtained or derived from orders issued pursuant to the Foreign Intelligence Surveillance Act, as amended, will be relied upon to support the No Fly decision.

2.4. As set forth below, and based on the totality of the information, nominator(s)/originator(s) will initiate the most appropriate response.

    2.4.1. The USG response shall be as follows:

        2.4.1.1. <u>The unclassified or declassified summary</u>. Nominator(s)/originator(s) will make every effort to craft an unclassified or declassified summary based on the totality of the information available, which shall include as much information as possible and be reasonably calculated to permit the individual to respond, taking into account the national security and law enforcement interests at stake.[7] The amount and type of information provided may vary depending on the facts and circumstances of each case.

    2.4.2. The response will be one of the following two options:

        2.4.2.1. The <u>applicable No Fly criteria</u> and the <u>unclassified or declassified summary</u> described in section 2.4.1.1.

        2.4.2.2. The <u>applicable No Fly criteria.</u> If only the No Fly criteria are provided, and no other information can be provided, then legal counsel for the nominating/originating agency must coordinate with DOJ and, if appropriate because a U.S. Intelligence Community agency is involved, ODNI before a response is transmitted to DHS TRIP.

2.5. Nominator(s)/originator(s) shall convey to TSC (and TSC will send to DHS TRIP) each of the following:

---

[6] The timeframe of 30 calendar days is based upon the date of issuance of the letter by DHS TRIP.

[7] To the extent other agency information not originating with the nominator(s)/originator(s) is to be included in the unclassified or declassifiedsummary, nominator(s)/originator(s) should coordinate with those agencies to ensure that their sensitivity concerns are addressed and that there are no other legal barriers to disclosure.

4

TSA AR000371

*FOR OFFICIAL USE ONLY (FOUO)*

2.5.1.  Information for the DHS TRIP applicant. LEP



2.5.1.1.

2.5.1.2.

2.5.2.  Information for internal review. LEP

2.5.2.1.

2.5.2.2.

2.6.  As set forth below, DHS TRIP will draft a Stage Two letter to the DHS TRIP applicant using information provided by the nominator(s)/originator(s) in Step 2.5.

    2.6.1.  The Stage Two letter should include the applicable watchlist criteria and, where applicable, the unclassified information provided by the nominator(s)/originator(s) as approved for release to inform the individual of the reasons for his or her inclusion on the No Fly List.

        2.6.1.1.  DHS TRIP will not release classified information -- or other sensitive information not approved for release (such as any information conveyed internally pursuant to 2.5.1.1 and 2.5.1.2, above) -- in a response letter to the applicant.

        2.6.1.2.  In the event that an applicant has proactively provided information as part of the redress inquiry, the letter should also inform the applicant that the redress process included a review and consideration of that information.

    2.6.2.  DHS TRIP will notify departments and agencies that participate in the watchlisting, screening, or redress process[8] that a Stage Two letter is in process in order to a provide these departments and agencies with the opportunity to request

---

[8] In cases where Department of State (DOS) records are involved or where there are sensitive foreign policy equities, DOS should be consulted.

5

TSA AR000372

*FOR OFFICIAL USE ONLY (FOUO)*

that an Interagency General Counsel Advisory Panel (GC Panel) be convened to provide advice and recommendations.[9].

2.7. Interagency General Counsel Advisory Panel

2.7.1.  When requested by an Assistant Secretary (or equivalent) or DAS-level designee of a department or agency that participates in the watchlisting, screening, or redress process, a GC Panel shall convene to review and provide advice concerning the contents of a draft Stage Two letter.

2.7.2.  Each request shall be reviewed by a GC Panel, consisting, at a minimum, of the General Counsels or their designees from each applicable nominating/originating department(s) and agency(ies); DOJ; TSC; DHS; and, for cases with a nexus to international terrorism, NCTC.[10]  DHS will facilitate the work of the GC Panel.

2.7.3.  The GC Panel's members shall be provided with the draft Stage Two letter (prepared in Step 2.6) and the classified memorandum (prepared in Step 2.5.2.1).

2.7.3.1.  The GC Panel members may seek the views of other department and agency officials concerning the matter.

2.7.3.2.  The GC Panel may request additional information from the nominator(s)/originator(s) through appropriate channels.

2.7.4.  The GC Panel may advise the nominator(s)/originator(s) on legal matters that may include, as appropriate, whether the information provided in the Stage Two letter offers the applicant a meaningful opportunity to respond to the basis for the No Fly determination, or whether it raises issues implicating national security, law enforcement, privacy, or civil rights and civil liberties.  The GC Panel may also provide recommendations for how the nominator(s)/originator(s) could modify the unclassified or declassified summary in order to address its advisory recommendations.[11]

2.7.5.  The GC Panel's role shall be solely advisory.  It shall neither direct nominator(s)/originator(s) to incorporate its advisory recommendations nor provide opinions on whether the redress applicant was appropriately placed or maintained on the No Fly List.

2.7.6.  The GC Panel's advice and recommendations shall be sent to DHS TRIP.

2.8. DHS TRIP shall receive the GC Panel's advice and recommendations.

2.8.1.  DHS TRIP, through the TSC, will transmit the GC Panel's advice and recommendation to the nominator(s)/originator(s).

2.8.2.  The nominator(s)/originator(s) shall consider any advice and recommendations by the GC Panel, determine whether and how best to incorporate any advice and recommendations, and send any modifications to the unclassified or declassified summary, LEP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ through the TSC to DHS TRIP.

---

[9] Agencies wishing to participate in the GC Panel should provide DHS TRIP with the name and contact information for a point of contact and advise DHS TRIP of any changes.

[10] Representatives from the nominating agencies and/or ODNI could include appropriate counsel representation as well as Privacy and Civil Rights/Civil Liberties personnel.

[11] This advisory mission of the GC Panel does not supplant the role of the DOJ (and, as appropriate, ODNI for U.S. Intelligence Community agencies), in conducting its own review when a nominator/originator does not include an unclassified or declassified summary in the draft response letter.  That review will include a consideration of court rulings and the USG's position in pending and potential litigation.

6

*FOR OFFICIAL USE ONLY (FOUO)*

    2.8.3.    Where a nominator/originator modifies the unclassified or declassified summary, any other affected nominator(s)/originator(s) will be notified of the change.

    2.8.4.    DHS TRIP will prepare the final draft of the Stage Two letter for signature.

  2.9. DHS TRIP will send a Stage Two letter to the USPER DHS TRIP applicant.  The letter will additionally inform the applicant that the applicant may seek further administrative appeal and invite the applicant to provide additional information that he or she wishes the government to consider in connection with any such further appeal.  ***End Process (or move to Stage Three if applicable).***

3.  <u>**STAGE THREE:  Applicant Response and Request for Further Administrative Appeal of a Stage Two Response.**</u>

  3.1  The current process for seeking further administrative appeal will remain unchanged, until such time as DHS, DOJ, and TSC agree to revisions.

7

TSA AR000374



U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598

**JUN 0 9 2022**

Mr. Fahmi Ahmed Moharam



Redress Control Number: 2263437

Dear Mr. Moharam:

Based on my review of information available to the Transportation Security Administration, I have determined that you are properly included on the U.S. Government's No Fly List. This determination is based on the totality of available information, including information you provided to DHS TRIP.

This letter constitutes the Transportation Security Administration's final agency decision, which is reviewable by a United States Court of Appeals under 49 U.S.C. § 46110. A petition for review must be filed within 60 days of issuance of this order.

Sincerely yours,

David P. Pekoske
Administrator
Transportation Security Administration

Enclosure:

Notice of Final Order and Decision of TSA

TSA AR000375

*Office of the Administrator*

**U.S. Department of Homeland Security**
6595 Springfield Center Drive,
Springfield, VA 20598 – 6002



**Transportation
Security
Administration**

## NOTICE OF FINAL ORDER AND DECISION OF THE TSA ADMINISTRATOR

On October 19, 2021, Fahmi Ahmed Moharam, through his counsel, submitted a letter and an affidavit to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) providing reasons why Mr. Moharam believed his placement on the No Fly List was in error. On January 7, 2022, Mr. Moharam's counsel responded with additional information, including an updated affidavit from Mr. Moharam and two additional affidavits.[1] For the reasons set forth below and based on my review of information available to the Transportation Security Administration, I determine that Mr. Moharam should remain on the No Fly List.

### Background

On October 29, 2017, Mr. Moharam submitted a redress inquiry to DHS TRIP. DHS TRIP informed Mr. Moharam that he was on the No Fly List and provided the opportunity to request additional information about his placement on the No Fly List and the opportunity to seek additional review. Mr. Moharam, through his counsel, requested additional information about his placement on the No Fly List.[2]

---

[1] Mr. Moharam's October 19, 2021 correspondence included a request from counsel for an extension of time. The request was Mr. Moharam's fourth request for an extension. DHS TRIP denied Mr. Moharam's request for a fourth extension and provided him an additional 30 days to provide any additional information or material he deemed relevant. Mr. Moharam, through counsel, provided the January 7, 2022 submission in response.

[2] The process for responding to requests for additional information is complex and requires interagency consultation and access to secure facilities and communications systems. Specifically, the Terrorist Screening

1

On February 20, 2020, DHS TRIP informed Mr. Moharam he was on the No Fly List

because he had been identified as an individual who "may be a threat to civil aviation or national

security." 49 U.S.C. § 114(h)(3)(A). In particular, it had been determined that he was an

individual who represents a threat of engaging in or conducting a violent act of terrorism and

who was operationally capable of doing so.

In addition, DHS TRIP provided Mr. Moharam with a summary of the unclassified facts

available for release that supported his placement on the No Fly List and encouraged him to

respond with relevant information if he believed the determination was in error or if he felt the

information provided to him was inaccurate. The unclassified summary stated as follows:

> You are on the U.S. Government's No Fly list because the Government has concerns
> about your activities during frequent and extended travel to Yemen between 2011 and
> 2017. The information you shared during your interview at the U.S. Consulate in Jeddah
> in November 2017 did not assuage the Government's concerns.[3]

---

Center (TSC) must notify the National Counterterrorism Center (NCTC) and the nominating agency or agencies to
request additional information and assistance with creating an unclassified or declassified summary. Composing an
unclassified or declassified summary requires the nominating agency or agencies to review the original derogatory
information, any new information (including exculpatory information), and information supplied by the individual
who filed a DHS TRIP redress inquiry. To ensure that the U.S. Government redress process is thorough and
responsive, the nominating agency or agencies also coordinates with other executive departments and agencies that
are responsible for collecting, collating, and sharing terrorism information in support of the watchlist process.
Together, these entities make every effort to compose an unclassified or declassified summary based on the totality
of available information, intending for the summary to include as much information as possible and be reasonably
calculated to permit the individual to respond, taking into account the national security and law enforcement
interests at stake. For Mr. Moharam, this interagency process was further complicated by a government shutdown
lasting more than a month, as well as other disruptions to the Government's work in this area. Following this
extensive process, the nominating agency or agencies provided TSC with the information that could be disclosed to
Mr. Moharam in an unclassified summary. TSC provided DHS TRIP with written authorization confirming that the
information contained in the summary is unclassified and authorizing DHS TRIP to release the summary to Mr.
Moharam.

    Upon receipt of the unclassified summary, DHS TRIP provided it to the TSA Intelligence and Analysis
Office (I&A) and the TSA Chief Counsel Office (CC) for review. TSA I&A reviewed the proposed unclassified
summary and analyzed it in light of relevant information available to TSA, whether provided directly by TSC or
available to TSA I&A in the performance of its intelligence and analysis function, and TSA CC conducted a legal
review. DHS TRIP conferred with TSA I&A and TSA CC regarding the proposed unclassified summary. After
DHS TRIP received the unclassified summary from TSC and conferred with TSA I&A and TSA CC, and made any
resulting changes, DHS TRIP provided the unclassified summary to relevant agencies for their review and comment.
Following those consultations and any resulting changes, DHS TRIP prepared the letter to Mr. Moharam providing
the unclassified summary and the specific criterion under which he was placed on the List.

    [3] Mr. Moharam's counsel requested that DHS TRIP provide a copy of the interview transcript for the
November 2017 interview referenced in the unclassified summary. DHS TRIP denied the request.

2

TSA AR000377

DHS TRIP withheld certain information relevant to Mr. Moharam's placement on the No Fly List and informed Mr. Moharam that factors limiting disclosure in this context included national security concerns.[4]

<div align="center">Mr. Moharam's Appeal</div>

Mr. Moharam, through counsel, requested multiple extensions of time to respond to the February 20, 2020 letter. In light of the COVID-19 pandemic, DHS TRIP granted Mr. Moharam's numerous requests for extensions of time. DHS TRIP provided Mr. Moharam until October 19, 2020, then April 19, 2021, and then October 19, 2021, to substantively respond.

On October 19, 2021, Mr. Moharam, through his counsel, submitted a letter and an affidavit to DHS TRIP providing reasons why Mr. Moharam believed his placement on the No Fly List was in error. On January 7, 2022, Mr. Moharam's counsel responded with additional information, including an updated affidavit from Mr. Moharam and two additional affidavits, one from his wife and another from Professor Laurent Bonnefoy.

<div align="center">TSA's Determination</div>

Upon my review of all the information Mr. Moharam has submitted to DHS TRIP, as well as other information available to me related to Mr. Moharam's placement on the No Fly List, I find that Mr. Moharam may be a threat to civil aviation or national security; in particular, I find that he is an individual who represents a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so. I therefore conclude, based on my

---

[4] Mr. Moharam's counsel made several requests to DHS TRIP to provide Mr. Moharam's cleared counsel with access to classified information supporting Mr. Moharam's inclusion on the No Fly List. DHS TRIP denied the requests. DHS TRIP does not disclose to redress applicants, or the applicant's counsel, classified information, as defined in E.O. 12968 section 1.1(d).

<div align="center">3</div>

TSA AR000378

review of information available to the Transportation Security Administration, that Mr. Moharam is properly placed on the No Fly List and no change in status is warranted.

Consistent with the protection of national security and law enforcement interests, I can provide the following explanation of my decision:

1. I have considered the contentions of Mr. Moharam and his wife about his travel to Yemen, including that he was born in Yemen; his wife, most of his children, and his mother reside in Yemen; and that he traveled to Yemen to visit family and pursue religious study. I have also considered their contentions related to visiting the town of Dammaj. Mr. Moharam notes that his visits to Dammaj lasted an average of three to six months, that he usually visited with his wife and children, and that he spent most of his time at Dammaj in study or prayer. Mr. Moharam states that he was at Dammaj during the second siege of the town by the Houthis in 2013 and 2014, was hit by a bullet, and was evacuated by the Red Cross. He explains that the Houthis believed everyone who was at Dammaj was a "terrorist." He further states that he was not involved in any of the fighting at Dammaj during the siege. The affidavit of Mr. Moharam's wife also includes information about their travel, including that they visited Dammaj together as a family for religious study purposes and that Mr. Moharam was injured and evacuated during the siege. I conclude, however, that the information available to me, including information regarding Mr. Moharam's activities during his frequent and extended travel to Yemen, as well as information provided by Mr. Moharam during a November 2017 interview and during the redress process, ultimately supports his placement on the No Fly List.

2. I have also considered the affidavit of Professor Laurent Bonnefoy, including the explanation that mere attendance at the Dar al-Hadith school or living in the town of

4

TSA AR000379

Dammaj would not automatically render someone an extremist or threat, that it is possible to stay in Dammaj without receiving any kind of military training, and that the vast majority of Dammaj alumni never had any direct connection with armed violence. Professor Bonnefoy also states that while a proportion of Jihadi militants studied in Dammaj, these remain a small minority among Dammaj alumni.[5]  I conclude, however, that the information available to me, including information regarding Mr. Moharam's activities during his frequent and extended travel to Yemen, as well as information provided by Mr. Moharam during a November 2017 interview and during the redress process, ultimately supports his placement on the No Fly List.

3.  I have also considered the contentions of Mr. Moharam and his wife related to his non-involvement in violence or terrorist activity, including that he did not participate in any armed violence or terrorist activity in Yemen or elsewhere; that he did not receive any terrorist, military, or weapons training at Dammaj or elsewhere; and that he has not participated in terrorist activities, expressed interest in terrorist activities, or been in contact with any terrorist groups or terrorists.  Mr. Moharam's contentions also include that he has never attended terrorist training camp, that he has no plan or desire to martyr himself, and is vehemently opposed to terrorists and what groups like Al Qaeda and ISIS stand for.  I conclude, however, that the information available to me, including

---

[5] Professor Bonnefoy states that the closure of Dammaj in January 2014 scattered Salafis across Yemen and many foreigners left the country altogether.  Some of the areas were under the control of al-Qaeda in 2015 and 2016, and some newly relocated Salafis developed interactions with the jihadis and engaged in fighting against the Yemeni government, although this was not an automatic pattern.  The affidavit further states:

Among the trajectories of foreign Dammaj alumni, that of John Walker Lindh, the famous 'American Taliban' who was captured in Afghanistan in November 2001 has quite often been considered as illustrative of a link between Salafism and violence. Indeed, his trip there has often been construed in the media and certain intelligence agencies as indicative of a tendency of Dammaj to serve as an antechamber of radicalization.

5

TSA AR000380

information regarding Mr. Moharam's activities during his frequent and extended travel to Yemen, as well as information provided by Mr. Moharam during a November 2017 interview and during the redress process, ultimately supports his placement on the No Fly List.

4. I have also considered whether requiring Mr. Moharam to undergo enhanced security screening prior to flying and other available security measures short of inclusion on the No Fly List would be sufficient to counteract the threat he poses. The February 2, 2016, bombing of Daallo Flight 159, the October 31, 2015, bombing of Metrojet Flight 9268, and the July 15, 2017, attempted plot to place an improvised explosive device onboard an Etihad flight from Sydney, Australia to Abu Dhabi, United Arab Emirates, among other examples, all demonstrate terrorists' continuing intent to attack aviation and the fact that heightened screening alone is not sufficient to mitigate threats to aviation security. Terrorists continually adapt their tactics to seek new ways to circumvent or defeat the screening checkpoint. Checkpoint screening cannot be 100 percent effective against all potential threat items that could facilitate a hijacking attempt or other terrorist act onboard an aircraft. Nor can Federal Air Marshals be relied upon to cover every flight and mitigate every in-flight threat. Because these other security measures are not effective in all circumstances, I find that evolving security considerations, including current threats to transportation security, warrant use of the No Fly List for individuals who represent a threat of engaging in or conducting a violent act of terrorism and who are operationally capable of doing so.

These conclusions do not constitute the entire basis of my decision. I am unable to provide additional information in this Notice of Final Order and Decision for reasons described below.

6

TSA AR000381

Without specifying all possible grounds for withholding information in this case, information has been withheld for the following particular reasons:

- additional disclosure would risk harm to national security; and

- additional disclosure would jeopardize law enforcement activities.

While I am unable to provide additional information in this Notice of Final Order and Decision regarding the entire basis for my decision, my determination is not based solely on religion, race, ethnicity, age, sex, national origin, and/or the exercise of Constitutionally protected activities, such as the exercise of protected First Amendment activity.

This determination constitutes a final order and is reviewable in a United States Court of Appeals pursuant to 49 U.S.C. § 46110 or as otherwise appropriate by law. A petition for review must be filed within 60 days of issuance of this order.

9 June 2022
_____
DATED

_____
David P. Pekoske
Administrator
Transportation Security Administration

7

TSA AR000382

Appx234

# (6) Classified Final Order and Decision of TSA

## [withheld in full]

## TSA AR000383 – TSA AR000391

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

FAHMI AHMED MOHARAM,      )

          Petitioner,       )

          v.          )      No. 22-1184

                )

TRANSPORTATION SECURITY    )
ADMINISTRATION and DAVID P.   )
PEKOSKE, in his official capacity   )
as Administrator of the Transportation )
Security Administration,        )

         Respondents.     )

_____

## DECLARATION OF TANIA VAZQUEZ

I, Tania Vazquez, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am the Branch Manager of the Transportation Security Redress Branch in the Office of Civil Rights & Civil Liberties, Ombudsman and Traveler Engagement at the Transportation Security Administration (TSA) of the Department of Homeland Security (DHS).  I have held this position since September 2022.  Before my current position, I served as a Program Analyst in the Office of Operations Support from February 2021 – September 2022; a Supervisory Program Analyst in the Office of Security Operations from May 2020 – February 2021; Executive Advisor to the Executive Assistant Administrator in the Office of Security Operations from June 2019 – May 2020; and Assistant Federal Security Director for Chicago O'Hare International Airport from

1

December 2015 – June 2019.  As part of my official duties, I am responsible for

the management of the DHS Traveler Redress Inquiry Program (DHS TRIP).  The

statements made within this Declaration are based upon my personal knowledge

and information made available to me in my official capacity.

A.    **DHS TRIP Background**

2.    Congress directed the Secretary of Homeland Security (Secretary) to

establish a timely and fair redress process for travelers who believe they have been

delayed or prohibited from boarding a commercial aircraft because they have been

wrongly identified as a threat under the regimes utilized by the TSA, U.S. Customs

and Border Protection (CBP), or any other office or component of DHS.  *See* 49

U.S.C. § 44926(a).  Congress further directed the Secretary to establish an "Office

of Appeals and Redress" to implement, coordinate, and execute the redress

process.  *Id.* § 44926(b).  This office is required to include representatives from

TSA, CBP, and such offices and components of DHS as the Secretary determines

appropriate.  *Id.*  Additionally, Congress directed the Administrator of TSA to

create a process to enable airline passengers who are delayed or prohibited from

boarding a flight because TSA's "passenger prescreening system determined that

they might pose a security threat to appeal such determination and correct

information contained in the system" as necessary.  *Id.* § 44903(j)(2)(C)(iii)(I).

2

TSA AR000393

3.    In February 2007, DHS TRIP was officially launched as the central processing point for redress inquiries.  On December 10, 2007, the Secretary designated the TSA Office of Transportation Security and Redress, currently known as the Transportation Security Redress Branch, as both the lead agent to manage DHS TRIP and the statutorily required "Office of Appeals and Redress."

4.    Multiple federal agencies play a role in the regimes utilized by DHS components to identify possible threats to transportation and national security. DHS TRIP serves an important function by providing a single point of contact for a wide variety of complaints and inquiries regarding travel difficulties, such as the following: delayed or denied airline boarding; delayed or denied entry into the United States at a port of entry; or being told that personal information on travel documents was incomplete or inaccurate.

**B.    DHS TRIP Redress Procedures for United States Citizens and Lawful Permanent Residents Denied Boarding Because They Were on the No Fly List**

5.    In 2015, the government adopted revised DHS TRIP procedures for U.S. citizens and lawful permanent residents (collectively, United States persons) who make redress inquiries regarding the denial of aircraft boarding.  The revised redress procedures provide that a United States person who (a) purchases an airline ticket for a flight to, from, or over the United States; (b) is denied boarding that flight; (c) subsequently files a redress inquiry with DHS TRIP regarding the denial

3

TSA AR000394

of boarding; (d) provides all information and documentation required by DHS TRIP; and (e) is determined to be appropriately on the No Fly List at the conclusion of the Terrorist Screening Center (TSC) Redress Office's review of the redress inquiry, will receive a letter stating that "you are on the No Fly List" and providing the option to request additional information and specific instructions for doing so.

6.      If a United States person who receives a letter stating that he or she is on the No Fly List properly and timely requests additional information, DHS TRIP will respond with a second letter that identifies the specific criterion or criteria under which the individual was placed on the No Fly List.  To the extent feasible, consistent with the national security and law enforcement interests at stake, the second letter will also include an unclassified summary of information supporting the individual's placement on the No Fly List.  The amount and type of information provided will vary on a case-by-case basis, depending on the facts and circumstances.  In some circumstances, DHS TRIP may not be able to provide any unclassified summary without compromising national security or law enforcement interests.  The second letter provides the option to seek additional review of status on the No Fly List and invites the submission of any information believed to be relevant to determining whether continued status on the List is appropriate.

4

TSA AR000395

7.    If a United States person timely responds to the second letter and requests additional review, DHS TRIP forwards the response and any enclosed information to the TSC Redress Office for careful consideration.  Upon completion of TSC's comprehensive review of everything submitted to DHS TRIP and other available information, TSC provides DHS TRIP with a recommendation to the TSA Administrator as to whether the person should be removed from or remain on the No Fly List and the reasons for that recommendation.  TSC's recommendation may contain classified information and/or law enforcement sensitive information. If the recommendation does contain classified and/or law enforcement sensitive information, it will also contain a determination regarding whether and to what extent DHS TRIP is authorized to disclose such information when providing a final redress response.

8.    After DHS TRIP receives the recommendation from TSC, it provides the recommendation to the TSA Administrator along with the United States person's complete DHS TRIP file (including all information submitted by the person).  The TSA Administrator will review these materials and will either remand the case back to TSC with a request for additional information or clarification or issue a final order removing the United States person from the No Fly List or maintaining the person on the List.

5

9.      If TSA issues a final order maintaining a United States person on the No Fly List, the order will state the basis for the decision to the extent possible without compromising national security or law enforcement interests.

10.     Upon issuance of a TSA final order, DHS TRIP will provide TSC and the United States person with a copy of the order.  DHS TRIP will also inform a United States person who remains on the No Fly List pursuant to the TSA final order that he may seek judicial review of the final order pursuant to 49 U.S.C. § 46110 or as otherwise provided by law.

## C.     Petitioner's DHS TRIP Inquiry

11.     On October 29, 2017, DHS TRIP received a DHS TRIP inquiry from Petitioner Fahmi Ahmed Moharam.  A true and correct copy of this inquiry can be found in the Administrative Record (AR) 5-8.

12.     DHS TRIP applied the procedures described above in paragraphs 5-6 to Petitioner.

13.     DHS TRIP issued a letter on February 14, 2018 informing Petitioner of his status on the No Fly List and of the opportunity to respond and seek additional review.  A true and correct copy of this letter can be found at AR 25.

14.     Petitioner responded on March 13, 2018 requesting additional information about his placement on the No Fly List. A true and correct copy of this letter can be found at AR 35-36.

6

TSA AR000397

15.     DHS TRIP informed TSC of Petitioner's response requesting additional information.  The process for responding to DHS TRIP inquiries is complex and requires interagency consultation and access to secure facilities and communications systems.  Specifically, TSC must notify the National Counterterrorism Center (NCTC) and the nominating agency or agencies to request additional information and assistance with creating an unclassified summary.  Composing an unclassified summary requires the nominating agency or agencies to review the original derogatory information, any new information (including exculpatory information), and information supplied by Petitioner.

16.     To ensure that the U.S. Government redress process is thorough and responsive, the nominating agency or agencies also coordinates with other executive departments and agencies that are responsible for collecting, collating, and sharing terrorism information in support of the watchlist process.  Together, these entities make every effort to compose an unclassified summary based on the totality of available information, intending for the summary to include as much information as possible and be reasonably calculated to permit Petitioner to respond, taking into account the national security and law enforcement interests at stake.

7

TSA AR000398

17.     In this case, the interagency process described in paragraph 16 was further complicated by the longest government shut down in U.S. history,[1] as well as other disruptions to the defendant agencies' work in this area.

18.     Following this extensive process, the nominating agency or agencies provided TSC with the information that could be disclosed to Petitioner in an unclassified summary.  TSC provided DHS TRIP with written authorization confirming that the information contained in the summary is unclassified and authorizing DHS TRIP to release the summary to Petitioner.

19.     Upon receipt of the unclassified summary, DHS TRIP provided it to the TSA Intelligence and Analysis Office (I&A) and the TSA Chief Counsel Office (CC) for review.  TSA I&A reviewed the proposed unclassified summary and analyzed it in light of relevant information available to TSA, whether provided directly by TSC or available to TSA I&A in the performance of its intelligence and analysis function, and TSA CC conducted a legal review.  DHS TRIP conferred with TSA I&A and TSA CC regarding the proposed unclassified summary.

---

[1] *See Memorandum for the Heads of Executive Departments and Agencies, Status of Agency Operations, M-19-06,* (Dec. 21, 2018) (directing agencies to execute plans for an orderly shutdown of the federal government), *available at* https://www.whitehouse.gov/wp-content/uploads/2018/12/M-19-06-Status-of-Agency-Operations.pdf; *See also Memorandum for the Heads of Executive Departments and Agencies, Reopening Departments and Agencies, M-19-09,* (Jan. 25, 2019) (directing federal employees back to work and reopening many government functions), *available at* https://www.whitehouse.gov/wp-content/uploads/2019/01/M-19-09.pdf.

8

TSA AR000399

20.    After DHS TRIP received the unclassified summary from TSC and conferred with TSA I&A and TSA CC, and made any resulting changes, DHS TRIP provided the unclassified summary to relevant agencies for their review and comment.  Following those consultations and any resulting changes, DHS TRIP prepared the letter to Petitioner providing the unclassified summary and the specific criterion under which Petitioner was placed on the List.  This letter was issued on February 20, 2020, and the summary in the letter disclosed to Petitioner the following information:

You are on the U.S. Government's No Fly list because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017. The information you shared during your interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns.

21.    The DHS TRIP letter dated February 20, 2020, also encouraged Petitioner to respond and provide relevant information, and informed him of the opportunity to seek additional review.  A true and correct copy of this letter can be found at AR 68-69.

22.    Petitioner, through counsel, requested multiple extensions of time to respond to the letter described in paragraph 20.  In light of the COVID-19 pandemic, DHS TRIP granted Petitioner numerous requests for extensions of time. DHS TRIP provided Petitioner until October 19, 2020, then April 19, 2021, and

9

then October 19, 2021, to substantively respond. A true and correct copy of this correspondence can be found at AR 80-112.

23.    Petitioner's counsel made several requests to DHS TRIP to provide Petitioner's cleared counsel with access to classified information supporting Petitioner's inclusion on the No Fly List. DHS TRIP denied the requests, noting that TSA does not disclose to redress applicants, or to applicants' counsel, classified information, as defined in E.O. 12968 section 1.1(d). A true and correct copy of this correspondence can be found at AR 80-112.

24.    DHS TRIP, in consultation with TSC, assessed that no further information beyond that which was included in the unclassified summary could be provided to Petitioner or his counsel, given the sensitivities of the information and the national security and law enforcement harms at stake. Once sensitive law enforcement or national security information has been disclosed, the resulting harms to sources, methods, and ongoing investigations cannot be remedied.

25.    Petitioner's counsel also requested that DHS TRIP provide a record of petitioner's interview at the U.S. Consulate in Jeddah from November 2017, which was referenced in the unclassified summary. DHS TRIP stated it was unable to provide that information in the context of Petitioner's redress request. I understand that in January 2021, Petitioner received from the FBI redacted records of that interview pursuant to Petitioner's request under the Freedom of Information Act. I

10

TSA AR000401

further understand that TSC will include an unredacted copy of those records in the *ex parte* administrative record to be lodged with this Court in this case.

26.      Following the numerous extensions, Petitioner's counsel responded via letter dated October 19, 2021, and provided an affidavit from Petitioner. In this correspondence, Petitioner's counsel requested a fourth extension to provide a full response after the conclusion of this lawsuit. A true and correct copy of this letter can be found at AR 113-116.

27.      On December 8, 2021, DHS TRIP denied Petitioner's request for a fourth extension and provided him an additional 30 days to provide any additional information or material he deemed relevant. A true and correct copy of this correspondence can be found at AR 137.

28.      On January 7, 2022, Petitioner's counsel responded with additional information, including an updated affidavit from Petitioner and two additional affidavits. A true and correct copy of this response can be found at AR 174-210.

29.      DHS TRIP forwarded Petitioner's response submissions to the TSC Redress Office. Upon completion of its review of Petitioner's response as well as other available information, TSC provided DHS TRIP with a recommendation to the TSA Administrator.

11

TSA AR000402

30.     Upon receipt, DHS TRIP provided the TSA Administrator with TSC's recommendation as well as information available to TSA, including all information submitted by Petitioner, for the Administrator's review.

31.     On June 9, 2022, the TSA Administrator issued a final determination maintaining Petitioner on the No Fly List.  DHS TRIP provided Petitioner with a Notice of the Final Order and Decision of the TSA Administrator, stating the basis for that determination to the extent possible without compromising national security or law enforcement interests.  A true and correct copy of this notice can be found at AR 376-382.

32.     The TSA Administrator also signed a classified Notice of Final Order and Decision containing additional reasons for his determination to maintain Petitioner on the No Fly List.  A true and correct copy of this Notice will be provided to the Court under seal for its *ex parte*, *in camera* review.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on:     November 29, 2022
                 Springfield, VA

TANIA VAZQUEZ    Digitally signed by TANIA
                 VAZQUEZ
                 Date: 2022.11.29 16:05:49 -05'00'

Tania Vazquez
Director, DHS TRIP & Branch Manager
Transportation Security Redress Branch
Civil Rights & Liberties, Ombudsman & Traveler Engagement
Transportation Security Administration

12

TSA AR000403